UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EBEN ALEXANDER, III, M.D. ) | |
| ) | |
| Plaintiff, ) | Case No. 04-10738 PBS |
| ) | |
| v. ) | |
| ) | |
| BRIGHAM AND WOMEN'S PHYSICIANS ) | |
| ORGANIZATION, INC., successor to ) | |
| Brigham Surgical Group Foundation, Inc., ) | |
| BOSTON NEUROSURGICAL FOUNDATION ) | |
| INC., BRIGHAM SURGICAL GROUP ) | |
| FOUNDATION, INC. DEFERRED ) | |
| COMPENSATION PLAN, BRIGHAM ) | |
| SURGICAL GROUP FOUNDATION, INC. ) | |
| FACULTY RETIREMENT BENEFIT ) | |
| PLAN, COMMITTEE ON COMPENSATION ) | |
| OF THE BRIGHAM SURGICAL GROUP ) | |
| FOUNDATION, INC., FIDELITY ) | |
| INVESTMENTS INSTITUTIONAL ) | |
| OPERATIONS CO., INC., FIDELITY ) | |
| MANAGEMENT TRUST CO., and ) | |
| PETER BLACK, M.D. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants Brigham and Women's Physicians Organization, Inc., Boston Neurosurgical
Foundation, Inc., Brigham Surgical Group Foundation, Inc. Deferred Compensation Plan,
Brigham Surgical Group Foundation, Inc. Faculty Retirement Plan, Committee on Compensation
of the Brigham Surgical Group Foundation, Inc., Peter Black, M.D., Fidelity Management Trust
Co., and Fidelity Investments Institutional Operations Co. (collectively, the "defendants"),
submit this Memorandum of Law in support of their Motion to Dismiss the Complaint.

## INTRODUCTION

This is an action by Eben Alexander, III, M.D. ("plaintiff") under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1132(a)(1)(B) and (a)(3), and § 1133 ("ERISA"). Plaintiff seeks to recover amounts he alleges were wrongfully set-off and disbursed from two unfunded deferred compensation plans in which he participated during his tenure at Brigham Surgical Group Foundation, Inc. and Brigham and Women's Physicians Organization, Inc. As a matter of law, the Complaint must be dismissed in its entirety because (1) plaintiff's state law claims (Counts I-VIII and XIII) are preempted by ERISA, and (2) plaintiff's remaining claims are barred because he failed to exhaust the administrative remedies mandated by the plans before filing this action. At the same time, plaintiff cannot state a claim against Fidelity Investments Institutional Operations Co., Inc. or Fidelity Management Trust Co. because they had no obligations to him under the plans; and he is not entitled to a jury trial.

## STATEMENT OF FACTS

The following allegations in the Complaint are accepted as true solely for purposes of this Motion.

### *Brigham Surgical Group Hires Plaintiff*

In 1988, Brigham Surgical Group Foundation, Inc. ("BSG") hired plaintiff to work for it as a neurosurgeon.[1] Complaint, ¶ 14. At that time, plaintiff signed an Employment Agreement (the "Agreement") with BSG, which described his duties as follows:

> During the period of the Member's employment, the Member shall perform such professional services as are usual in the Department of Surgery of the Brigham and Women's Hospital and any other duties of a professional nature assigned to the Member by the Surgeon-in-Chief of the Brigham and Women's Hospital, or the Chief of the Division to which the Member is assigned.

---

[1] In 2001, BSG merged into Brigham and Women's Physicians Organization, Inc. ("BWPO") and BWPO became the successor in interest to BSG. See Complaint, ¶ 41. For purposes of clarity, both organizations will be referred to as BSG.

Complaint, Exhibit A at 1. The Agreement also provided that plaintiff's compensation would be "determined annually in accordance with the terms of the Professional Staff Compensation Policy" (the "Compensation Policy") of BSG. Id., see also Complaint, ¶ 15. That policy, which granted discretion over plaintiff's salary to the BSG Committee on Compensation, explained that plaintiff's total compensation would be based, in part, on his Net Practice Income ("NPI"). Complaint, Exhibit B, § 1. NPI equaled the difference between plaintiff's annual operating room teaching activity income and member expenses, which included, *inter alia*, "all office and medical supplies and other usual medical expenses." Complaint, Exhibit B, Appendix A. In the event of a practice deficit, the Compensation Policy provided that BSG could apply this deficit as a set-off against plaintiff's unfunded deferred compensation balance. Complaint, Exhibit B, § 6.

*Plaintiff Participates in BSG's Unfunded Deferred Compensation Plans.*

At or around the time of his hire, plaintiff commenced participation in an unfunded deferred compensation plan sponsored and maintained by BSG for a select group of certain highly compensated employees (the "UDC").[2] Complaint, ¶ 19. The UDC allowed eligible employees earning in excess of the total amount allowed by Harvard Medical School to defer 50% of their excess compensation into a UDC account. Id.; see also Complaint, Exhibit C, § 2.01. Section 2.05 of the UDC contained a set-off provision which expressly allowed BSG to "set off its liability to an Employee hereunder against any debt or other liability of the Employee to the Employer."

Plaintiff also participated in the BSG Faculty Retirement Benefit Plan ("FRBP"), another

---

[2] Both the language of the plans themselves and the language of the related Trust Agreement between BSG and Fidelity Management Trust Company ("FMTC") reflect that the UDC and FRBP are "top hat" plans or unfunded plans maintained for the purpose of providing deferred compensation for a select group of management or highly compensated employees. See Complaint, Exhibit C, § 1.02; Exhibit D, § 5.02; Trust Agreement (attached hereto as Exhibit 1) at 1.

unfunded deferred compensation plan sponsored and "maintained by [BSG] primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees within the meaning of Section 201(2) of ERISA." Id., ¶ 22; Complaint, Exhibit D, § 5.02. The FRBP provided for an additional payment into an account of up to 25% of an employee's direct compensation offset by certain pension contributions, provided that the employee had a practice surplus. Complaint, ¶ 22, Exhibit D, § 3.01. Like the UDC, the FRBP expressly allowed BSG to "set-off prior to payment of benefits to a Participant hereunder any amounts due from the Participant to the employer, including without limitation any current or prior practice deficits." Complaint, Exhibit D, § 3.03.

BSG served as the Plan Administrator for both the UDC and FRBP. Complaint, ¶ 9. Pursuant to a Trust Agreement between BSG and Fidelity Management Trust Company ("FMTC"), BSG established an irrevocable trust and FMTC as Trustee agreed to hold and invest the plan assets in trusts among several investment options selected by BSG. Trust Agreement (attached hereto as Exhibit 1) at ¶ 1.[3] Fidelity Institutional Investments Operations Co., Inc. ("FIIOC") served as the third-party administrator of the plans. Complaint, ¶ 10. FMTC and FIIOC's duties were limited to holding and investing the plan assets and performing recordkeeping and administrative services which were purely ministerial in nature. See Trust Agreement. This included disbursing funds upon direction from BSG. Trust Agreement at ¶ 1, 3.

Both the UDC and FRBP contained administrative procedures through which employees could make inquiries and claims relating to the plans. The UDC, for example, provided as follows:

---

[3] Plaintiff expressly references the Trust Agreement in his Complaint, thus, the Court may examine the Trust Agreement without converting this to a motion for summary judgment. See Fed. R. Civ. P. 12(b).

4.02 Claims and Review. All inquiries and claims respecting the Plan shall be in writing directed to the Plan Administrator. In the case of a claim respecting a benefit, a written determination allowing or denying the claim shall be furnished to the claimant promptly upon receipt of the claim . . . If no written determination is furnished to the claimant within thirty (30) days after receipt of the claim, then the claim shall be deemed denied and the thirtieth day after such receipt shall be the determination date.

A claimant may obtain review of an adverse determination by filing a written notice of appeal with the Committee on Compensation within sixty (60) days after the determination date, or, if later, the receipt of a written notice denying the claim.

Section 6.01 of the FRBP sets forth an identical procedure. Complaint, Exhibit D, § 6.01.

## *BSG Neurosurgeons Affiliate with Brigham Neurological Foundation.*

In 1992, Dr. Peter Black, Brigham & Women Hospital's Neurosurgeon-in-Chief, requested that each of the four neurosurgeons employed by BSG join in an affiliation with Brigham Neurological Foundation ("BNF"), a multi-institutional neurosurgical organization serving Children's Hospital, Brigham & Women's Hospital, Dana Farber Cancer Institute, and Harvard Medical School. Complaint, ¶¶ 25, 27. By affiliating with BNF, BSG neurosurgeons received privileges to operate at Children's Hospital and to practice with academic neurosurgeons at Brigham & Women's Hospital. Id. In exchange, each of the four neurosurgeon employees, including Dr. Alexander, became responsible for a percentage of certain BNF expenses under a "Shared Agreement." Id., ¶ 27, Exhibit F.

## *BSG Terminates Plaintiff.*

BSG terminated plaintiff's employment on April 13, 2001. Complaint, ¶ 42. At that time, plaintiff's cumulative practice deficit was $441,887.16. Id., ¶ 43. Kenneth Holmes, BSG's Chief Financial Officer, informed plaintiff that it would set-off the amounts owed to him under the UDC and the FRBP by this deficit amount pursuant to § 2.05 of the UDC and § 3.03 of the

FRBP. Id.

Holmes subsequently directed FMTC to process a partial disbursement in the amount of $190,000.00 from plaintiff's FRBP account and $251,886.16 from his UDC account. Complaint, ¶ 45, Exhibit I. Holmes explained to FMTC that the disbursement was "a payment to the Plan Sponsor under section 2.05 and 3.03 [i.e., the set off provisions] of the Deferred Compensation Plan and the Faculty Retirement Benefit Plan, respectively, and in accordance to Section 2 of the Trust Agreement." Complaint, Exhibit I.

Plaintiff allegedly sent Holmes an e-mail requesting additional information concerning the set-off on April 19, 2001. Complaint, ¶ 44. Plaintiff did not pursue his administrative remedies under the plans after sending that e-mail. See Complaint.

Three years later, on April 12, 2004, plaintiff sent Holmes a letter making a claim for additional benefits under the plans and requesting an accounting of benefit calculations. Complaint, ¶ 53; see also April 12, 2004 letter (attached hereto as Exhibit 2).[4] Plaintiff filed this action the same day. See Complaint.

## ARGUMENT

## I.    PLAINTIFF'S STATE LAW CLAIMS MUST BE DISMISSED BECAUSE THEY ARE PREEMPTED BY ERISA.

Plaintiff's state law claims for breach of contract (Counts I and II), breach of implied covenant of good faith and fair dealing (Counts III and IV), breach of fiduciary duty (Count V), conversion (Count VI), violation of M.G.L. ch. 93A (Count VII), negligence (Count VIII), and accounting (Count XIII) are each preempted by ERISA.

ERISA contains a broad preemption provision which provides that it supersedes, "any and all State laws insofar as they now or hereafter relate to any employee benefit plan." 29

---

[4] Because plaintiff references the April 12, 2004 letter in his Complaint, the court may review it without converting this to a motion for summary judgment. See Fed. R. Civ. P. 12(b).

U.S.C. § 1144(a). The Supreme Court has emphasized that this is to be given its broadest common sense meaning, such that a state law claim "relates to a benefit plan . . . if it has a connection with or reference to such a plan." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990) (quoting Shaw v. Delta Airlines, Inc., 463 U.S. 85, 96-97 (1983)). Thus, a cause of action "relates to" and is preempted by ERISA if either of two tests is satisfied. First, a cause of action is expressly preempted by ERISA where "the court's inquiry must be directed to the plan." Ingersoll-Rand, 498 U.S. at 140. Second, even if no express preemption exists, a cause of action is preempted if it conflicts directly with ERISA. Id. at 142.

Here, all of plaintiff's common law claims relate to the extent of plaintiff's interest in certain funds held under the UDC and FRBP at the time of his termination. To determine the merit of these claims, the Court must examine the content of those plans, including the provisions which empower BSG to set-off for plaintiff's practice deficits, and which require plaintiff to pursue administrative remedies before filing a civil action. Thus, there can be no doubt that the claims presented "relate to" an ERISA plan. See Harris v. Harvard Pilgrim Health Care, Inc., 208 F.3d 274, 281 (1st Cir. 2000) ("ERISA will be found to preempt state law claims if the trier of fact necessarily would be required to consult the ERISA plan to resolve the plaintiff's claims"); Hampers v. W.R. Grace & Co., 202 F.3d 44, 52 (1st Cir. 2000) ("a cause of action relates to an ERISA plan when a court must evaluate or interpret the terms of the ERISA -regulated plan to determine liability under the state cause of action").

Cogan v. Phoenix Life Ins. Co. is particularly instructive. 310 F.3d 238 (1st Cir. 2002). In Cogan, the Court squarely held that ERISA preempted plaintiff's breach of contract claim to recover benefits allegedly due under a top hat plan. Id. at 242-43. The Court rejected the argument that top hat plans are "a rare species of ERISA plans" which should be interpreted under common law principles. Id. at 242. Instead, the Court reasoned that "this contract

interpretation is to be applied *within the context of ERISA*; it does not provide for a separate common law contract claim." Id. (emphasis added). Thus, the Court granted defendant's motion to dismiss the contract claim as preempted by ERISA. Id.

Like the plan in Cogan, the UDC and FRBP constitute "top hat" plans that are "maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees," and are thus exempt from ERISA's funding, vesting and fiduciary duty requirements. Cogan, 310 F.3d at 242; see also 29 U.S.C. §§ 1101(a)(1); 1051(2); and 1081(a)(3). Although Plaintiff suggests that these are not valid "top hat" plans, Complaint, ¶¶ 48-50, his assertion is irrelevant. Whether the plans are valid or not, top hat plans are subject to ERISA's preemption provision. See Cogan, 310 F.3d at 242 (breach of contract claim to recover benefits under top hat claim preempted); see also cases cited, *infra*, at 8-9 on preemption under Title I cases.

Indeed, courts routinely have dismissed state law claims identical to those raised by plaintiff under the broad sweep of ERISA's preemption doctrine. See e.g., Cogan, 310 F.3d at 242; see also Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 48 (1987) (tortious breach of contract and breach of fiduciary duties, and fraud); Mauser v. Raytheon Co. Pension Plan for Salaried Employees, 239 F.3d 51, 58 (1st Cir. 2002) (breach of fiduciary duty); Harris, 208 F.3d at 281 (unfair and deceptive trade practices under M.G.L. ch. 93A); Hampers, 202 F.3d at 54 (breach of contract); McMahon v. Digital Equip. Corp., 162 F.3d 28, 38-39 (1st Cir. 1998) (breach of contract and negligence); Lopresti v. Terwilliger, 126 F.3d 34, 41 (2nd Cir. 1997) (conversion); Elmore v. Cone Mills Corp., 23 F.3d 855, 863 (4th Cir. 1994) (negligence, breach of contract, breach of fiduciary duty, and accounting); Carpenters' Pension Trust Fund Detroit & Vicinity v. Laminate Creations, 1996 WL 17726, at * 2 n.1 (6th Cir. 1986) (conversion); Campbell v. BankBoston, N.A., 206 F. Supp. 2d 70, 79 (D. Mass. 2002) (breach of implied covenant of good

- 8 -

faith and fair dealing); <u>Tuohig v. Principal Ins. Group</u>, 134 F. Supp. 2d 148, 154 (D. Mass. 2001) (unfair and deceptive trade practices under M.G.L. ch. 93A); <u>Kern v. Polaroid Corp.</u>, 89 F. Supp. 2d 132, 137 (D. Mass. 2000) (breach of contract); <u>Whalen v. Whyman-Gordon Co.</u>, 976 F. Supp. 95, 97 (D. Mass. 1997) (breach of contract and negligence); <u>Toomey v. Jones</u>, 855 F. Supp. 19, 26-27 (D. Mass. 1994) (breach of contract and misrepresentation); <u>Jorstad v. Conn. Gen. Life Ins. Co.</u>, 844 F. Supp. 46, 47-48 (D. Mass. 1994) (breach of contract and M.G.L. ch. 93A); <u>Spalding v. Reliance Std. Life Ins. Co.</u>, 835 F. Supp. 23, 30 (D. Mass. 1993) (breach of implied covenant of good faith and fair dealing, negligent misrepresentation, and M.G.L. ch. 93A); <u>Fairneny v. Savogran Co.</u>, 422 Mass. 469, 475 (1996) (wrongful termination and breach of implied covenant of good faith and fair dealing); <u>Paul Revere Life Ins. Co. v. Payne</u>, 2000 WL 424499, at *6 (Mass. Super. Ct. Mar. 17, 2000) (breach of contract, unfair and deceptive trade practices under M.G.L. ch. 93A).

It is black letter law that plaintiff's state law claims are preempted by ERISA and must be dismissed.[5]

## II.    PLAINTIFF'S CLAIMS FOR RELIEF UNDER ERISA MUST BE DISMISSED BECAUSE PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

Plaintiff's remaining ERISA – based claims for recovery of benefits (Count IX), breach of fiduciary duty (Count X), interference with protected pension rights (Count XI), and attorney's fees (Count XII) likewise must be dismissed because plaintiff has not exhausted his administrative remedies, which is a prerequisite to commencing a civil action.[6] <u>E.g.</u>, <u>Morais v.</u>

---

[5] Beyond the effect of ERISA preemption, plaintiff's claim for unfair and deceptive trade practices under Mass. Gen. Laws ch. 93A fails because it is well-established that ch. 93A does not apply to disputes arising from the employment context. <u>See, e.g.</u>, <u>Manning v. Zuckerman</u>, 388 Mass 8, 12-13 (1983); <u>Hope v. Double E Corp., Inc.</u>, 2004 WL 136354, at * 1 (Mass. App. Ct. 2004). The allegations supporting plaintiff's ch. 93A claim arise solely from his employment with BSG.

[6] ERISA's exhaustion requirement applies equally to plaintiffs seeking benefits under a top hat plan. <u>See</u> <u>Threadgill v. Prudential Sec. Group, Inc.</u>, 145 F.3d 286, 291 (5th Cir. 1998) (dismissing claim for benefits under top hat plan

Central Beverage Corp., 167 F.3d 709, 712 n.4 (1st Cir. 1999); Drinkwater v. Metropolitan Life Ins. Co., 846 F.2d 821, 825-26 (1st Cir. 1988), cert denied 488 U.S. 909 (1988). "It makes no difference whether the plan itself explicitly requires exhaustion because ERISA exhaustion is a judicial, not contractual, doctrine." Whitehead v. Oklahoma Gas & Elec. Co., 187 F.3d 1184, 1190 (10th Cir. 1999). Courts have reasoned that mandating exhaustion serves several critical goals, such as reducing the number of frivolous lawsuits, promoting a consistent treatment of benefit claims, providing a non-adversarial method of claims settlement, minimizing the costs of claims settlement, and "refining and defining" the issues for courts "when they are called upon to resolve the controversies." Amato v. Bernard, 618 F.2d 559, 567-68 (9th Cir. 1980) (citing cases).

Here, it is undisputed that both the UDC and FRBP mandate that participants pursue a *two-step* administrative procedure to make a claim for benefits. Specifically, if plaintiff wished to challenge BSG's set-off against his interests under the UDC and FRBP plans, he was required to:

(1)    make an inquiry or claim in writing to the Plan Administrator; and

(2)    file a written notice of appeal with the Committee on Compensation within 60 days of the Plan Administrator's denial of his claim.[7]

Complaint, Exhibit C, § 4.02; Exhibit D, § 6.01.

Despite the plans' directives, plaintiff does not allege that he complied with these requirements. Rather, he alleges that "by e-mail dated April 19, 2001 and again in or around April 2004, [he] made a demand for an accounting and benefits." Complaint, ¶ 53. He does not attach a copy of either demand to the Complaint. With regard to the April 2004 "demand,"

---

because plaintiff failed to exhaust administrative remedies); Koenig v. Waste Mgmt, Inc., 104 F. Supp. 2d 961, 967 (N.D. Ill. 2000) (same).
[7] Under the UDC and FRBP, the Plan Administrator can deny a claim (1) in writing or (2) by failing to respond to the claim within 30 days, in which case the thirtieth day after the claim is made is considered the "determination date." Complaint, Exhibit C, § 4.02; Exhibit D, § 6.01.

however, plaintiff did not give BSG a chance to respond before filing this suit. In fact, plaintiff filed this case the very same day. Because plaintiff did not allow BSG to make a determination under the plans, he has not exhausted internal remedies and his ERISA claims must be dismissed.

Likewise, even if plaintiff's April 19, 2001 e-mail satisfied the first step of the administrative procedure, plaintiff makes no allegation that he appealed the plan administrator's denial of that claim as expressly required by both plans. See Complaint. Instead, plaintiff ignored the appeal process entirely, denying BSG the opportunity to review its determination with a better understanding of plaintiff's position and to "refine and define" any dispute. See id. This he cannot do.

Because he failed to exhaust administrative remedies under the plans, plaintiff's claims for relief under ERISA must be dismissed. See, e.g., Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3rd Cir. 1990) (dismissing claim where plaintiff ignored plan provision which stated that he "may file" an appeal); Drinkwater, 846 F.2d at 825-26 (dismissing claims for failure to exhaust where plaintiff "sav[ed] his complaints for the litigation process rather than the review procedure"); Denton v. First Nat'l Bank of Waco Tx., 765 F.2d 1295, 1302 (5th Cir. 1985) (dismissing claim where plan provided that employee "may request [review of benefit denial], in writing" because plaintiff "simply chose to ignore the review process he had initiated"); Alloco v. Metropolitan Life Ins. Co., 256 F. Supp. 2d 1023, 1033 n.11 (D. Ariz. 2003) (dismissing claim for failure to exhaust administrative remedies; language in plan that employee may, rather than must, file appeal "irrelevant to plaintiff's obligation to appeal"); Ayala v. Johnson & Johnson, Inc., 208 F. Supp. 2d 195, 200 (D. P.R. 2002) (granting motion to dismiss for failure to exhaust administrative remedies); Fox v. Life Ins. Co. of N. Am., 2000 WL 1375517, at * 9 (D. Me. 2000) (plaintiff failed to exhaust plan remedies because she did not pursue administrative

appeal); <u>Santana v. Deluxe Corp.</u>, 12 F. Supp. 2d 162, 174-75 (D. Mass. 1998) (dismissing claims because plaintiff failed to appeal the denial of his claim for benefits); <u>Snow v. Borden, Inc.</u>, 802 F. Supp. 550, 557-58 (D. Mass. 1992) (plaintiff failed to exhaust administrative remedies under plan that provided that she "may file an appeal"); <u>Gilson v. Retail Recruiters Int'l, Inc.</u>, 1991 WL 83383, at * 5 (D. Mass. 1991) (plaintiff "failed to pursue the administrative appeal process subsequent to the denial of [] benefits," thus, ERISA claims dismissed); <u>c.f.</u>, <u>Terry v. Bayer Corp.</u>, 145 F.3d 28, 41 (1st Cir. 1998) ("[t]he same principles which inform the ERISA exhaustion requirement also counsel that part of that internal administrative process includes the responsibility on the claimant's part to file appeals in a timely fashion").

Traditional exhaustion principles include an exception for cases "when resort to the administrative route is futile or the remedy inadequate." <u>Guiffre v. Delta Air Lines, Inc.</u>, 746 F. Supp. 238, 240 (D. Mass. 1990), <u>citing</u> <u>Drinkwater</u>, 846 F.2d at 826; <u>see also</u> <u>Wogman v. Teamsters Health & Welfare Fund of Philadelphia & Vicinity</u>, 1998 U.S. Dist. LEXIS 12164, at * 8 (E.D. Pa. 1993) ("the exhaustion requirement is strictly enforced unless proceeding with the administrative remedies triggers one of the exceptions"). However, for this exception to apply, the plaintiff must assert specific facts supporting his claim of futility or inadequate remedy. <u>Id.</u>; <u>see also</u> <u>Hickey v. Digital Equip. Corp.</u>, 43 F.3d 941, 945 (4th Cir. 1995) (plaintiff must make a "clear and positive showing" of futility in order to circumvent the exhaustion requirement); <u>Snow</u>, 802 F. Supp. at 558 (same). In the absence of such evidence, the plaintiff's claim is dismissed. <u>Drinkwater</u>, 846 F.2d at 826 (affirming dismissal of ERISA claim for failure to exhaust administrative remedies); <u>Snow</u>, 802 F. Supp. at 557-58 (dismissing ERISA claim for failure to exhaust administrative remedies where plaintiff failed to show futility); <u>Guiffre</u>, 746 F. Supp. at 240 (same). The fact that a plaintiff may consider exhaustion of the plan's internal procedures a "meaningless exercise" is of no consequence. <u>Drinkwater</u>, 846 F.2d at 825; <u>accord</u>

Hickey, 43 F.3d at 945 (fact that plaintiffs consider exhaustion a "mere formality, if not a charade" is of no moment).

The Complaint provides not even a hint that resort to the UDC's and the FRPB's administrative procedures would have been futile or inadequate. See Drinkwater, 846 F.2d at 826; Snow, 802 F. Supp. at 557-58. In fact, plaintiff admits that he initiated administrative proceedings under the plans twice (in April 2001 and April 2004), but has never allowed BSG to complete its review. Complaint, ¶ 53. In light of the pleadings, plaintiff "cannot be properly excused from the exhaustion requirement under ERISA." Snow, 802 F.2d at 558.

## III.    PLAINTIFF CANNOT STATE A CLAIM AGAINS THE FIDELITY DEFENDANTS BECAUSE THEY HAD NO OBLIGATIONS UNDER THE PLANS.

Even if plaintiff had satisfied his exhaustion obligations under the plans, his claims against FMTC and FIIOC (collectively, the "Fidelity defendants") (Counts IX-XII) must be dismissed because the Fidelity Defendants have no obligations under the plans that give rise to liability. Here, plaintiff has not, and cannot, allege that the Fidelity defendants provided anything other than ministerial services to the plans.

Indeed, under the Trust Agreement between BSG and FTMC, FMTC agreed to serve as nothing more than "rabbi trustee," a distinct and narrow function by which the Fidelity defendants would provide defendants "recordkeeping and administrative services for the Plans if the services are purely ministerial in nature and are provided within a framework of plan provisions, guidelines and interpretations conveyed in writing to the Trustee by the Administrator." Exhibit 1 at 1-2. The Trust Agreement further states that FMTC "is not a party to the Plans, and in the event of any conflict between the provisions of the Plans and the provisions of this Agreement, the provisions of this Agreement shall control." Id. at 12. Because the Fidelity defendants were not parties to the plans, and provided exclusively

- 13 -

ministerial functions, plaintiff's claims against them must be dismissed. See, e.g., Cottrill v. Sparrow, Johnson & Ursillo, Inc., 74 F.3d 20, 21-22 (1st Cir. 1996) (plan trustee who performed "ministerial act[s]" and lacked authority or control over the management of plan assets not an ERISA fiduciary); Kodes v. Warren Corp., 24 F. Supp. 2d 93, 101 (D. Mass. 1998) (dismissing claims against third party administrator who "processed claims without retaining any discretionary authority or control"); Santana v. Deluxe Corp., 920 F. Supp. 249, 254 (D. Mass. 1996) (dismissing claims against third party administrator, noting that where a plan "has contracted with a third party to provide . . . administrative services, but has retained discretion to decide disputed claims, courts have universally ruled that the service provider is not a fiduciary of the plan"); see also Dept. of Labor, Interpretive Bulletin 75-8, 29 C.F.R. § 2509.75-8 (1995) ("a person who performs purely ministerial functions . . . for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control").

## IV.     PLAINTIFF IS NOT ENTITLED TO A JURY TRIAL.

Plaintiff's demand for a jury trial must be denied because it is well-settled that a plaintiff is not entitled to a jury trial under ERISA. Hampers v. W.R. Grace & Co., 202 F.3d 44, 54 (1st Cir. 2000) (affirming district court's denial of the plaintiff's demand for a jury trial where ERISA preempted all of his state court claims); Dudley Supermarket Inc. v. Transamerica Life Ins. And Annuity Co., 188 F. Supp. 2d 23, 23 (D. Mass. 2002) ("the clear weight of authority holds that no right to a jury trial attaches to ERISA actions"); Stanford v. AT&T Corp., 927 F. Supp. 524, 527 (D. Mass. 1996) ("the focus is on the nature of the action and of the remedy sought . . . [and] the relief Stanford seeks [under ERISA] is equitable in nature, [thus] she is not entitled to a jury trial"). Thus, an order should enter declaring that plaintiff does not have a right

- 14 -

to a jury trial in this matter.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant their motion to dismiss the Complaint in its entirety and deny plaintiff's demand for a jury trial.

Respectfully submitted,

BRIGHAM AND WOMEN'S PHYSICIANS
ORGANIZATION, INC., BOSTON
NEUROSURGICAL FOUNDATION INC.,
BRIGHAM SURGICAL GROUP FOUNDATION,
INC. DEFERRED COMPENSATION PLAN,
BRIGHAM SURGICAL GROUP FOUNDATION,
INC. FACULTY RETIREMENT BENEFIT PLAN,
COMMITTEE ON COMPENSATION OF THE
BRIGHAM SURGICAL GROUP FOUNDATION,
INC., PETER BLACK, M.D., FIDELITY
INVESTMENTS INSTITUTIONAL
OPERATIONS CO., INC. AND FIDELITY
MANAGEMENT TRUST CO., INC.

By their attorneys,

David C. Casey (BBO No. 077260)
Gregory C. Keating (BBO No. 564523)
Laurie Drew Hubbard (BBO No. 651109)
LITTLER MENDELSON, PC
225 Franklin Street, 26th Floor
Boston, MA 02110
(617) 217-2831

Dated: May 24, 2004

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served upon the attorney of record for each other party by hand on May 24, 2004.

Laurie Drew Hubbard

Boston:1786.1 047950.1000

- 15 -