UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

2004 JUL -2 P 3: 41

DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| EBEN ALEXANDER, III, M.D.<br><br>Plaintiff,<br><br>v.<br><br>BRIGHAM AND WOMEN'S PHYSICIANS ORGANIZATION, INC., successor to Brigham Surgical Group Foundation, Inc., BOSTON NEUROSURGICAL FOUNDATION INC., BRIGHAM SURGICAL GROUP FOUNDATION, INC. DEFERRED COMPENSATION PLAN, BRIGHAM SURGICAL GROUP FOUNDATION, INC. FACULTY RETIREMENT BENEFIT PLAN, COMMITTEE ON COMPENSATION OF THE BRIGHAM SURGICAL GROUP FOUNDATION, INC., FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS CO., INC., FIDELITY MANAGEMENT TRUST CO., and PETER BLACK, M.D.<br><br>Defendants. | Case No. 04-10738 PBS |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants Brigham and Women's Physicians Organization, Inc., Boston Neurosurgical Foundation, Inc., Brigham Surgical Group Foundation, Inc. Deferred Compensation Plan, Brigham Surgical Group Foundation, Inc. Faculty Retirement Plan, Committee on Compensation of the Brigham Surgical Group Foundation, Inc., Peter Black, M.D., Fidelity Management Trust Co., and Fidelity Investments Institutional Operations Co. (collectively, the "defendants"), submit this Reply Memorandum of Law in support of their Motion to Dismiss the Complaint.

## INTRODUCTION

In his Opposition to defendants' Motion to Dismiss, plaintiff makes two central contentions: (1) that his common law claims against Dr. Black and Brigham Neurological Foundation Inc. ("BNF") should not be preempted, and (2) that he is excused from exhausting his administrative remedies.[1] Neither argument is supported by the facts as alleged by plaintiff in his own Complaint. Even if they were, both arguments fail as a matter of law.

## ARGUMENT

### I. PLAINTIFF'S STATE LAW CLAIMS AGAINST DR. BLACK AND BRIGHAM NEUROLOGICAL FOUNDATION ARE PREEMPTED.

#### A. The Facts In Plaintiff's Own Complaint Support Preemption.

Plaintiff's contention that his state law claims against Dr. Black and BNF do not relate to his ERISA claims is directly undermined by factual averments in the Complaint. There, Plaintiff makes the following allegations against Dr. Black and BNF:

- Dr. Black "*schemed to use the money from Dr. Alexander's benefit plans* to decrease his BNF liabilities with [Brigham Surgical Group]." Complaint at 2.

- "As a result of Dr. Black's actions, Dr. Alexander lost his employment with BSG, as well as more than $440,000 *owed to him as deferred compensation under the UDC and FRBP.*" Complaint, ¶ 52

- Also "as a result of Dr. Black's actions," "Dr. Alexander has been *deprived of his rights under ERISA due to the unlawful set-offs of the deficit against the UDC and FRBP.*" Complaint, ¶ 52.

- "*Defendants interfered with Dr. Alexander's rights under the UDC and FRBP and Title I of ERISA,* within the meaning of 29 U.S.C. § 1140, by among other actions (a) concocting a scheme to deprive Dr. Alexander of his pension benefits; [and] (b) ignoring Dr. Alexander's valid requests for information regarding accounting for the deficit assessed to Dr. Alexander and the resulting withdrawal of funds from the UDC and FRBP. . ." Complaint, ¶ 104.

---

[1] Plaintiff does not contest defendants' arguments that he cannot assert claims against Fidelity Investments Institutional Operations Co., Inc. and Fidelity Management Trust Co. because they did not owe him any duties and that he is not entitled to a jury trial under ERISA. In addition, plaintiff concedes that preemption of his common law claims against BWPO is appropriate. See Plaintiff's Opposition to Defendants' Motion to Dismiss ("Plaintiff's Opposition") at 8, n.4.

Plaintiff's common law claims against BNF and Dr. Black all relate to the manner in which his practice deficit, which properly included BNF expenses, was set-off from his UDC and FRBP balances. By necessity, resolution of these claims requires direct reference to the set-off provisions of the plans. For this reason alone, the common law claims are preempted. See, e.g., Harris v. Harvard Pilgrim Health Care, Inc., 208 F.3d 274, 281 (1st Cir. 2000) ("ERISA will be found to preempt state law claims if the trier of fact necessarily would be required to consult the ERISA plan to resolve the plaintiff's claims"). Furthermore, the damages plaintiff claims as an element of each common law claim are the same pension benefits he seeks to recover through his ERISA claims against the same defendants. Complaint, ¶ 52. In light of this, plaintiff cannot credibly suggest that his common law claims are distinct from his ERISA claims. See, e.g., Hampers v. W.R. Grace & Co., 202 F.3d 44, 52 (1st Cir. 2000) ("that the very same conduct . . . underlies both [plaintiff's] state law contract claim and his ERISA-benefits claim suggests that the state law claim is an alternative mechanism for obtaining ERISA plan benefits," thus, the state law claim is preempted); Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 6 (1st Cir. 1999) ("what matters, in our view, is that the conduct was indisputably part of the process used to assess a participant's claim for a benefit payment [thus] any such state-law-based attack on this conduct would amount to an alternative enforcement mechanism").[2]

## 2. Plaintiff's Legal Arguments Are Inapposite.

Even if plaintiff could avoid the litany of factual allegations which inexorably relate directly to the ERISA plans, plaintiff's legal arguments utterly miss the mark. First, plaintiff argues, "a defendant who is not an employer as defined in ERISA nor an agent of an employer

---

[2] Perhaps most telling is the fact that, notwithstanding plaintiff's adamant insistence that his claims against Dr. Black and BNF are not preempted because they are separate from any ERISA claim, plaintiff has himself asserted claims for violations of ERISA against Dr. Black and BNF. Complaint, ¶¶ 102-111.

cannot claim ERISA preemption." Plaintiff's Opposition at 11. Plaintiff conveniently overlooks that under ERISA, an individual gains employer status by acting "indirectly in the interest of an employer in relation to an employee benefit plan." 29 U.S.C. § 1002(5). Here, Dr. Black acted in his capacity of Neurosurgeon-in-Chief to make operational decisions which ultimately affected Dr. Alexander's benefits under the UDC and FRBP. Specifically, the Professional Staff Compensation Policy gave Dr. Black the authority to determine Dr. Alexander's annual OR-TEACHING salary which, in turn, determined the amount of compensation that would be deferred through the UDC and FRBP.[3] See Professional Staff Compensation Policy, ¶ 1.

Other cases cited by plaintiff are factually different and lend little support to his argument. In Ragan v. Tri-County Excavating, Inc., 62 F.3d 501, 512-13 (3rd Cir. 1995) for example, the court held that claims against the surety of an employer's labor and materials bond were not preempted because the surety acted in the interest of the employees, not the employer. In Carpenters Local Union No. 26 v. United States Fidelity and Guaranty Co., 215 F.3d 136, 141 (1st Cir. 2000), the Court determined that ERISA does not preempt claims under the Massachusetts bond statute, reasoning that the statute "only creates claims against a surety" and "regulates an area of law traditionally thought to be the states' preserve." Similarly, in Swift Elec. Supply Co., Inc. v. Township of Lakewood, 168 F. Supp. 2d 298, 307 (D.N.J. 2001), the court ruled that ERISA did not preempt claims under the New Jersey Municipal Mechanics Lien Law because it "is a law of general applicability that does not refer to ERISA nor fall within the scope of the civil enforcement remedies of ERISA."

These cases, which focus on parties with a minimal relationship with the employer and miscellaneous statutes, are immaterial here. Dr. Black had the authority as Neurosurgeon-in-

---

[3] Likewise, Dr. Alexander's Employment Agreement requires him to perform "any other duties of a professional nature assigned to [him] by the . . . Chief of the Division to which the Member is assigned." Employment Agreement, ¶ 2. Thus, Dr. Black had every right to insist that Dr. Alexander to enter into the Shared Agreement with BNF in order to practice at Children's Hospital and to assume certain BNF expenses.

Chief to make decisions which impacted plaintiff's compensation, including deferred compensation, under plaintiff's own Employment Agreement and BSG's Professional Staff Compensation Policy. Thus, Dr. Black plainly "acted in the interests of an employer" and plaintiff's claims against him are preempted.

Finally, public policy also dictates that plaintiff's common law claims against Dr. Black and BNF should be preempted. In his ERISA claim against BNF, Dr. Alexander accuses it of participating in the "scheme to deprive [him] of his pension benefits." Complaint, ¶ 104. The actions of BNF that purportedly give rise to this claim are identical to those giving rise to Dr. Alexander's common law claims against BNF. Dr. Alexander must not be allowed to use common law claims against BNF as an "alternative mechanism for obtaining ERISA benefits" where a claim for relief exists under ERISA, and he has already asserted that claim. See Hampers, 202 F.3d at 52. Doing so will only create the "patchwork" regulation that ERISA preemption seeks to prevent. See Danca, 185 F.3d at 7.

## II. PLAINTIFF'S FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES MUST NOT BE EXCUSED.

### A. Plaintiff Cannot Possibly Argue Futility As He Is Currently Engaged in the Administrative Appeal Process.

Plaintiff suggests that he need not exhaust administrative remedies while simultaneously engaging in the administrative process. On June 3, 2004, Plaintiff sent a letter to BWPO requesting an appeal of its denial of his claims for benefits under Section 4.02 of the UDC and Section 6.01 of the FRBP. A copy of that letter is attached hereto as Exhibit A. BWPO responded on June 10, 2004, informing plaintiff that it will "process your appeal in accordance with the plan documents." A copy of that letter is attached hereto as Exhibit B. Dr. Alexander admits that "to fall within the futility exception, a plaintiff must demonstrate that his claim would be denied upon administrative appeal." Plaintiff's Opposition, at 14. Nonetheless, he argues in

his Opposition that the futility exception should be applied here, even though he had only requested an appeal four days earlier, and that appeal has not yet been completed. Dr. Alexander's argument defies logic.[4] As BWPO explained to Dr. Alexander, it intends to "provide a full and detailed response to the appeal in accordance with the time frames established in the plan documents." By doing so, BWPO will provide the parties a non-adversarial method of claims settlement, minimize the costs of claims settlement, and "refin[e] and defin[e]" the issues raised by plaintiff should this Court be "called upon to resolve [any] controversies." Amato v. Bernard, 618 F.2d 559, 567-68 (9th Cir. 1980) (citing cases). Exhibit B at 1. Therefore, plaintiff cannot argue that pursuit of his administrative remedies would be futile.

### B. Plaintiff Should Be Required To Exhaust His Administrative Remedies Before Raising A Claim For Benefits Under § 510 of ERISA (Count XI).

Finally, plaintiff's argument that statute-based claims are not subject to exhaustion ignores applicable precedent in this Circuit. As this Court has noted, "the circuit courts of appeal are divided on the question of whether or not § 510 claims contain an administrative exhaustion requirement" and "the First Circuit has not ruled on this issue." Edes v. Verizon Comm., Inc., 288 F. Supp. 2d 55, 60 (D. Mass. 2003) (Saris, J.). In the most recent decision on this issue, however, the United States District Court for the District of Massachusetts held, "this Court agrees with the Seventh and the Eleventh Circuits that strong public policy reasons – most prominently to render meaningful the Congressional mandate that all ERISA plans include an appeal process – compel plaintiffs to exhaust all benefit denial claims, regardless of their nature." Santana v. Deluxe Corp., 12 F. Supp. 2d 162, 175 (D. Mass. 1998); see also Diaz v. United Agr. Employee Welfare Benefit Plan and Trust, 50 F.3d 1478, 1484 (9th Cir. 1995) (requiring

---

[4] Dr. Alexander's argument that BWPO failed to provide him with any information concerning the set-off also misses the mark. BWPO corresponded with Dr. Alexander and his attorney for over two years, met with them on several occasions, and provided them with various accounting records in response to Dr. Alexander's requests for information.

exhaustion for claim for benefits under § 510, reasoning that plaintiffs may not "attach a statutory violation sticker to his or her claim and then use that label as an asserted justification for a total failure to pursue the congressionally mandated internal appeal procedures").

Furthermore, even those courts "not requiring exhaustion generally reached their decision because there was only a statute to interpret, or because the plaintiff was raising purely legal claims." Suozzo v. Bergreen, 2003 WL 22387083, at * 7 (S.D.N.Y. 2003) (internal citations omitted). In Suozzo, for example, the Court ruled that a plaintiff must exhaust before bringing a claim under § 510 which requires plan-specific factual determinations, reasoning, "while these questions ultimately go to the Plan's regulatory compliance, they do not involve a 'purely legal claim' nor are they strictly a matter of statutory interpretation, and both issues could have been addressed by the Plan Administrative Committee if raised during the appeal process." 2003 WL 22387083, at * 7. Likewise, plaintiff's claim for relief under § 510 is a claim for benefits which requires examination of the UDC and FRBP, and may easily be addressed during the appeal procedure that is currently in process.

## CONCLUSION

For the foregoing reasons, and those set forth in their Memorandum of Law in Support of Motion to Dismiss, defendants respectfully request that the Court grant their motion to dismiss the Complaint in its entirety.

Respectfully submitted,

BRIGHAM AND WOMEN'S PHYSICIANS ORGANIZATION, INC., BOSTON NEUROSURGICAL FOUNDATION INC., BRIGHAM SURGICAL GROUP FOUNDATION, INC. DEFERRED COMPENSATION PLAN, BRIGHAM SURGICAL GROUP FOUNDATION, INC. FACULTY RETIREMENT BENEFIT PLAN, COMMITTEE ON COMPENSATION OF THE BRIGHAM SURGICAL GROUP FOUNDATION, INC., PETER BLACK, M.D., FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS CO., INC. AND FIDELITY MANAGEMENT TRUST CO., INC.

By their attorneys,

_____
David C. Casey (BBO No. 077260)
Gregory C. Keating (BBO No. 564523)
Laurie Drew Hubbard (BBO No. 651109)
LITTLER MENDELSON, PC
225 Franklin Street, 26th Floor
Boston, MA 02110
(617) 217-2831

Dated: July 2, 2004

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served upon the attorney of record for each other party by hand on July 2, 2004.

_____
Laurie Drew Hubbard

Boston:2482.1 047950.1000