UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EBEN ALEXANDER, III, M.D.<br><br>Plaintiff,<br><br>v.<br><br>BRIGHAM AND WOMEN'S PHYSICIANS ORGANIZATION, INC., successor to Brigham Surgical Group Foundation, Inc., BOSTON NEUROSURGICAL FOUNDATION, INC., BRIGHAM SURGICAL GROUP FOUNDATION, INC. DEFERRED COMPENSATION PLAN, BRIGHAM SURGICAL GROUP FOUNDATION, INC. FACULTY RETIREMENT BENEFIT PLAN, COMMITTEE ON COMPENSATION OF THE BRIGHAM SURGICAL GROUP FOUNDATION, INC., and PETER BLACK, M.D.<br><br>Defendants. | Case No. 04-10738-MLW |

**PLAINTIFF'S STATEMENT OF UNDISPUTED
MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1**

Pursuant to L.R. 56.1, plaintiff, Dr. Eben Alexander, hereby respectfully submits this statement of undisputed material facts in support of plaintiff's motion for summary judgment on Counts IX and XII of the Complaint:

**The BSG Compensation Scheme**

1. Dr. Alexander was hired in 1988 as a neurosurgeon by the Brigham Surgical Group Foundation, Inc. ("BSG") (Agreed Facts for Cross Summary Judgment Motions ("Ag. Facts") ¶ 1").



2. BSG was a non-profit, tax-exempt corporation organized to carry out the purposes of Harvard Medical School relating to the education and training of undergraduates in the field of surgery and to teach surgery to surgical residents, by acting as and conducting the Department of Surgery at the Brigham and Women's Hospital (Ag. Facts ¶ 2 & Ex. B to Ag. Facts at § 1.01).

3. Like all BSG surgeons, Dr. Alexander's compensation was determined in accordance with BSG's Professional Staff Compensation Policy ("Compensation Policy") (Ag. Facts ¶ 3 & Ex. A to Ag. Facts).

4. The stated objective of the BSG Compensation Policy was "[t]o provide a system of compensation that will enable the acquisition and retention of a professional staff of national and international stature and assure a balanced program of care, teaching and research." (Ex. A to Ag. Facts at p. 1).

5. Compensation paid to members of BSG's professional staff was subject to the limitations set forth in the Harvard System of Titles, Appointments and Compensation Arrangements for the Faculty of Medicine of Harvard University (Ex. A to Ag. Facts at p. 1).

6. Under the Compensation Policy, BSG surgeons received two salary components: (i) "OR-TEACHING" for billable and operative related services and (ii) "NON-OR TEACHING" for activities that are non-billable (Ex. A to Ag. Facts, *passim*).

7. The surgeons' OR-TEACHING salary was "based on their OR-TEACHING salary for the previous Academic Year (AY) plus 0-50% of any net practice surplus for such prior year but within [Harvard] ceiling, as determined by the Surgeon-in-Chief." (Ex. A to Ag. Facts at ¶ 1).

8. A practice surplus was calculated on each surgeon's net practice income "by finding the difference between the income resulting from Member OR-TEACHING activity and Member expenses during the [academic year]." (Ex. A to Ag. Facts at Appendix A).

Year, reduced by [certain other contributions]…" (Ex. C to Ag. Facts at § 3.01).

16. The term "Employer" under both the UDC and FRBP is the Brigham Surgical Group Foundation, Inc. (See Ex. B to Ag. Facts at §1.01 and Ex. C at §1.01).

**Eligibility to Participate in UDC and FRBP**

17. The UDC provides that the following BSG employees are covered by the UDC:

> The "Employees" are surgeons who are members of the full-time faculty of the Harvard Medical School and are employed by the Employer to perform and teach surgery in the clinical setting of the Brigham and Women's Hospital by collaborating with students and residents in the practice of surgery, in research, and in the development of theory. The Employees are paid by the Employer which (with few exceptions) is their only source of earned income and which is required to observe certain limitations imposed by the Harvard Medical School on total compensation which may be earned by members of its full-time faculty.

(Ex. B to Ag. Facts at § 1.02).

18. Likewise, Section 2.01 of the FRBP defined "Eligibility" as follows: "Participants hereunder shall all be employees of the Employer who are members of the full-time faculty of the Harvard Medical School; provided, that the Committee on Compensation of the Employer (the "Committee") may limit participation in order to fulfill the intent set forth in Section 5.02." (Ex. C to Ag. Facts at § 2.01).

19. From 1997 through 1999, BSG professional staff principally included surgeons, almost all of whom were members of the full-time faculty of the Harvard Medical School (Ag. Facts ¶¶ 7-10).

20. In contrast, from 1997 through 1999, BSG non-professional staff principally included non physician staff such as: billing specialists, billing supervisors, coders, reimbursement managers, billing managers, accountant, financial analysts, and managers, human resource personnel, physician assistants, division administrator, RN/nurse practitioners, research assistants, information systems personnel, and administrators (Ag. Facts ¶ 11).

## The Hospital's Setoff from Dr. Alexander's UDC and FRBP Accounts

21. After thirteen years of employment, BWPO (BSG's successor) terminated Dr. Alexander on April 13, 2001 without cause (Ag. Facts ¶ 20 & Ex. D).

22. On April 13, 2001, the BWPO notified Dr. Alexander that it intended to offset a practice deficit assessed to Dr. Alexander against monies held in his UDC and FRBP accounts:

> As you are aware, both the FRBP and UDC plans provide that upon termination of a faculty member's employment with BSG, the amounts owed to the faculty member under these deferred compensation plans will be offset by the amount of the member's practice deficit. Accordingly, as of April 20, 2001, the BWPO as successor to the BSG, will reduce your FRBP plan by $177,187.22 and your UDC plan by the remaining existing practice deficit of $264,699.94.

(Ag. Facts ¶ 20 & Ex. E).

23. On April 23, 2001, the BWPO instructed the plan administrator to reduce Dr. Alexander's FRBP account by $190,000 and his UDC account by $251,887.16 and pay the combined amount of $441,887.16 to the BWPO, over Dr. Alexander's protest (Ag. Facts ¶ 21).

24. Both the UDC and FRBP contained specific set-off provisions pursuant to which the BWPO contends it had the right to take funds from Dr. Alexander's deferred compensation accounts (Ex. B to Ag. Facts at § 2.05; Ex. C to Ag. Facts at § 3.03).

## Additional Relevant Facts Concerning BSG Employees for 1997-1999

25. In 1997, BSG employed 241 total employees, which consisted of 157 non-professional staff and 84 professional staff (Ag. Facts ¶ 7).

26. In 1998, BSG employed 274 total employees, which consisted of 180 non-professional staff and 94 professional staff (Ag. Facts ¶ 8).

27. In 1999, BSG employed 324 total employees, which consisted of 224 non-professional staff and 100 professional staff (Ag. Facts ¶ 9).

28. In 1999, BSG professional staff salary ranged from $22,000 to $665,109 while the

nonprofessional staff salary ranged from $700 to $169,143 (Ag. Facts ¶ 12).

29. In 1998, BSG professional staff compensation ranged from $28,599 to $1,397,567 while BSG non-professional staff compensation ranged from $84 to $142,058 (Ag. Facts ¶ 12).

30. In 1997, BSG professional staff compensation ranged from $39,305 to $1,499,807 while BSG non-professional staff compensation ranged from $119 to $109,587 (Ag. Facts ¶ 12).

31. In 1997, 78 surgeons in the BSG were members of the full-time faculty of the Harvard Medical School (Ag. Facts ¶ 10).

32. In 1998, 84 surgeons in the BSG were members of the full-time faculty of the Harvard Medical School (Ag. Facts ¶ 10).

33. In 1999, 88 surgeons in the BSG were members of the full-time faculty of the Harvard Medical School (Ag. Facts ¶ 10).

EBEN ALEXANDER, III, M.D.

By his attorneys,

*[signature]*

Michael Paris (BBO #556791)
Colleen C. Cook (BBO #636359)
NYSTROM BECKMAN & PARIS LLP
10 St. James Avenue, 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)

Dated: April 8, 2005

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon all counsel of record by hand on April 8, 2005.

*[signature]*
Colleen C. Cook