UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| EBEN ALEXANDER, III, M.D. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BRIGHAM AND WOMEN'S PHYSICIANS )<br>  ORGANIZATION, INC., successor to )<br>  Brigham Surgical Group Foundation, Inc., )<br>BOSTON NEUROSURGICAL FOUNDATION )<br>INC., BRIGHAM SURGICAL GROUP )<br>FOUNDATION, INC. DEFERRED )<br>COMPENSATION PLAN, BRIGHAM )<br>SURGICAL GROUP FOUNDATION, INC. )<br>FACULTY RETIREMENT BENEFIT )<br>PLAN, COMMITTEE ON COMPENSATION )<br>OF THE BRIGHAM SURGICAL GROUP )<br>FOUNDATION, INC., and )<br>PETER BLACK, M.D. )<br>)<br>Defendants. ) | Case No. 04-10738-MLW |

## AGREED STATEMENT OF FACTS FOR CROSS SUMMARY JUDGMENT MOTIONS

1. Plaintiff, Eben Alexander, III, M.D. ("Dr. Alexander") was employed by the Brigham Surgical Group Foundation, Inc. ("BSG") from 1988 to 2000. As of January 2001, Brigham & Women's Physician's Organization ("BWPO") became the successor in interest to the BSG and Dr. Alexander's employer until he was terminated on April 13, 2001.

2. BSG was and BWPO is a non-profit, tax-exempt corporation.

3. The BSG Professional Compensation Policy set forth the compensation scheme for BSG professional staff, including Dr. Alexander. A true and accurate copy of the Compensation



Policy is attached hereto as Exhibit A, and is fully incorporated herein by reference.

4. Throughout Dr. Alexander's employment, the BSG maintained two unfunded deferred compensation plans, the Unfunded Deferred Compensation plan ("UDC") and the Faculty Retirement Benefit Plan ("FRBP") (collectively, the "Plans"). True and accurate copies of the UDC and FRBP are attached hereto as Exhibits B and C, respectively, and are fully incorporated herein by reference.

5. The UDC and FRBP were deferred compensation vehicles for BSG surgeons who generated a net practice income ("NPI") in excess of Harvard Medical School's salary cap. As such, they served as a valuable means of recruiting and retaining talented physicians.

6. The UDC and FRBP were not the sole means of retirement funding for BSG physicians; BSG also offered 401(a) retirement funds to all qualified employees.

7. For the year 1997, BSG had 241 employees, which consisted of 157 non-professional staff and 84 professional staff.

8. For the year 1998, BSG had 274 employees, which consisted of 180 non-professional staff and 94 professional staff.

9. For the year 1999, BSG had 324 employees, which consisted of 224 non-professional staff and 100 professional staff.

10. From 1997 through 1999, BSG professional staff consisted primarily of surgeons. In 1997, 78 surgeons in the BSG were members of the full-time faculty of the Harvard Medical School. In 1998, 84 surgeons in the BSG were members of the full-time faculty of the Harvard Medical School. In 1999, 88 surgeons in the BSG were members of the full-time faculty of the Harvard Medical School.

11. From 1997 through 1999, BSG non-professional staff included, among others, the following positions: billing specialists, billing supervisors, coders, coding supervisors, coding and reimbursement managers, internal reviewers, billing managers, accounts payable clerks, payroll accountants, accountants, financial analysts, finance managers, chief financial officers, human resources generalists, human resources managers, receptionists/secretaries, physician assistants, division administrators, RN/nurse practitioners, operations managers, research assistants, information systems analysts, programmers, networking specialists, information systems managers, and administrators.

12. For the year 1999, BSG professional staff compensation ranged from $22,000 to $665,169 while BSG non-professional staff compensation ranged from $700 to $169,143. For the year 1998, BSG professional staff compensation ranged from $28,599 to $1,397,567 while BSG non-professional staff compensation ranged from $84 to $142,058. For the year 1997, BSG professional staff compensation ranged from $39,305 to $1,499,807 while BSG non-professional staff compensation ranged from $119 to $109,587.

13. Pursuant to Section 1.02 of the UDC and Section 2.01 of the FRBP, compensation was deferred to the UDC or FRBP only if a physician was employed by the BSG, a member of the full-time faculty of the Harvard Medical School and generated an NPI in excess of the Harvard Medical School salary ceiling.

14. Pursuant to the Compensation Policy, Exhibit A hereto, NPI was calculated annually by "finding the difference between the income resulting from BSG Member OR-TEACHING activity and Member expenses" during the academic year. "Member expenses" included all direct and allocated expenses incurred by or on behalf of the Member involved plus a Departmental Charge equal to a percentage of Net Receipts attributable to the Member's OR-

TEACHING activities during the academic year.

15. If a physician generated NPI in excess of the Harvard salary cap, an amount equal to 25% of the physician's total salary less any qualified pension amounts would be credited to the FRBP. If any NPI remained, certain pension plan contributions would be deducted, and 50% of the remainder would be credited to the UDC.

16. For the year 1997, compensation was deferred into either the FRBP or the UDC, or both Plans, for 16 out of BSG's 241 employees.

17. For the year 1998, compensation was deferred into either the FRBP or the UDC, or both Plans, for 14 out of BSG's 274 employees.

18. For the year 1999, compensation was deferred into either the FRBP or the UDC, or both Plans, for 15 out of BSG's 324 employees.

19. All of the employees for whom compensation was deferred, as noted in paragraphs 16-18, were BSG physicians and full-time members of the Harvard Medical School faculty whose NPI exceeded the Harvard salary cap.

20. The BWPO (BSG's successor) terminated Dr. Alexander on April 13, 2001, effective at the close of business on July 13, 2001. The BWPO also notified Dr. Alexander on April 13, 2001 that the practice deficit assessed to Dr. Alexander would be offset by amounts in his UDC and FRBP accounts. True and accurate copies of the letters from the BWPO to Dr. Alexander dated April 13, 2001 are attached hereto as Exhibits D and E, respectively, and are fully incorporated herein by reference.

21. On or about April 23, 2001, the BWPO offset the practice deficit that had been assessed to Dr. Alexander by reducing Dr. Alexander's UDC account by $251,887.16 and his FRBP account by $190,000.

assessed to Dr. Alexander by reducing Dr. Alexander's UDC account by $251,887.16 and his FRBP account by $190,000.

Respectfully submitted,

| For the Plaintiff | For the Defendants, |
|---|---|
| EBEN ALEXANDER, III M.D. | BRIGHAM AND WOMEN'S PHYSICIANS ORGANIZATION, INC., BOSTON NEUROSURGICAL FOUNDATION INC., BRIGHAM SURGICAL GROUP FOUNDATION, INC., DEFERRED COMPENSATION PLAN, BRIGHAM SURGICAL GROUP FOUNDATION, INC. FACULTY RETIREMENT BENEFIT PLAN, COMMITTEE ON COMPENSATION OF THE BRIGHAM SURGICAL GROUP FOUNDATION, INC., and PETER BLACK, M.D., |
| By his attorneys, | By their attorneys, |
| Michael Paris (BBO No. 556791)<br>Colleen C. Cook (BBO No. 636359)<br>NYSTROM BECKMAN & PARIS<br>10 St. James Avenue, 16th Floor<br>Boston, MA, 02116<br>(617) 778-9100 | David C. Casey (BBO No. 077260)<br>Gregory C. Keating (BBO No. 564523)<br>Laurie Drew Hubbard (BBO No. 651109)<br>LITTLER MENDELSON, PC<br>One International Place<br>Suite 2700<br>Boston, MA 02110<br>(617) 378-6000 |

Dated: April 8, 2005

C:\Documents and Settings\gkeating\Local Settings\Temporary Internet Files\OLK3\Agreed Facts (Clean).doc