UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EBEN ALEXANDER, III, M.D. )<br><br>Plaintiff, )<br><br>v. )<br><br>BRIGHAM AND WOMEN'S PHYSICIANS )<br>ORGANIZATION, INC., successor to )<br>Brigham Surgical Group Foundation, Inc., )<br>BOSTON NEUROSURGICAL FOUNDATION )<br>INC., BRIGHAM SURGICAL GROUP )<br>FOUNDATION, INC. DEFERRED )<br>COMPENSATION PLAN, BRIGHAM )<br>SURGICAL GROUP FOUNDATION, INC. )<br>FACULTY RETIREMENT BENEFIT )<br>PLAN, COMMITTEE ON COMPENSATION )<br>OF THE BRIGHAM SURGICAL GROUP )<br>FOUNDATION, INC., and )<br>PETER BLACK, M.D. )<br><br>Defendants. ) | Case No. 04-10738 MLW |

## DEFENDANTS' SUR-REPLY MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

To determine whether the UDC and FRBP qualify as valid top hat plans, plaintiff

urges the Court to apply the permissive definition of "participant" used principally in

ERISA "standing" cases. In this, he conflates two distinct standards under ERISA: the

protection of theoretical substantive rights, on the one hand, and determining a plan's

"qualification," on the other. Because actual eligibility for a deferred compensation plan

is the touchstone in top hat determination cases, plaintiff's case fails and defendants are

entitled to summary judgment.

**ARGUMENT**

I.    **THE MEANING OF "PARTICIPANT" UNDER ERISA ARISES IN TWO DIFFERENT CONTEXTS.**

The regulatory framework of ERISA is intertwined with its corresponding sections of the Internal Revenue Code (the "Code"). As one commentator has noted, "the tax-qualification requirements in the . . . Code must be read in conjunction with the ERISA minimum standards to obtain a comprehensive picture of the legal regulation of pension plan benefits." STEVEN R. BRUCE, PENSION CLAIMS, RIGHTS AND OBLIGATIONS 9 (2d ed., BNA 1993). Indeed, while certain of ERISA's standards are paralleled in the Code (*see, e.g.,* 29 U.S.C. § 1052 and I.R.C. § 410(a) (permissible age and service conditions for beginning participation in plans); 29 U.S.C. 1053 and I.R.C. § 411(a) (vesting rules)), "Congress created in the labor title of ERISA an Act that leaves the regulation of pension plans incomplete *unless* the Code's [plan coverage and benefit formula] qualification requirements are also considered." *Id.* at 10. Said differently, one must refer to the Code to understand the complete regulatory framework governing an ERISA plan. *Id.* at 6 – 10.

In this light, the meaning of "participant" under ERISA arises in two divergent contexts and is defined differently in each. On the one hand, courts construe "participant" somewhat broadly in determining one's substantive right to benefits under a plan. *See, e.g., Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117-18 (1989). On the other, courts read "participant" narrowly to determine whether a plan qualifies for ERISA's tax advantages. *See, e.g.,* Treas. Reg. § 1.410(b)-(3); *see also Federal Land Bank Ass'n v. Comm'r,* 74 T.C. 1106, 1115 (1980). The latter approach is used to determine whether a top hat plan satisfies the "select group" criteria. *See* Defendants'

Principal Brief at 14; *infra* at 6-8.

### A.    "Participant" is Defined Broadly to Determine One's Standing to Assert Substantive Rights Under ERISA.

ERISA's civil enforcement provision, 29 U.S.C. § 1132, provides relief to individuals who allege that they were wrongfully denied benefits under a plan.[1] To bring such a claim, the plaintiff must show that he is a plan participant, 29 U.S.C. § 1132(a)(1), and that he has been denied something to which he is entitled under the plan.[2] The same requirements apply to claims for breach of fiduciary duty[3] and interference with pension benefits.[4] In these contexts only, "participant" includes "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan. . ." 29 U.S.C. § 1002(7) (emphasis added). This relatively elastic definition of "participant" prevents employers from depriving employees of substantive rights, and indeed standing to sue for same, which otherwise could result were an employer to purposefully terminate an employee just before he achieved participant status. *See, e.g., McBride v. PLM Int'l, Inc.,* 179 F.3d 737, 743 (9th Cir. 1999); Kathryn J. Kennedy, *The Perilous and Ever-Changing Procedural Rules of Pursuing an ERISA Claims Case,* 70 U.M.K.C. L. Rev. 329, 344-45 (2001); *see also* 29

---

[1] For example, an individual may bring a claim under § 1132 where his employer wrongfully denies him retirement benefits, fails to pay severance benefits or denies health coverage due under a plan. Kathryn J. Kennedy, *The Perilous and Ever-Changing Procedural Rules of Pursuing an ERISA Claims Case,* 70 U.M.K.C. L. Rev. 329, 338 (2001).

[2] Certain claims under § 1132 claims may also be brought by a plan beneficiary or fiduciary, the Secretary of the Department of Labor or a State. *See* 29 U.S.C. § 1132.

[3] Plaintiffs often assert a claim for breach of fiduciary duty under ERISA in conjunction with a claim for the denial of benefits. *See* JAYNE E. ZANGLEIN & SUSAN J. STABILE, ERISA LITIGATION 78 (BNA 2004). Fiduciary duty claims also arise where the plaintiff alleges that he was mislead or uninformed about the current or proposed terms of a written term when he made a benefit decision. *Id* at 724.

[4] A plaintiff may bring a claim for interference under § 1140 by alleging, for example, that his employer terminated him to prevent him from vesting in a plan or retaliated against him for asserting rights under a plan.

U.S.C. § 1002(c).

Neither standing nor interference with inchoate rights is at issue in this case. Dr. Alexander does not contend that he was improperly prevented from becoming eligible under the terms of the UDC or FRBP. Nor does he contend that he was excluded from actual participation in the Plans. Rather, plaintiff advances the anomalous claim that the plans in which he did participate, and from which he benefited, were not valid top hat plans. His *post hoc* rationale is that because too many BSG surgeons may conceivably become eligible for participation in these Plans at some unknown point in the future, the plans fail to meet the "select group" criteria set forth in 29 U.S.C. §§ 1051(2), 1081(a)(3) and 1101(a)(1). Plaintiff mounts this opportunistic though speculative challenge because the Plans did here what they are entitled to do under the top hat exemption: they applied an offset for his accumulated practice deficit against his interest in the "unfunded" deferred compensation plans.

Even if the Court was called upon to determine whether plaintiff has standing or a basis to assert his ERISA claims, however, ERISA's definition of "participant" is not as expansive as he contends. As discussed in defendants' principal memorandum at pages 10-12, the Supreme Court circumscribed the definition of "participant" in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989), holding that it does not include those who theoretically may become eligible to participate in a plan.[5] Rather, a participant is one who shows that he likely will become eligible in the future, *id.*, or who, but for the

_____

[5] Plaintiff argues that the First Circuit limited *Firestone's* applicability in the standing context in *Vartarian v. Monsanto Co.*, 14 F.3d 697, 701 (1st Cir. 1994). In a decision issued several months after *Vartarian*, however, the First Circuit followed the *Firestone* framework to determine whether the plaintiff had standing. *Crawford v. Lamantia*, 34 F.3d 28, 32 (1st Cir. 1994) (affirming Wolf, J.). Indeed, "since *Crawford*, *Vartarian* has generally been read narrowly as creating an exception to the *Firestone* definition of participant only in cases . . . where the employee would still be a participant in the plan (and thus entitled to higher benefit levels) but for the employer's malfeasance." *Nahigian v. Leonard*, 233 F. Supp. 2d 151, 167 (D. Mass. 2002) (emphasis added).

wrongful actions of the employer, would have become a participant.[6]  *See, e.g.,*
*Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1221-22 (5th Cir. 1992); *see also*
*McBride,* 179 F.3d at 743 (affirming the use of the "but for" test); *Panaras v. Liquid*
*Carbonic Indus.*, 74 F.3d 786, 791 (7th Cir. 1996) (same); *Swinney v. Gen. Motors*
*Corp.*, 46 F.3d 512, 518 (6th Cir. 1995) (same); *Adamson v. Armco, Inc.*, 44 F.3d 650,
655 (8th Cir. 1995) (same); *Mullins v. Pfizer, Inc.*, 23 F.3d 663, 668 (2d Cir. 1994)
(applying "but-for test"); *Shawley v. Bethlehem Steel Corp.*, 989 F.2d 652, 659 (3d Cir.
1993) (same).[7]

Dr. Alexander makes no such factual showing for any of the unidentified BSG
surgeons whom he claims must be counted as plan participants in the select group
analysis.  Instead, he relies entirely on the broadest possible interpretation of *Darden v.*
*Nationwide Mutual Ins. Co.*, 717 F. Supp. 388 (E.D.N.C. 1989), which is the only case to
apply ERISA's "may become eligible" language literally, <u>and</u> to employ it at all in the
top hat determination context.[8]  Apart from *Darden*, the "may become eligible" construct
-- duly limited by *Firestone* -- is used principally in cases concerning a plaintiff's

---

[6] As plaintiff points out, some courts have even broadened the standing inquiry by considering whether the plaintiff is within "the zone of interest that ERISA was intended to protect." *See, e.g., Vartanian v. Monsanto Co.*, 14 F.3d 697, 702 (1st Cir. 1994); *but see Crawford v. Lamantia*, 34 F. 3d 28, 32 (1st Cir. 1994).

[7] The Fourth, Fifth and Tenth Circuits do not use the but-for test. Instead, they more strictly allow only people actually covered to be considered participants, reading "may become" as relating to vesting, not participation. *See Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1536 (10th Cir. 1993) (rejecting the "but for" test); *Stanton v. Gulf Oil Corp.*, 792 F.2d 432, 435 (4th Cir. 1986) (same); *Jackson v. Sears, Roebuck & Co.*, 648 F.2d 225, 228-29 (5th Cir. 1981) (same).

[8] Notwithstanding plaintiff's argument, *Simpson v. Ernst & Young*, 879 F. Supp. 802 (S.D. Ohio 1994) does <u>not</u> support the inclusion of individuals who are not presently eligible to receive benefits in top hat, select group analysis. To the contrary, the court in *Simpson* held that one of the plans at issue was not a top hat plan because there was no evidence that its participants were highly compensated. The court went on to rule that the plaintiff could be considered a "participant" <u>for purposes of § 1140</u> and essentially tracked *Firestone.*

standing to sue under ERISA's (1) denial of benefits provision, 29 U.S.C. §
1132(a)(1)(B); *see Mullins*, 23 F.3d at 667; (2) fiduciary duty requirements, 29 USC §
1104; *see Swinney*, 46 F.3d at 519; *Adamson*, 44 F.3d at 654; *Vartanian*, 14 F.3d at 699;
(3) notice requirements, 29 USC § 1132(c); *see Panaras*, 74 F.3d at 788; (4) anti-
retaliation provision, 29 USC § 1140; *see McBride*, 179 F.3d at 741; or (5) interference
provision, 29 USC § 1140; *see Shawley*, 989 F.2d at 654; *Christopher*, 950 F.2d at 1213.
It has not been extended to any plan determination cases, for either qualified or top hat
plans.[9]

### B.  Participant is Defined Narrowly to Determine Whether a Plan Qualifies for ERISA's Tax Advantages.

In contrast, the Internal Revenue Service and the courts construe participant
narrowly to determine whether a plan qualifies for ERISA's tax benefits. *See, e.g.,* I.R.C.
§ 401(a)(26)(C); I.R.C. § 410(b)(4)(A); Treas. Reg. §§ 1.401(a)(26)-5; 1.410(b)-3; *see
also Federal Land Bank Ass'n*, 74 T.C. at 1115. Thus, for purposes of testing a plan's
*bona fides*, the concept of participation is neither elastic nor permissive. Rather, it is
specific and concrete. The Code includes as participants only those employees whom the
plan "benefits"; that is, employees who actually participate in a plan or those who are
eligible to participate but have chosen not to do so.[10]  *Id.*  This approach prevents
employers from providing retirement plans to employees at either end of the
compensation spectrum in a manner which violates Code requirements. *See* Carter G.

---

[9] Even if the but-for, "may become" test applied to top hat testing, it would not aid plaintiff. The "may become" test applies only in cases where the failure to gain participant status resulted from the employer's actions. *Adamson*, 44 F.3d at 655. An employee's failure to satisfy otherwise appropriate eligibility criteria would not allow him to claim that he "may become" a participant.

[10] Typically, an employee "benefits" only when he actually participates in a defined contribution or defined benefit plan. Treas. Reg. §§ 1.401(a)(26)-5; 1.410(b)-3. For 401(k) plans, however, the Code considers employees who are eligible to participate but have chosen not to as "benefiting." *Id.; see also* Treas. Reg. §§ 1.401(k)-6; 1.401(m)-5.

Bishop and Marian McMahon Durkin, *Nonqualified Deferred Compensation Plans: A Review and Critique*, 17 Wm. Mitchell L. Rev. 43, 69 (1991); *see also* 6 MERTENS LAW OF FED. INCOME TAX'N § 25B: 01.

**C.    In Practice, Courts Consider Only Eligible Employees as "Participants" In Determining Whether a Top Hat Plan Satisfies the Select Group Criteria.**

Other than *Darden*, plaintiff cites no top hat determination case in which a court included as plan participants employees who had not satisfied all of a plan's eligibility criteria. Because he has no good law to support his argument, plaintiff therefore urges this Court to review the top hat cases superficially, without focusing on their implicit analysis. Although few cases have addressed squarely and none have definitively probed how courts should identify "participants" in determining whether a plan satisfies top hat criteria, the courts have adopted the Code's approach. They include only those employees who have satisfied all plan eligibility criteria. They do not include, as plaintiff contends, those who might satisfy plan eligibility criteria in the future. *See, e.g., Demery v. Extebank Deferred Compensation Plan (B)*, 216 F.3d 283, 288 (2d Cir. 2000); *Gallione v. Flaherty*, 70 F.3d 724, 728 (2d Cir. 1995); *Belka v. Rowe Furniture Corp.*, 571 F. Supp. 1249, 1252-53 (D. Md. 1983); *In re: The IT Group, Inc.*, 305 B.R. 402, 410 (Bankr. D. Del. 2004). Thus, all BSG employees who satisfied the Plans' eligibility criteria should be considered participants in determining whether the Plans satisfy the top hat, select group criteria. No more, no less.

For his part, plaintiff argues that *Demery* can be read to support his position because the Second Circuit characterized as participants those employees to whom the plan was offered, as opposed to those who ultimately chose to participate in it. Plaintiff's argument misses the mark. Whether or not an employee who is eligible to participate in a

plan chooses to do so is irrelevant. In all, *Demery* does nothing to support the proposition that "participant" should include employees who might conceivably become eligible to participate at some unknown point in the future, the lynch pin argument in plaintiff's case.

## II.    THE PLANS, ON THEIR FACE AND IN OPERATION, COVER A SELECT GROUP OF HIGHLY COMPENSATED BSG EMPLOYEES ONLY.

Plaintiff argues that the UDC and FRBP are not limited to a "select group" because they "impose no limitations on the number of surgeons who may be eligible to participate in the plans." Plaintiff's Reply Memorandum at 4. This argument fails for three reasons. First, plaintiff advances no authority to support it, and there is none. The cases plaintiff cites involve eligibility criteria which *resulted* in a small number of participants. *See, e.g., Demery*, 216 F.3d at 285 (employer selected high level employees to participate); *Gallione*, 70 F.3d at 727 (employees eligible if they became a full-time union officer); *Carrabba*, 38 F. Supp. 2d at 471-78 (employer invited certain highly compensated employees to become participants); *Belka*, 571 F. Supp. at 1252 (employer offered deferred compensation agreement to certain high level and highly compensated employees). None require that, to pass muster under ERISA's top hat exemption, the plan documents must explicitly establish a specific number or even ratio of participants.

Second, relevant Plan documents explain that they do not apply and indeed are not available to employees who have not satisfied all three eligibility criteria. Specifically, the Compensation Policy provides that participation in the Plans is limited to those surgeons who generated NPI in excess of the Harvard salary cap. *See* Agreed Statement of Facts for Cross Summary Judgment Motions (Ag. Facts), Exhibit A. Thus, a BSG surgeon who did not meet this threshold could not choose to defer a portion of his

the UDC or FRBP, his challenge that the plans are not provided to a select group of highly compensated employees must fail.

For the foregoing reasons, as well as those set forth in defendants' Memorandum of Law in Support of their Motion for Summary Judgment, defendants respectfully request that the Court issue a ruling that the UDC and FRBP constitute valid top hat plans under ERISA and dismiss Counts IX and X of the Complaint.

Respectfully submitted,

BRIGHAM AND WOMEN'S
PHYSICIANS ORGANIZATION, INC.,
BOSTON NEUROSURGICAL
FOUNDATION INC., BRIGHAM
SURGICAL GROUP FOUNDATION, INC.
DEFERRED COMPENSATION PLAN,
BRIGHAM SURGICAL GROUP
FOUNDATION, INC. FACULTY
RETIREMENT BENEFIT PLAN,
COMMITTEE ON COMPENSATION OF
THE BRIGHAM SURGICAL GROUP
FOUNDATION, INC., and PETER
BLACK, M.D.,

By their attorneys,

David C. Casey (BBO No. 077260)
Gregory C. Keating (BBO No. 564523)
Laurie Drew Hubbard (BBO No. 651109)
LITTLER MENDELSON, PC
One International Place, Suite 2700
Boston, MA 02110
(617) 378-6000

Dated: June 29, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served upon the attorney of record for each other party by hand on June 29, 2005.

*Laurie Drew Hubbard*

Laurie Drew Hubbard

Firmwide:80143829.5

- 11 -