UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| EBEN ALEXANDER, III, M.D. | ) | |
| Plaintiff, | ) | Case No. 04-10738-MLW |
| v. | ) | |
| BRIGHAM AND WOMEN'S PHYSICIANS ORGANIZATION, INC., successor to Brigham Surgical Group Foundation, Inc., BOSTON NEUROSURGICAL FOUNDATION INC., BRIGHAM SURGICAL GROUP FOUNDATION, INC. DEFERRED COMPENSATION PLAN, BRIGHAM SURGICAL GROUP FOUNDATION, INC. FACULTY RETIREMENT BENEFIT PLAN, COMMITTEE ON COMPENSATION OF THE BRIGHAM SURGICAL GROUP FOUNDATION, INC., and PETER BLACK, M.D. | ) | |
| Defendants. | ) | |

## PLAINTIFF'S EXPERT DISCLOSURE

Pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, plaintiff Eben Alexander, III, M.D. hereby discloses Professor Norman Stein of the University of Alabama School of Law, 1600 Forest Lake Drive, Tuscaloosa, Alabama 35401 as an expert witness who may testify at the trial of this action on plaintiff's behalf. A copy of Professor Stein's expert report and curriculum vitae is attached hereto.

Plaintiff reserves the right to modify and/or supplement this expert disclosure, including identification of additional experts, if necessary, prior to trial.

Plaintiff Eben Alexander, III, M.D.
By his attorneys,


Michael Paris (BBO #556791)
Colleen C. Cook (BBO#636359)
NYSTROM BECKMAN & PARIS LLP
10 St. James Avenue, 16th Floor
Boston, Massachusetts 02116
(617) 778-9100
(617) 778-9110 (fax)

DATED: May 24, 2006

## CERTIFICATE OF SERVICE

I, Colleen C. Cook, Esquire, hereby certify that I have served the above document upon the following individual by electronic mail and First Class mail:

David C. Casey, Esquire
LITTLER MENDELSON, PC
One International Place, Suite 2700
Boston, MA 02110


Colleen C. Cook

Dated: May 24, 2006

2

## EXPERT REPORT OF NORMAN P. STEIN

### Introduction

I have been asked for my expert opinion concerning whether the Faculty

Retirement Benefit Plan ("FRBP") and the Unfunded Deferred Compensation Plan

("UDC") of the Brigham Surgical Group Foundation, Inc. ("the Foundation") qualify as

"top hat" plans under ERISA.

### Background

I am the Douglas Arant Professor of Law at the University of Alabama School of

Law and was Director of the University of Alabama Pension Counseling Clinic from

1995 through 2004.  I joined the University of Alabama School of Law faculty in 1984.  I

have been a visiting professor at several other universities since 1987, including the

University of Texas at Austin, Indiana University (Bloomington), and the University of

California at Davis.

I received my J.D. in 1978 from Duke University, where I was elected to the

Order of the Coif.  Following law school, I was an associate with the Washington, D.C.

firm of Arnold & Porter until 1980.  From 1980 to 1981, I was a law clerk for the

Honorable Gerald Bard Tjoflat of the United States Court of Appeals for the Fifth

Circuit.  After my clerkship, I practiced law in Atlanta until 1984.

I have regularly taught J.D. classes in federal income tax, labor, business, and

employees benefits, including Federal Taxation I and II; Employee Benefits; Employee

Benefits Clinic (though the Pension Counseling Clinic); Corporate Tax; Business

Organizations; and Labor Law.  I also have taught classes in deferred compensation and

tax accounting in the University's LL.M. program in taxation.

I am a member of the advisory panel of the BNA Pension Reporter, have served

as counsel to the American Association of Retired Persons in pension cases, was a consultant to the General Accounting Office, taught in the IRS General Counsel's continuing education program, and have been chair of the Employee Benefit Section of the Association of American Law Schools and the Teaching Employee Benefits Subcommittee of the American Bar Association, and co-chair of the ABA TIPS Employee Benefits Committee. I am a charter Fellow of the American College of Employee Benefits Counsel and was elected as a fellow of the National Academy of Social Insurance. I have also served as a member of the General Accounting Office Panel of Experts on retirement security issues and was appointed by Secretary of Labor Alexis Hermann to the Department of Labor's Advisory Counsel on Employee Welfare and Employee Pension Plans (generally referred to as the ERISA Advisory Counsel) for a three-year term. In addition, I have been president of the University of Alabama Faculty Senate and am currently treasurer of the Society of American Law Teachers.

I have published over twenty articles and book chapters, three books and numerous book supplements on ERISA related topics. I also have been a lecturer, moderator, and on panels throughout the country to discuss ERISA related topics sponsored by a myriad of organizations, including the Ford Foundation, American Law Institute, American Bar Association, Pension Rights Center, the United States Department of Labor, Pension Benefit Guaranty Corporation, and Administration on Aging. In addition, I have testified before Congress and administrative agencies on pension issues on several occasions as listed on my curriculum vitae, which is attached to this report.

In short, I am familiar with ERISA's statutory language, legislative history and intent, as well as the treatment of the statute by the executive, legislative, and judicial

2

branches of government.

**Opinions**

Based on my experience outlined above, and the documents that I have reviewed in connection with this matter, I am of the following opinions:

1.  In the years leading up to Congressional passage of ERISA, a cabinet-level taskforce appointed by President Kennedy and the Senate Labor Committee (after a series of hearings) each identified serious problems with private sector pension plans. These problems included: (i) inadequate disclosure of the details of employee benefit plans to plan participants; (ii) forfeiture of plan benefits by participants despite long years of employment; (iii) failure of plan sponsors and plan administrators to conform to high standards of fiduciary behavior; and, (iv) failure of plan sponsors to fund plans adequately. Congress enacted ERISA to address, among others, these problems. ERISA's substantive requirements apply generally to all private-sector retirement plans, which are plans that result in the deferral of income.

2.  Congress included exceptions to ERISA's requirements. One of these exceptions provides that certain deferred compensation plans for a select group of management or highly compensated employees, often colloquially referred to as "top-hat plans," were subject to ERISA's disclosure and reporting requirements but were exempt from other ERISA provisions, including its fiduciary rules and its minimum vesting standards. Moreover, the Department of Labor, by regulation, has substantially limited the reporting and disclosure obligations of top-hat plans.

3.  The Department of Labor has explained that, in its view, the rationale for the top-hat exception was that certain employees do not require all of the protections afforded by ERISA because they have the ability to affect or substantially influence,

3

through negotiation or otherwise, the design and operation of their deferred compensation and therefore did not need ERISA's substantive rights and protections. See DOL Advisory Opinion Letter 90-14A. In my view, the Department of Labor's explanation for the top-hat plan exception is an accurate reflection of Congressional intent and one that is widely shared by the pension community.

4.  A necessary condition for a plan to be a "top-hat" plan is that the employees who participate in the plan have the ability to negotiate for adequate security of benefits and other protections. Neither the UDC nor the FRBP provide employees with such opportunity. A potential physician employee of the Foundation is presented with a contract under which he agrees that his pay will be set by a compensation policy. The compensation policy is established by a committee of directors of the Foundation, who (under an agreement that the Foundation entered with the IRS in settlement of a tax dispute) must be outside directors of the Foundation who represent the public interest. There does not appear to be any opportunity for physicians to negotiate with the Committee on the terms of their deferred compensation. Moreover, because the amount of annual take-home compensation must conform to limits set by Harvard Medical School, there does not appear to be any opportunity for physicians to negotiate a different mix of take-home and deferred compensation. The physicians thus lack the ability to negotiate to shape the terms of their deferred compensation.

5.  In effect, a physician who is offered a position on the Harvard medical faculty through the Foundation must sign a contract of adhesion in order to accept that position and that contract permanently ties him to a deferred compensation program whose provisions, restrictions, and limitations are not subject to negotiation. Further, it is my understanding that many physician employees begin service at Harvard at relatively early

4

stages in their post-training medical careers and are unlikely to retain experienced ERISA counsel to review the terms of the deferred compensation plan and compensation policies of the BSG, which terms are not easily accessible to laypersons or lawyers without substantial experience with Title I of ERISA.

6.  A plan is exempt from ERISA fiduciary, funding, and vesting provisions if it is "maintained by an employer primarily for the purpose of providing deferred compensation." The UDC and FRBP appear to be maintained not primarily for the purpose of providing deferred compensation, but for mediating the various compensation restrictions imposed by Harvard on the annual compensation of its professors and the fluctuating annual finances of a medical practice at the Brigham & Women's Hospital. In years in which a physician's net practice income exceeds Harvard compensation limits, contributions are made into the UDC and FRBP. And in years in which net practice income falls below the level in prior years, contributions are not made and the physician must repay the practice. Moreover, the compensation policy permits the UDC assets to be used to pay current salary when usual compensation falls below the Harvard ceiling. The FRBP can also be offset to repay the BSG for loans, including home loans secured by a mortgage. Thus, the UDC and FRBP were not designed primarily to provide deferred compensation, but rather to balance the fluctuating finances of a medical practice with the requirements of Harvard's limits on current annual compensation.

7.  It is my opinion that in order to determine the number of participants in the UDC and FRBP, you must include any employee or former employee who may in the future receive benefits under a deferred compensation plan because the ERISA definition of "participant" includes anyone who may become eligible to receive such benefits. Thus, every physician is a participant in each plan, regardless of whether they receive an

allocation in a particular year. The percentage of participants in the FRBP and UDC is approximately 30% of the BSG's total workforce. It is my opinion that participation of approximately 30% of a firm's employees in a plan is inconsistent with its characterization as a top hat plan, even if only a relatively small percentage of the participants receive an allocation in any particular year.

## Data and Documents Considered in Forming Opinions

In addition to the ERISA statutory scheme and various case law on top hat plans, I have reviewed the following documents in reaching my conclusions:

a.  The Brigham Surgical Group Foundation, Inc. Professional Staff Compensation Policy (revised 5/16/96);

b.  The Deferred Compensation Plan of the Brigham Surgical Group Foundation, Inc. (adopted June 22, 1982);

c.  The Faculty Retirement Benefit Plan of the Brigham Surgical Group Foundation, Inc. (adopted July 1, 1989 and amended 7/29/91);

d.  Complaint dated April 12, 2004 (with exhibits);

e.  Facsimile from Gregory Keating to Michael Paris dated December 15, 2004; and,

f.  Facsimile from David Casey to Colleen Cook dated March 14, 2005.

**Compensation**

I am being compensated at the rate of $200.00 per hour, plus expenses.

**Other Expert Testimony**

None,

Norman P. Stein

Dated: May 19, 2006

**Norman P. Stein**
1600 Forest Lake Drive
Tuscaloosa, Alabama 35401
(205) 348–1136 (office)
(205) 752–9958 (home)
*nstein@law.ua.edu*

*University of Alabama School of Law*

1992–present  Douglas Arant Professor of Law

1984–1992    Professor of Law (from 1989), Associate Professor (1987–89), Assistant Professor (1984–87)

1996–2004 Director,  Pension Counseling Clinic (supported by Unites Stated Administration on Aging)

*Academic Visits*

2002-2003    Visiting Professor, University of Maine

2000 (Fall)    Visiting Professor, University of Maine

1996–1998    Visiting Professor, University of California at Davis

1996 (Spring) Professor, IRS Chief Counsel's Continuing Education Program

1991–1992    Visiting Professor, Indiana University at Bloomington

1987 (Spring) Visiting Assistant Professor, University of Texas at Austin

*Legal Practice*

1981–1984    Associate Attorney, Atlanta, Georgia (Trotter, Bondurant, Miller & Hishon; Kilpatrick & Cody)

1980–1981    Law Clerk, Hon. Gerald Bard Tjoflat, United States Court of Appeals for the Fifth Circuit, Jacksonville, Florida

1978–1980    Associate Attorney, Washington, D.C. (Arnold & Porter)

*Degrees*

1978        J.D. (with honors, Order of the Coif, ranked 5th in class), Duke University School of Law, Durham, North Carolina

1973        B.A. in English, New College, Sarasota, Florida

*Publications, Panels, Presentations*

*Articles*

An Alphabet Soup Agenda for Reform of teh Internal Revenue Code and ERISA Provisions Applicable to Deferred Compensation Plans, 56 SMU L Rev. 627 (Winter 2003).

Point/Counterpoint on Cash Balance Plans, in ABA Employee Benefits Committee, Labor Section Newsletter (March 2004)

Three and Possibly Four Lessons About ERISA That We Should, But Probably Will Not Learn, From Enron, 76 St. John's Law Review 855 (2002).

Leverage, Linkage, and Leakage: Problems with the Private Pension System and How They Should Inform the Social Security Reform Debate, 58 Washington & Lee L. Rev. 1369 (2001) (with Patricia Dilley).

Cross-Tested Defined Contribution Plans: A Reply to Professor Zelinsky, 49 Buffalo L. Rev. -- (2001)(with Peter Orszag), reprinted in 2001 New York University Institute on Federal Taxation, Employee Benefits and Executive Compensation Volume, 12-1 (2001).

Point/Counterpoint, A Controversy Over Age in an Age of Cash Balance Controversy, 20 ABA Tax Section Newsletter No. 4, 16 (2001), reprinted in 14 Benefits Law Journal No. 3, 83 (2001).

Discussion on Cash Balance Plans, in "The Future of Private Pensions; Proceedings of the 2001 Annual Meeting of the Association of American Law Schools, Section on Employee Benefits, 2001," in 5  Employee Rights and Employment Policy Journal 351 (2001).

Some Lessons from History: The Origins of Pension and Profit-Sharing Taxation, 2000 New York University Institute on Federal Taxation, Employee Benefits and Executive Compensation Volume, 12-1 (2000).

Beware, The Rich Are Getting Richer, *Los Angeles Times*, Op Ed Section, August 30, 2000 (reprinted in *St. Petersburg Times* and *Chicago Sun Times*).

Retirement in the Balance:  Some Serious Questions about Cash Balance Plans, Contingencies, Journal of the American Academy of Actuaries, September/October 1999 Contingencies 28 (1999).

To Tell the Truth: Does ERISA Immunize An Employer from Liability for Fraudulent Misrepresentations About An Employee Benefit Plan? 2 American Bar Association Preview of Supreme Court Cases 64 (1995).

Simplification and IRC § 415, 2 Florida Tax Rev. 69 (1994).

A Taste of Federalism:  Does ERISA Preempt State Law That Favors Some Health Care Payers Over Others? 4 American Bar Association Preview of Supreme Court Cases 174 (1994).

A Matter of Limited Interest:  Does An Employer Pay Interest for the Year in Withdrawal from a Multiemployer Pension Plan? 3 American Bar Association Preview of Supreme Court Cases  116 (1994).

ERISA and the Limits of Equity, 56 Law & Contemporary Problems 71 (1993).

Pensions—Or Perks for the Affluent, *New York Times,* Sunday Business Section, Forum Op Ed, September 20, 1992 (with Professor David Mermelstein).

What Happens To Assets in a Multiemployer Employee Benefit Plan When Some Employers Withdraw and Set Up a New Plan? 4 American Bar Association Preview of Supreme Court Cases 40 (1992).

Some Policy Implications of the Small-Plan Audit Trials, 55 Tax Notes 1407 (1992).

Pension Plans and Tax Expenditures: A Reply to Professor Zelinsky's "Classic Defense of the Status Quo," 9 Am. J. Tax Plc'y 155 (1991).

Reversions from Pension Plans: History, Policies, and Prospects, 44 Tax L. Rev. 259 (1989).

The Curious Origins and Curiouser Evolution of the Term Erroneous Actuarial Computations in Treas. Reg. § 1.401-2(b), 43 Tax Notes 335 (1989).

Taxing Reversions from Pension Plans, 35 Tax Notes 1131 (1987).

Raiders of the Corporate Pension Plan: The Reversion of Excess Plan Assets to the Employer, 5 Am. J. Tax Plc'y 117 (1986).

*Books*

Boren and Stein, Qualified Deferred Compensation Plans (West Group, two volumes).

Stein, Pension & Profit-Sharing Plans (RIA, Tax Advisors Planning Series, 1994).

Stein, Pension & Profit-Sharing Plans (RIA, Tax Advisors Planning Series, 2nd edition, 1996).

Family Wealth Management (West, publication date: August 2005)(with six c-authors).

*Book Supplements*

Boren and Stein, Qualified Deferred Compensation Plans: Spring and Fall
Supplements, 1988–2004 (1991–93 with Carolyn Smith).

*Book Chapters*

Civil War Pensions, in Encyclopedia of Major Congressional Acts (2004).

The 1894 Income Tax and the Wilson-Gorman Tariff Act, in Encyclopedia of
Major Congressional Acts (2004).

"Of Carrots and Sticks: The Paring Down of the Qualified Plan Paradigm," in
American Bar Association-American Law Institute Pension Policy Conference,
ERISA after 25 Years Conference Materials (1999).

"ERISA," in Vitt & Siegenthaler, Encyclopedia of Financial Gerontology
(Greenwood Press 1996).

"Age Discrimination in Employment Act," with Turner, in Encyclopedia of
Financial Gerontology (Greenwood Press 1996).

"Early Retirement Benefit Programs" in Monk, Columbia Encyclopedia on
Retirement (Columbia University Press 1993).

"The Costs of ERISA Preemption," in American Bar Association–American Law
Institute, Pension Invitational Conference Materials (1992).

"Trust Law and Pension Plans" in McGill, Proxy Voting by Pension Plan Equity
Securities 1–61 (Richard D. Irwin Inc. 1988).

*Interviews*

Interview with Professor Norman P. Stein, 17 ABA Section of Taxation
Newsletter No. 2, pp. 13–17  (1998).

*Selected Panels and Presentations*

Panel Participant, "Conversation on Coverage," sponsored by Ford Foundation
and Pension Rights Center, Washington, D.C., July 15, 2004.

Lecturer, CLE Presentation on Pension Litigation, Cincinnati, Ohio, Ohio Legal
Services for Elderly (March 12, 2004); St. Louis Missouri, Older Woman's
League (March 13, 2004); Lansing Michigan, ProSeniors (April 2, 2004);
Minneapolis, Minnesota Seniors Federation (April 9, 2004).

Panel Participant, Fixed Income Forum, Boston Massachusetts, March 15, 2004.

Presenter, Issues Concerning Delta Pension Plans, October, 2003, Atlanta, Georgia (discussed pension issues with approximately 500 Delta employees and retirees).

Presenter, "Communicating Benefit Options to Participants," 2002 Enrolled Actuaries Annual Conference, Washington, D.C., March 6, 2002.

Co-moderator, "From Great Expectations to Bleak House: Preparing a Benefits Case for Litigation," 2001 ABA Annual Meeting, Chicago, Illinois, program of Committee on Employee Benefits, Torts and Insurance Practice Section, August 5, 2001.

Presenter and Working Group Leader, A Conversation on Coverage (co-sponsored by Ford Foundation, Kellogg Foundation, Pension Rights Center, Century Foundation, Urban Institute, Employee Benefits Research Institute, TIAA-CREF, AARP, and Fidelity Investments), July 24-25, 2001.

"Death of Retirement Policy," Washington & Lee University Symposium on Social Security Reform, April 2, 2001.

"Cash Balance Plans and the Older Worker," program of AALS Section on Employee Benefits, 2001 AALS Annual Meeting, San Francisco, January 6, 2001.

Panelist and Planning Chair, "An ERISA Primer," Alabama Bar Institute Continuing Legal Education Foundation, Birmingham, Alabama, September 15, 2000.

"Lessons from History, The Development of Early Pension Tax Rules, 1913-1942," University of Wisconsin, Tax Theory Workshop, April 15, 2000.

"Qualified Domestic Relations Orders: Emerging Issues," ABA Tax Section Meeting, Combined Program of Committees on Employee Benefits and Domestic Relations, Washington, D.C., May 13, 2000.

"Of Carrots and Sticks: The Rise and Decline of the Qualified Plan Paradigm," Edward C. Clyde Distinguished Visiting Scholar, University of Utah School of Law, November 22, 1999.

"Cash Balance Plans," Coalition for Retirement Security, Washington, D.C. February 8, 2000.

"Tax Carrots and Regulatory Sticks: Using Tax Incentives to Encourage Employer Sponsorship of Socially Desirable Retirement Plans," ALI-ABA Pension Policy Conference "ERISA After 25 Years," Washington, D.C., October 1, 1999

Panelist, Retirement and Estate Planning, program of AALS Section on Trust and Fiduciary Law, 1999 Annual Meeting of the AALS, New Orleans, Louisiana, January 9, 1999.

Speaker, "A Day of Discussion on Pension Issues for Women," Women's Bureau of the United States Department of Labor, San Francisco, May 16, 1997.

Panelist, Pension Help Summit, co-sponsored by United States Department of Labor, Pension Benefit Guaranty Corporation, and Administration on Aging, January 25, 1997.

Moderator, Panel on Baby Boomers and Retirement, combined program of AALS Sections on Trust and Fiduciary Law, Employee Benefits, and Legal Issues of the Elderly, 1997 AALS meeting, Washington, D.C., noted in "Panelists Tackle Tax Process, Reform, and Generational Issues, 74 Tax Notes 137 (1997).

Co-Organizer, Program on Domestic Partner Benefits, combined program of AALS Sections on Gay and Lesbian Issues, and Employee Benefits, 1997 AALS meeting, Washington, D.C.

CLE Presentations on "Introduction to Employee Benefits Law," at five Legal Services Corporation locations in Alabama, Summer 1996.

Presenter, Problems with ERISA Preemption, St. John's Law School, Queens, New York, October 28, 1993.

Panelist,  American Bar Association Tax Section, Employee Benefits Committee meeting, panel on section 415, Washington, D.C., May 7, 1993.

Leader of Employee Benefits Workgroup, "Taxation Workshop," Association of American Law Schools, Washington, D.C. (October 21–22, 1992).

Panelist, "The Future of Retirement," Holland House Centennial Conference on Retirement, Grand Rapids, Michigan (October 15, 1992).

"ERISA and Equity," Law & Contemporary Problems Symposium on Modern Equity, Durham, North Carolina (March 20, 1992).

"The Costs of ERISA Preemption," ALI–ABA Pension Policy Invitational Conference, Washington, D.C (Oct. 26, 1991).

Moderator, Panel on Teaching Employee Benefits, American Bar Association Annual Meeting, Tax Section, Employee Benefits Committee, Atlanta, Georgia (Aug. 9, 1991).

"Trust Law & Pension Plans," Pension Research Council, Proxy Voting of Pension Plan Equity Securities, Ralph H. Blanchard Memorial Series, Wharton School, University of Pennsylvania, Philadelphia, Pennsylvania (May 6, 1989).

*Testimony*

Testimony before ERISA Advisory Council, United States Department of Labor, on subject of Mutual Fund Fees in 401(k) Plans, September 14, 2004.

Testimony before Senate Governmental Operations Committee, on the Pension Benefit Guaranty Corporation, May, 2004.

Testiomony before the House Ways and Means Committee, on pension funding crisis, February, 2004.

Testimony Before Senate Health, Education, Labor and Pensions Committee, on "Pension Policy and Enron," February 20, 2002.

Testimony Before House Committee on Education and the Workforce, Subcommittee on Employer-Employee Relations, "Hearings on Enron and Beyond: Enhancing Worker Retirement Security," February 13, 2002.

Testimony Before ERISA Advisory Council, United States Department of Labor, on subject of Phased Retirement, August 15, 2000.

Testimony Before ERISA Advisory Council, United States Department of Labor, on subject of Cash Balance and other Hybrid Pension Plans,  July 14, 1999.

Testimony Before the Ways & Means Subcommittee on Oversight, House of Representatives, on subject of pension reform, March 23, 1999.

Testimony Before United States Department of Labor, on Proposed Regulations on Claims Procedures for Employee Benefit Plans, February 18, 1999.

Testimony before ERISA Advisory Council, United States Department of Labor, on subject of Section 401(k) Plans and Investment in Employer Stock, September 15, 1997.

Testimony before Senate Banking Committee, on subject of Cannon Mills Pension Plan Termination, July 25, 1991 (field hearing in Kannapolis, North Carolina).

Testimony before House Select Committee on Aging, Subcommittee on Retirement Income and Employment, on subject of Pension Annuity Protection and the Failure of Executive Life, June 25, 1991.

Testimony before ERISA Advisory Council, United States Department of Labor, on subject of Relationship of Pension Plan Purchase of Commercial Annuity Contract Purchases and Participant Benefit Security, September 4, 1990.

Testimony before Senate Subcommittee on Labor, on subject of Terminating Pension Plans and Junk Annuity Contracts, February 12, 1990.

*Norman P. Stein*
*Page 8*

Testimony before House Committee on Ways and Means, Subcommittee on Oversight, on subject of Pension Benefit Guaranty Corporation's Proposal to Adopt a Variable Rate Premium, April 9, 1987.

Testimony before ERISA Advisory Council, United States Department of Labor, on subject of Pension Plan Reversions, June 12, 1986 (on behalf of Reversion Study Group, an ad hoc group of representatives of the American Association of Retired Persons, the AFL–CIO, the United Auto Workers of America, the Pension Rights Center, and others).

*Media*

Guest, *Marketplace* (National Public Radio, July 29, 2004, discussion of airline industry pension difficulties).

Guest, *Marketplace* (National Public Radio, October 14, 2003, discussion of Pension Benefit Guaranty Corporation)

Guest, *Morning Edition* (National Public Radio, 2001, discussion of pension provisions of 2001 tax legislation)

Guest, *Marketplace* (National Public Radio, 1995, discussion of Congressional proposals on pension plan taxation).

Guest, *Sunday Morning with Charles Kuralt* (CBS Television, discussion of pension plan issues, August 4, 1991).

Guest, *Good Morning America* (ABC Television, discussion of reversions from pension plans, February 12, 1990).

Consultant, *The Pension Cookie Jar* (NBC Television, documentary on pension plan terminations, August 4, 1988).

Quoted in articles on pension and employee benefit matters in New York Times, Wall Street Journal, Washington Post, Newsweek, USA Today, Christian Science Monitor, National Law Journal, Tax Notes, Newsday, Dallas Daily News, Baltimore Sun, Los Angeles Times, Chicago Tribune, Chicago Sun Times, Raleigh News and Observer, Portland Oregonian, Seattle Times, Hartford Daily Courant, Plan Sponsor Magazine, Pensions and Investments, Modern Maturity, BNA Employee Benefits Reporter, CFO Magazine, and numerous other publications.

*Norman P. Stein*
*Page 9*

## Grants

Principal Investigator, $450,000 Continuing Grants, Administration on Aging, 1995-2002 (grant to support pension counseling clinic).

## Professional Memberships, Appointments and Service

Member, General Accounting Office Panel on Retirement Income Security (appointed in 2004, meets once per year with the Comptroller General of the United States).

Member, Department of Labor Advisory Council on Employee Retirement and Welfare Benefit Plans (appointed to three year term in November 2000 by Secretary of Labor Alexis Herman; rotated off in November 2003).

Member, Steering Committee, Conversation on Coverage (project convened by Pension Rights Center, and funded primarily by the Ford Foundation (with additional funding from TIAA-CREF, AFL-CIO, AARP, The American Benefits Counsel, MetLife, Motorola, the American Society of Pension Actuaries), to bring people of different perspectives together to develop strategies to increase pension coverage among moderate and lower-income workers).

Delegate, White House Summit on Retirement Savings, Washington, D.C., February 27, 2002-March 1, 2002).

Member, Pension Discussion Group, Brooking Institution (formed in October 2003; meets approximately five times per year).

Academic Advisor to the Joint Committee on Taxation in Connection with a Study of the Overall State of the Federal Tax System, United States Congress, 2000-2001.

Member, National Academy of Social Insurance (2000-Present)

Charter Fellow, American College of Employee Benefits Counsel (2000-Present)

Member, Board of Directors, Coalition Against Poverty, Inc. (2000-2002)

Treasurer, Society of American Law Teachers (1998–Present)

Chair, Employee Benefits Section, Association of American Law Schools (1996)

Chair, Teaching Employee Benefits Committee, American Bar Association Section on Taxation (1991); Vice-Chair, Employee Benefits Committee, American Bar Association Insurance Practices Section (1997–present)

Member, *Pension & Benefits Reporter* Advisory Panel, Bureau of National Affairs, Washington, D.C. (January 1988–present)

Fellow, Employee Benefits Research Institute, Washington, D.C. (1994–present)

Reviewer, Administration on Aging Grant Applications in Pension Area (1994, 1996, 1998)

Consulting Pension Counsel, American Association of Retired Persons (1983–1994): preparation of amicus curiae briefs on behalf of AARP in pension cases, including *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101 (1988), *Mead Corp. v. Tilley,* 490 U.S. 714 (1989) and *Mertens v. Hewitt Associates,* 508 U.S. 248 (1993)

Consultant, General Accounting Office (Pension Equity Group), Washington, D.C. (1988–90)

Pro-Bono counsel in pension cases and appointed criminal cases, including *Morgan v. Zant,* 743 F.2d 775 (1984) and *Daughtrey v. Honeywell, Inc.,* 3 F.3d 1488 (1993)

*University Service*

1995–1996    President, University of Alabama Faculty Senate

From 1988    Senator, University of Alabama Faculty Senate (1988–91, 1994–96; 1998-2000, Secretary 1999-2000); Member, University of Alabama Presidential Search Committee (1995–96); Chair, Mediation and Grievance Committee (1988–89); Resources & Priorities Committee (1994–96); Staff and Faculty Benefits Committee (1989–92, 1998–present); Research Advisory Committee (1986–1989).

*Law School Service*

From 1984    Tax Moot Court Adviser (1999-present); National Moot Court Team Adviser (1994–96); Alabama Law Review Adviser (1987–89); BLSA Faculty Adviser (1987–90); Acting Director, Graduate Tax Program (1985); numerous Law School committees, including Hiring (Chair, 2001-02), Development, Curriculum, Library, and Diversity.

*Norman P. Stein*
*Page 11*

*Courses Taught*

Federal Income Taxation (18 times)

Employee Benefits (16 times, including 2 times in graduate tax program)

Employee Benefits Clinic (8 times)

Corporate Tax (4 times)

Taxation of Business Enterprises (2 times)

Advanced Income Taxation (2 times)

Tax Accounting (2 times in graduate tax program)

Poverty Law (6 times)

Labor Law (4 times)

Business Associations (2 times)

Law and Literature (4 times)

Will Drafting (2 times)

Gender and the Law (2 times)

Law and the Elderly (2 times)

Introduction to Finance and Investments (2 times)

*Norman P. Stein*
*Page 12*

*References*

Dean Kenneth Randall
University of Alabama School of Law
101 Bryant Drive
Tuscaloosa, Alabama  35487-0382
(205) 348-5117

Professor Bruce Wolk (former Dean)
University of California at Davis
400 Mrak Hall Drive
Davis, California  95616-5201
(530) 752-3343

Professor Martha Morgan
University of Alabama School of Law
101 Bryant Drive
Tuscaloosa, Alabama  34587-0382
(205) 348-1131

Professor Daniel I. Halperin
Harvard University Law School
Cambridge, Massachusetts  02138
(617) 496-5505

Karen Ferguson
Director, Pension Rights Center
1140 19th Street NW, Suite 602
Washington, D.C.  20036
(202) 296-3776

Dean Lauren Robel
Indiana University School of Law
211 S. Indiana Ave.
Bloomington, Indiana  47405
(812) 855-4140