UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EBEN ALEXANDER, III, M.D.<br><br>Plaintiff,<br><br>v.<br><br>BRIGHAM AND WOMEN'S PHYSICIANS ORGANIZATION, INC., successor to Brigham Surgical Group Foundation, Inc., BOSTON NEUROSURGICAL FOUNDATION INC., BRIGHAM SURGICAL GROUP FOUNDATION, INC. DEFERRED COMPENSATION PLAN, BRIGHAM SURGICAL GROUP FOUNDATION, INC. FACULTY RETIREMENT BENEFIT PLAN, COMMITTEE ON COMPENSATION OF THE BRIGHAM SURGICAL GROUP FOUNDATION, INC., and PETER BLACK, M.D.<br><br>Defendants. | Case No. 04-10738-MLW |

**PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE THE
TESTIMONY OF DEFENDANTS' EXPERT, STEPHEN SADOWSKI**

**INTRODUCTION**

In this ERISA action, there are three contested issues for the Court to decide at trial: (1) whether the Unfunded Deferred Compensation plan ("UDC") and Faculty Retirement Benefit Plan ("FRBP") were maintained for a "select group of management or highly compensated employees"; (2) whether the UDC and FRBP were maintained *primarily* for the purpose of providing deferred compensation; and, (3) whether plaintiff, Dr. Eben Alexander, had the ability to negotiate the design and operation of his deferred compensation plans.

Defendants propose to call Mr. Stephen Sadowski to offer expert testimony concerning

the second and third issues, i.e. the primary purpose of the plans and the bargaining power of the BSG surgeons. Mr. Sadowski's testimony should be excluded for several reasons, including:

- Mr. Sadowski, who is a consultant to academic medical centers on broad ranging issues, has no experience with the BSG or Harvard Medical School, and therefore lacks the qualifications to testify as an expert concerning the precise issues presented in this case;

- Mr. Sadowski admitted in his deposition that he was speculating as to the purposes of the UDC and FRBP; therefore, he cannot offer any meaningful testimony concerning the primary purpose of the plans (Deposition of Stephen Sadowski ("Dep.") p. 26 ("I can only speculate as to why they may have put this plan into place, based on my experience elsewhere."));[1] and,

- Mr. Sadowski admitted at his deposition that he cannot offer testimony regarding the bargaining power of the BSG surgeons (Dep. p. 53 ("I don't believe I could offer testimony on their bargaining power.")).

In short, Mr. Sadowski's proposed testimony concerning other academic medical centers has no relevance to the BSG compensation structure, and therefore, will not assist the Court in its factual findings. Accordingly, the Court should exclude Mr. Sadowski's testimony at trial. See Navarro de Cosme v. Hospital Pavia, 922 F.2d 926, 932 (1st Cir. 1991) (affirming exclusion of expert who admitted that she lacked specific knowledge about subject matter at issue and whose testimony was "too broad" and "too general").

## ARGUMENT

I. **The Court Should Exclude Mr. Sadowski's Testimony at Trial**

Federal Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determined a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

---

[1] The relevant excerpts from Mr. Sadowski's deposition are attached hereto as Exhibit A.

"Under Rule 702 of the Federal Rules of Evidence, it is the responsibility of the trial judge to ensure that an expert is sufficiently qualified to provide expert testimony that is relevant to the task at hand and to ensure that the testimony rests on a reliable basis." Beaudette v. Louisville Ladder, Inc., 2006 WL 2555925 *2 (1st Cir. 2006), citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and United States v. Diaz, 300 F.3d 66, 73 (1st Cir. 2002).

"[A] witness must be qualified in the *specific* subject for which his testimony is offered." Whiting v. Boston Edison Co., 891 F. Supp. 12, 24-25 (D. Mass. 1995) (excluding experts based on lack of qualifications in the fields of the proposed testimony) (emphasis in original). Moreover, proposed expert testimony that is too broad and too general with little probative value should be excluded. Navarro de Cosme, 922 F.2d at 932. Likewise, an expert's testimony which is grounded in "anecdotal experiences" and is "speculative, at best" is not admissible. United States v. Sebaggala, 256 F.3d 59, 66 (1st Cir. 2001) (affirming exclusion of expert where proposed testimony was tenuous, irrelevant, and unnecessary). Expert testimony also may excluded where the court, as factfinder, is able to understand the evidence and determine the facts at issue without expert assistance. Williams v. Poulos, 11 F.3d 271, 282 (1st Cir. 1993) (excluding expert was not abuse of discretion).[2]

### A. Mr. Sadowski Lacks the Qualifications to Testify as to Top Hat Plans

Mr. Sadowski is a consultant to various academic medical centers. (See Mr. Sadowski's

---

[2] At the pretrial conference, Plaintiff's counsel informed the Court that they had retained an expert largely because Defendants had retained an expert. Both sides advised the Court at the pretrial conference that they planned to file motions in limine to strike the other's expert. Defendants' counsel then offered to drop their motion to exclude if Plaintiff agreed to do the same. After the pretrial conference, Plaintiffs proposed to drop the motions in limine (or, alternatively, forego calling any experts altogether), but Defendants' counsel refused. Plaintiff believes that the Court likely is able to determine the issues without the assistance of experts. But, for parity's sake and given that this case presents novel issues in this jurisdiction, Plaintiff respectfully requests that the Court either allow both experts to testify or exclude both.

Curriculum Vitae attached hereto as Exhibit B). At deposition, Mr. Sadowski described his work as assisting clients on a broad range of issues related to management and financing in seeking to improve his clients' performance. (Dep. 12-13). Mr. Sadowski has published no material on the subject of top hat plans. (Dep. 60-61). Mr. Sadowski does not design top hat plans. (Dep. 62). Rather, his experience with top hat plans is limited to making suggestions to his clients that they should consider top hat plans, in the same manner as he might suggest other policies, such as time-off or tuition assistance. (Dep. 63). Mr. Sadowski does not concern himself with whether the design of a deferred compensation plan which he might suggest for a client would qualify as a top hat plan. (Dep. 66). In addition, Mr. Sadowski conceded that he cannot testify as to the operation at the BSG or Harvard Medical School. (Dep. 81). Quite simply, Mr. Sadowski has no expertise in ERISA or top hat plans, and no specialized knowledge concerning the design of the UDC and FRBP, or Harvard Medical School. Thus, Mr. Sadowski lacks the qualifications to offer relevant testimony and he should be excluded on this basis alone. Whiting, 891 F. Supp. at 24; Fed. R. Evid. 702.

### B. Mr. Sadowski's Testimony is Not Relevant or Reliable

#### 1. Mr. Sadowski Conceded that His Opinion Concerning the Purpose of the Plans was Based on Speculation

At his deposition, Mr. Sadowski was asked whether he intended to offer an expert opinion as to the purpose of the UDC and FRBP. Mr. Sadowski responded with three possible purposes for the plans – a means for retirement savings, recruitment, and retention. (Dep. 25). When asked the basis of his opinion, however, Mr. Sadowski candidly admitted that he was speculating on the purposes. (Dep. 26 ("Yes. I would speculate that those are – the three purposes I gave you, I'm speculating, are reasons they may have put the plan into place.")). Mr.

Sadowski testified that the basis for his opinion was his experience with <u>other</u> academic medical centers, but admitted that he had not seen plans identical to the UDC or FRBP at any other medical center. (Dep. 28). In fact, Mr. Sadowski testified that the compensation program at an academic medical center must be individualized to meet each particular client's needs. (Dep. 64 ("It varies by client, given the various constructs of the academic medical centers that differ, given their different objectives.")). Mr. Sadowski's general testimony concerning the purpose of deferred compensation plans at other medical academic centers has no bearing on the <u>primary</u> purpose of the UDC and FRBP at issue in this case.

Moreover, when pressed as to the primary purpose of the UDC and FRBP, Mr. Sadowski hedged:

> Q. Okay. And amongst those three [purposes], which in your opinion would be the primary purpose for the UDC and FRBP?
>
> A. I'm not real comfortable saying that there's a primary purpose because these are interrelated purposes. They don't – they're not mutually exclusive. However, I would believe that the primary purpose was probably supplemental retirement.

(Dep. 71).

Mr. Sadowski then testified that the basis of that opinion was his general experience and the deposition testimony of Dr. John Mannick, BSG's former President. Defendants intend to call Dr. Mannick at trial to testify concerning the primary purpose of the plans. Defendants should not be permitted to call Mr. Sadowski whose testimony, by his own admission, is based on speculation and Dr. Mannick's deposition testimony. Mr. Sadowski's proposed testimony lacks a reliable basis and should be excluded. <u>Beaudette</u>, 2006 WL 2555925 at *2.

### 2. Mr. Sadowski Admitted that He Cannot Offer Testimony Concerning the Bargaining Power of the BSG Surgeons

Mr. Sadowski's expert report did not state that he would render any opinions concerning

the issue of bargaining power. (See Expert Report attached hereto as Exhibit C). Defendants stated in the Joint Pretrial Memorandum, however, that Mr. Sadowski would testify "that highly profitable physicians have significant bargaining power." (Joint Pretrial Memorandum at p. 4). When Mr. Sadowski was asked at his deposition whether he intended to offer an opinion at trial concerning whether the BSG surgeons had bargaining power with respect to negotiating the terms of the UDC and FRBP, Mr. Sadowski responded, "*I don't believe I could offer testimony on their bargaining power.*" (Dep. 53). Again, by his own admission, Mr. Sadowski cannot testify as to the critical issue of Dr. Alexander's bargaining power, and he should be excluded on this basis.

If permitted to testify, Mr. Sadowski's opinion concerning bargaining power would be a generality with no relevance to this case. Specifically, Mr. Sadowski's testimony would be that, "individual physicians wouldn't necessarily have a strong bargaining position but that a cohort of highly compensated physicians would have a strong bargaining position." (Dep. 52). Mr. Sadowski testified that the basis for this statement is that he has seen groups of highly compensated physicians leave an academic practice. (Dep. 54). To the contrary, leaving an academic practice demonstrates that the physicians lacked bargaining power to effectuate meaningful change. More importantly, however, Mr. Sadowski conceded that he had no experience with and could not identify any example of a group of highly compensated physicians who exhibited bargaining power with respect to negotiating the terms of top hat plans in particular. (Dep. 55 ("Nothing comes to mind at the moment.")).

In sum, Mr. Sadowski admitted that he cannot testify concerning the issue of bargaining power, and his general testimony concerning bargaining power of highly compensated physicians at other academic medical centers - - unrelated to top hat plans - - is irrelevant. Accordingly, Mr.

Sadowski's purported expert testimony should be excluded at trial.

## CONCLUSION

For all of the above reasons, Plaintiff respectfully requests that the Court exclude Mr. Sadowski's testimony at trial.

Respectfully submitted,

EBEN ALEXANDER, III, M.D.

By his attorneys,

/s/ Colleen C. Cook
Michael Paris (BBO #556791)
Colleen C. Cook (BBO#636359)
NYSTROM BECKMAN & PARIS LLP
10 St. James Avenue, 16th Floor
Boston, Massachusetts 02116
(617) 778-9100

Dated: September 25, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon David Casey, Esq., counsel for defendants, by electronic mail and First Class mail on September 25, 2006.

/s/ Colleen C. Cook
Colleen C. Cook

-7-