**EXHIBIT C**

# Faculty Retirement Benefit Plan

*(an unfunded deferred compensation plan)*

Adopted July 1, 1989

(amended 7/29/91)

# FACULTY RETIREMENT BENEFIT PLAN

*(an unfunded deferred compensation plan)*

Adopted July 1, 1989

*(amended 7/29/91)*

**BRIGHAM SURGICAL GROUP FOUNDATION, Inc.**

*110 Cypress Street*

*Brookline, MA 02146*

Brigham Surgical Group Foundation, Inc.

FACULTY RETIREMENT BENEFIT PLAN

1.01   SYNOPSIS.  This document sets forth the Brigham Surgical Group Faculty Retirement Benefit Plan (the "Plan"), established and maintained by the Brigham Surgical Group Foundation, Inc. (the "Employer").  The primary purpose of the Plan is to provide an opportunity to earn an incentive retirement contribution of 25% of a Participant's compensation (determined without regard to tax code limits on qualified plan contributions), offset for qualified plan and employer 403(b) contributions from any source.  The Plan is also intended to provide supplementary contributions as may be required to ensure that a Participant who receives compensation from other employers will, during the first three Plan Years in which the Participant is a participant in the Employer's qualified pension plan, receive a basic retirement contribution of 12.5% of compensation from such other employers (not to exceed the maximum contribution allowed under the tax code if all of the Participant's compensation were received from the Employer).  Required State and Federal taxes shall be withheld from contributions, but any Participant tax on earnings or appreciation thereon shall be deferred.  Benefits shall be paid from the general funds of the Employer.  The Plan Administrator shall interpret and implement this Plan.

2.01   ELIGIBILITY.  Participants hereunder shall all be employees of the Employer who are members of the full-time faculty of the Harvard Medical School; provided, that the Committee on Compensation of the Employer (the "Committee") may limit participation in order to fulfill the intent set forth in Section 5.02.

3.01   BENEFITS.  Subject to the practice surplus requirements of the next following sentence, the Employer shall credit to each Participant an amount equal to 25% of the Participant's compensation for the Plan Year, reduced by the amount of any contribution for the Participant for such Plan Year to (i) any defined contribution plan qualified under Section 401(a) of the Internal Revenue Code of 1986 as amended (the "Code"), and (ii) any arrangement under Section 403(b) of said Code.  All such contributions shall be made only to the extent a Participant has a practice surplus as determined under the Employer's Professional

1

Staff Compensation Policy, with the following exception: in the case of a Participant who is a participant in the Employer's qualified pension plan, the Employer shall (but only for the first three Plan Years in which the Participant is a participant in such pension plan) make contributions of 12.5% of the Participant's Compensation (not in excess of the compensation limit of Section 401(a)(17) of the Code, which is $222,220 for the Plan Year beginning in 1991) reduced by the amount of any contribution for the Participant for such Plan Year under (i) and (ii) above, and further provided that the sum of the contributions for such Participant for such Plan Year under (i) and (ii) above shall not exceed the amount specified in Section 415 of the Code ($30,000 for Plan Years beginning in 1991) applied as if such contributions were made by a single employer. For purposes of the forgoing reductions for contributions under (i) and (ii) above, employee salary reduction contributions shall not be counted, but employer contributions from the Employer and from other employers shall be counted. Compensation shall be such amounts, from all sources, as are counted as compensation under the Harvard System of Titles, Appointments and Compensation Arrangements as in effect from time to time.

3.02    ACCOUNTS. The Employer shall record credits made on behalf of each Participant in a retirement benefit account as a bookkeeping entry (the "Account") for such Participant. If the Participant requests the Employer to invest in one or more securities, mutual funds, insurance policies, or such other investments as may be authorized by the Committee from time to time to hold as the source of future payment hereunder and if the Employer (which shall have no obligation to do so) complies, then the balance of the Participant's Account shall reflect the amount of any net income, loss, change in value or administrative expense attributable to the investment.

3.03    SET-OFF. The Employer may set-off prior to payment of benefits to a Participant hereunder any amounts due from the Participant to the Employer, including without limitation any current or prior practice deficits as determined under the Employer's Professional Staff Compensation Policy and amounts loaned to the Participant (whether or not such loan is secured by a mortgage).

2

3.04 **FORFEITURE**. Benefits under the Plan may be forfeited and all rights of the Participant and the Participant's beneficiaries shall become null and void, in the discretion of the Committee, if the Participant is convicted of any crime against the Employer or is found by the Committee to be guilty of any act or omission gravely injurious to the reputation or other interests of the medical profession, the Employer, Harvard Medical School or any of its affiliated teaching hospitals including the Brigham and Womens's Hospital.

3.05 **NORMAL FORM of DISTRIBUTION**. The account payable to a Participant shall be charged with periodic payments beginning within the first 120 days after retirement, in amounts and at such intervals as the Plan Administrator may direct for the purpose of reducing the balance of such account (subject to adjustments pursuant to Section 3.02 above, which shall continue) to zero within 20 years after retirement. Retirement is the termination of employment with the Employer after attainment of age 66 or, if termination of employment occurs earlier, attainment of age 66.

3.06 **ALTERNATIVE FORMS; EARLY RETIREMENT**. Alternative forms of retirement benefit (including a lump sum) and retirement before age 66 are available only at the discretion of the Employer on a negotiated basis.

3.07 **DEATH BENEFIT**. The death of a Participant shall not result in forfeiture. If death occurs before retirement, the Participant shall be deemed to have retired on the date of death. If death occurs after retirement, any payments which have not yet been made shall be made at least as frequently as the rate of payment in effect prior to death. Payments after the death of a Participant shall be made to the beneficiary or beneficiaries designated and upon conditions stated in a signed designation given by the Participant to the Plan Administrator or, if no other designation is in effect, to the Participant's widow or widower, if living at the payment date and, if not, by right of representation to the Participant's issue then living, if any, and, if none is then living, to those who would take the Participant's estate under Massachusetts intestacy laws in effect and applied as if the Participant had died at the payment date.

3

4.01  **SOURCE of BENEFITS.**  Benefits shall be paid from the general assets of the Employer and shall not be funded, by trust or otherwise.  No Participant or beneficiary shall have a right greater than that of a general creditor of the Employer.  Nothing herein shall be deemed to create a trust of any kind or to create any fiduciary relationship whatsoever.

4.02  **ALIENATION of BENEFITS.**  Benefits are not subject to alienation, anticipation or assignment by a Participant or beneficiary and are not subject to be attached or reached and applied by any creditor of the Participant.

4.03  **WITHHOLDING.**  The Employer shall withhold from the amount specified in Section 3.01 such amount of income, payroll and other taxes as required by law or deemed advisable by the Employer.  The Employer shall withhold from payment of benefits such amount of income, payroll and other taxes as required by law or deemed advisable by the Employer.  The Plan Administrator shall keep such records as necessary to establish the tax basis of benefits under the Plan.

5.01  **PLAN ADMINISTRATOR.**  The Plan Administrator shall operate, interpret, and implement the Plan.  The Plan Administrator shall be an individual appointed by the Committee or, if no individual is so appointed, the Committee shall be the Plan Administrator.  The Plan Administrator's decisions and determinations (including determinations of the meaning and reference of terms used in this Plan) that are not arbitrary and capricious shall be conclusive upon all persons.  The Plan Administrator shall be the Named Fiduciary for purposes of the Employee Retirement Income Security Act of 1974 as amended ("ERISA").

5.02  **INTENT.**  This Plan is intended to be unfunded and maintained by the Employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees within the meaning of Section 201(2) of ERISA.  Contributions hereunder are intended to be to Particpants (and the amount of taxes attributable to contributions are intended to be withheld therefrom before crediting hereunder), but any earnings or appreciation thereon are not intended to be taxable until payment to the Participant

or the Participant's beneficiary. This Plan shall be construed and interpreted in a manner consistent with the foregoing intentions.

5.03   **GOVERNING LAW.** This Plan shall be governed by the law of the Commonwealth of Massachusetts to the extent that it is not preempted by Federal law.

5.04   **EFFECTIVE DATE; PLAN YEAR.** This document is a clarification and restatement of the Plan as effective July 1, 1989. The Plan Year shall end on June 30 of each year.

5.05   **AMENDMENT or TERMINATION.** The Employer reserves the right to terminate or amend the Plan, in whole or in part, at any time, and thereby reduce or eliminate benefits for some or all Participants.

5.06   **NO CONTRACT of EMPLOYMENT.** This Plan shall not constitute an express or implied contract of employment between Employer and Participant.

6.01   **CLAIMS and REVIEW.** All inquiries and claims respecting the Plan shall be in writing and shall be directed to the Plan Administrator at such address as may be specified from time to time.

   (a)   **CLAIMS.** In the case of a claim respecting a benefit under the Plan, a written determination allowing or denying the claim shall be furnished by the Plan Administrator to the claimant promptly upon receipt of the claim. A denial or partial denial of a claim shall be dated and signed by the Plan Administrator and shall clearly set forth: (1) the specific reason or reasons for the denial; (2) specific reference to pertinent Plan provisions on which the denial is based; (3) a description of any additional material or information necessary for the claimant to perfect the claim including an explanation of why such material or information is necessary; and (4) an explanation of the review procedure set for the below.

5

If no written determination is furnished to the claimant within thirty (30) days after receipt of claim, then the claim shall be deemed denied and the thirtieth (30th) day after such receipt shall be the determination date.

(b) **REVIEW**. A claimant may obtain review of an adverse determination by filing a written notice of appeal with the Plan Administrator within sixty (60) days after the determination date or, if later, within sixty (60) days after the receipt of a written notice denying the claim. Thereupon the Plan Administrator shall appoint one or more persons who shall conduct a full and fair review, which shall include the right: (1) to be represented by a spokesperson; (2) to present a written statement of facts and of claimant's interpretation of any pertinent document, statute or regulation; and (3) to receive a prompt written decision clearly setting forth findings of fact and the specific reasons for the decision written in a manner calculated to be understood by the claimant and containing specific references to pertinent Plan provisions on which the decision is based. A decision shall be rendered no more than sixty (60) days after the request for review, except that such period may be extended for an additional sixty (60) days if the person or persons reviewing the claim determine that special circumstances, including the advisability of a hearing, require such extension. The Plan Administrator may appoint the Plan Administrator, or any other person or persons whether or not connected with the Employer to review a claim.

All applicable governmental regulations regarding claims and review shall be observed.

BRIGHAM SURGICAL GROUP FOUNDATION, Inc.

By: _____
    Dr. John A. Mannick, President