UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| EBEN ALEXANDER, III, M.D.<br><br>Plaintiff,<br><br>v.<br><br>BRIGHAM AND WOMEN'S PHYSICIANS ORGANIZATION, INC., successor to Brigham Surgical Group Foundation, Inc., BOSTON NEUROSURGICAL FOUNDATION INC., BRIGHAM SURGICAL GROUP FOUNDATION, INC. DEFERRED COMPENSATION PLAN, BRIGHAM SURGICAL GROUP FOUNDATION, INC. FACULTY RETIREMENT BENEFIT PLAN, COMMITTEE ON COMPENSATION OF THE BRIGHAM SURGICAL GROUP FOUNDATION, INC., and PETER BLACK, M.D.<br><br>Defendants. | Case No. 04-10738 MLW |

## AFFIDAVIT OF KENNETH E. HOLMES

I, Kenneth E. Holmes, do hereby depose and state as follows:

1. I am over the age of twenty-one (21) and give this affidavit of my own free will. I make the statements contained in this Affidavit based on my personal knowledge and am competent to testify as to all facts stated herein.

2. I currently am employed by Mass. Eye and Ear Associates, Inc.

3. From November 1985 until November 2003, I was employed by Brigham and Women's Physician Organization, Inc., successor to Brigham Surgical Group Foundation, Inc. ("BSG"). I was employed as the Chief Financial Officer for BSG and later the Chief Financial Officer for the Department of Surgery within the BWPO. As part of my job duties as Chief Financial Officer, I was responsible for, among other things, overseeing all aspects of the corporation's finances, including the compensation and deferred compensation arrangements between the corporation and its employees.

4. I make this Affidavit in response to the Court's Order dated November 15, 2005 and in further support of Defendants' Motion for Summary Judgment.

### BSG's Organizational Structure

5. BSG was a membership corporation. The Members of BSG were surgeons who served as Instructors, Assistant Professors, Associate Professors, or Professors at Harvard Medical School. All Members were on the medical staff of the Brigham and Women's Hospital.

6. All Members of BSG had the opportunity to vote to elect members of the Executive Committee, which were thereby placed on the Board of Directors of BSG. The Board of Directors was responsible for managing the business of BSG.

7. BSG's Board of Directors was composed of a minimum of seven (7) directors, including the President of BSG and three (3) "Outside Directors." To qualify as an Outside Director, a person could not be an officer or employee of BSG or any other organization controlled by, or under common control with, BSG. The President, and the members of the Board of Directors who were not Outside Directors, were physicians.

8. The Members of BSG elected six (6) members of the Board of Directors to serve on the Executive Committee of the Board of Directors. The Executive Committee generally had the power to exercise all the powers of the Board of Directors, to the extent permitted by law. All of the members of the Executive Committee were physicians.

9. BSG also had a Committee on Compensation. The Committee on Compensation was composed of the President of BSG and three Outside Directors. In addition, a Member served as a non-voting member of the Committee on Compensation. The Committee on Compensation had the final authority with regard to all compensation arrangements, including deferred compensation arrangements, between BSG and the officers, directors, and employees of BSG.

10. As Chief Financial Officer of BSG, I periodically attended meetings of the Board of Directors, Executive Committee and the Compensation Committee. I occasionally served as Acting Assistant Secretary for the Executive Committee and, in such capacity, recorded the minutes of the Executive Committee's meetings. In addition, in my capacity as Chief Financial Officer, I had access to, and was familiar with, the minutes and records of the meetings of the Board of Directors, the Executive Committee, and the Committee on Compensation.

### BSG's Members Had the Power to Propose Changes to the UDC and FRBP

11. Members of BSG were eligible to participate in the following two deferred compensation plans: the Unfunded Deferred Compensation Plan ("UDC") and the Faculty Retirement Benefit Plan ("FRBP"). The purpose of these plans was to provide compensation for a select group of management, or highly compensated, employees who generated a net practice income in excess of the salary cap imposed by Harvard.

12. BSG Members had the power to propose changes to the UDC and the FRBP. The Executive Committee would consider any such proposed changes.

13. If the Executive Committee approved any such proposed changes, then such proposed changes were referred to the Board of Directors for its consideration.

14. If, after consideration of a proposed change to the UDC or FRBP, the Executive Committee concluded that such proposed change was desirous, it would vote to approve such change. Any approved, proposed changes were then submitted by the Executive Committee to the Board of Directors and then to the Committee on Compensation for final approval. For a proposed change to the UDC or FRBP to become final, such change needed to be approved by the Committee on Compensation.

### BSG's Members Modified the Terms of the UDC and FRBP

15. During the period of time in which I served as BSG's Chief Financial Officer, there were several meetings in which the Executive Committee discussed changes, which had been proposed by BSG Members, to the eligibility criteria of the UDC or FRBP. The Executive Committee also discussed the establishment of a Rabbi Trust to hold certain funds related to the UDC.

16. In 1989 or 1990, a Member proposed revising the eligibility criteria for the UDC so that all academic ranks would be eligible to participate in the UDC. At the time, the only Members who were eligible to participate in the UDC were those who held the rank of Associate Professor and above.

17. The Executive Committee considered this proposal on February 16, 1990. The Executive Committee voted to submit this proposal to the Committee on Compensation for approval.

18. On October 31, 1990, the Committee on Compensation approved this change to the UDC's eligibility criteria.

19. In 1992, Members proposed the following changes to the UDC and FRBP: (i) Members hired after October 31, 1992 at the rank of Instructor or Assistant Professor would not be eligible to participate in the UDC and FRBP during their first full three years of employment; (ii) Members holding the position of Instructor would no longer be eligible to participate in the UDC effective July 1, 1994; (iii) Members hired after October 31, 1992 in the position of Instructor would no longer be eligible to participate in the UDC, regardless of the length of their employment (i.e., they could not participate in the plan even after the 3-year "trial" period); and (iv) Members hired before October 31, 1992 would not be affected by these eligibility limitations for the UDC.

20. On October 30, 1992, the Executive Committee preliminarily approved these proposals, pending further deliberation at the next meeting of the Executive Committee.

21. On December 4, 1992, the Executive Committee voted to recommend that the Committee on Compensation adopt the following changes to the UDC and FRBP: (i) Members hired after October 31, 1992 at the rank of Instructor or Assistant Professor would not be eligible to participate in the UDC and FRBP during their first three full years of employment; and (ii) Members holding the position of Instructor would no longer be eligible to participate in the UDC effective July 1, 1994.

22. The Committee on Compensation subsequently approved these changes to the eligibility criteria for the UDC and FRBP.

Signed under the pains and penalties of perjury this ___ day of December, 2005.

Kenneth E. Holmes

Firmwide:80653317.5 047950.1002