## LITTLER MENDELSON®
### A PROFESSIONAL CORPORATION

ARIZONA

CALIFORNIA

COLORADO

DISTRICT OF
COLUMBIA

FLORIDA

GEORGIA

ILLINOIS

MASSACHUSETTS

MINNESOTA

NEVADA

NEW JERSEY

NEW YORK

NORTH CAROLINA

OHIO

PENNSYLVANIA

TEXAS

WASHINGTON

July 19, 2006

David C. Casey
Direct: 617.378.6001
Direct Fax: 617.737.0052
dcasey@littler.com

***By E-mail Attachment and First Class Mail***

Colleen C. Cook, Esq.
Nystrom Beckman & Paris, LLP
10 St. James Avenue, 16th Floor
Boston, MA 02116

> **Re:** ***Alexander v. Brigham and Women's Physicians Organization, Inc., et al.;***
> ***Civil Action No. 04-10738-MLW***

Dear Colleen:

This responds to your letters dated July 5, 2006 and July 10, 2006. First, I am available to take Professor Stein's deposition on August 9, 11, 15 or 16, and suggest that the parties split the cost of Professor Stein's travel to Boston. Mr. Sadowski is available to be deposed on August 22, 23, 24, 25, 30 or 31. Kindly advise me of your availability as soon as possible.

With regard to plaintiff's interrogatory responses, plaintiff has refused to provide information concerning communications with third parties, objecting to this interrogatory on the grounds that "it seeks information protected from disclosure by the attorney-client privilege and work product doctrine." Information obtained from potential third-party witnesses (including Dr. Eric Woodard, whom you identified in the Joint Status Report as a potential witness) may not be privileged. *See, e.g., U.S. v. Mass. Indus. Fin. Agency,* 162 F.R.D. 410, 413 (1995) ("information disclosed to [defendant's] attorneys or learned by its counsel in interviews with potential third-party witnesses needs to be provided with specificity"). Therefore, please provide a supplemental response to this interrogatory by July 28, 2006. Defendants reserve the right to make further objections to plaintiff's discovery responses, including his refusal to produce his tax returns, at a later time.

In light of the pre-trial conference now scheduled for September 7, 2006, we propose that the parties identify and exchange their trial exhibits on August 30, 2006.

Finally, it has come to our attention that the versions of the Unfunded Deferred Compensation Plan and Faculty Benefit Retirement Plan that Plaintiff attached to his Amended Complaint are not the versions in effect during the relevant time period of 1997 – 1999. Please find enclosed a copy of the UDC and FRBP as revised on October 31, 1992. These versions reflect the October 1992 revisions to the Plans, which are described in greater detail in Defendants' January 25, 2006 Proffer Regarding BSG Physician Member Bargaining Power Concerning the Terms and

Colleen C. Cook, Esq.
July 19, 2006
Page 2


Administration of the FRBP and UDC, ¶¶ 14-17.  We propose sending a brief stipulation to the Court explaining that the enclosed documents are the version of the Plans in effect during the relevant time period.  Please let me know if Plaintiff is amenable to this and I will draft a stipulation for your review.

Sincerely,

David C. Casey

David C. Casey

encls.
cc:    Gregory C. Keating, Esq.
       Laurie Drew Hubbard, Esq.

Firmwide:81308797.1


BSG PROPRIETARY

# DEFERRED COMPENSATION PLAN

### *(an unfunded plan)*

**Adopted June 22, 1982**

**(Revised 10/31/92)**

**BRIGHAM SURGICAL GROUP FOUNDATION, Inc.**
*110 Cypress Street*
*Brookline, MA 02146*

BSG PROPRIETARY

## *Preamble*

*Eligibility for benefits under this Plan was changed effective 10/31/92. Under the new eligibility rules, faculty members at the rank of Instructor who have accrued benefits under this Plan prior to 10/31/92 will cease to be eligible for benefits on 7/1/94. Faculty members hired at the rank of Instructor after 10/31/92 shall not become eligible for benefits until completing three (3) full years of employment and being promoted to the rank of Assistant Professor. Faculty members hired at the rank of Assistant Professor after 10/31/92 shall not become eligible for benefits until completing three (3) full years of employment with the Employer.*

*The benefits for faculty members at the rank of Associate Professor and Professor remain unchanged.*

June 22, 1982

## THE BRIGHAM SURGICAL GROUP FOUNDATION, INC.

### Unfunded Deferred Compensation Plan

### I - RECITALS

**1.01  Employer.** The "Employer" is the Brigham Surgical Group Foundation, Inc.,  a tax-exempt corporation organized under Massachusetts laws to carry out the purposes of Harvard Medical School relating to the education and training in the field of surgery of undergraduates enrolled in said school and to teach surgery to surgical residents,  by conducting the Department of Surgery at the Brigham and Women's Hospital in Boston, Massachusetts. The performance of surgery is the Employer's primary medium of instruction and the primary source of support for its educational activities.

**1.02  Eligible Employees.** The "Eligible Employees" are surgeons who are members of the full-time faculty of the Harvard Medical School and are employed by the Employer to perform and teach surgery in the clinical setting of the Brigham and Women's Hospital by collaborating with students and residents in the practice of surgery,  in research,  and in the development of theory. Employees at the rank of Instructor who have accrued benefits under this Plan prior to 10/31/92 shall be considered Eligible Employees for the purposes of this Plan but shall not be eligible for the accrual of amounts credited under paragraph 2.01 after 7/1/94.  Employees at the rank of Instructor hired after 10/31/92 shall not be Eligible Employees until the completion of three (3) full years of employment with the Employer and promotion to the rank of Assistant Professor. Employees at the rank of Assistant Professor hired after 10/31/92 shall not be Eligible Employees until the completion of three (3) full years of employment with the Employer. The Eligible Employees are paid by the Employer which (with few exceptions) is their only source of earned income and which is required to observe certain limitations imposed by the Harvard Medical School on the total compensation which may be earned by members of its full-time faculty.

**1.03  Committee on Compensation.** The By-Laws of the Employer give to the Committee on Compensation exclusive authority to determine the compensation of Eligible Employees. The Committee is controlled by outside Directors of the Employer,  who represent the public interest. The Committee was established by agreement with the Internal Revenue Service in settlement of a United States Tax Court case relating to the exempt status of the Employer.

### II - DEFERRAL OF COMPENSATION

**2.01  Amount Credited.** If the total compensation of an Eligible Employee established by the Committee exceeds the maximum permissible amount of compensation payable currently  in cash or fringe benefits under the limitations imposed by Harvard Medical School, 50% of the excess (but not more than the maximum permissible amount of deferred compensation under said limitations) shall be credited by the Employer to a deferred compensation liability account

payable to such Eligible Employee. The credit shall be recorded as of the last day of the Employer's fiscal year or as of such other date or dates as the Committee may decide.

2.02  Funding of Deferred Payments. The right of an Eligible Employee to payment of his or her deferred compensation shall be an unsecured contractual right, even if the Employer on its own initiative or at the request of the Eligible Employee purchases insurance or makes other investments as the source of future payment hereunder, and even if the insurance or other investments are earmarked with the Eligible Employee's name; that is, the Eligible Employee shall have no security interest in or similar claim to the asset.

2.03  Adjustments. If the Eligible Employee requests the Employer to invest in one or more securities, mutual funds or insurance policies to hold as the source of future payment hereunder, and if the Employer (which shall have no obligation to do so) complies, then the balance of the Eligible Employee's deferred compensation account shall reflect the amount of any net income, loss, change in value or administrative expense directly attributable to the investment.

2.04  Forfeitability. An Eligible Employee's right to his or her deferred compensation shall be an unconditional obligation of the Employer except as follows:

(a)  If the Eligible Employee attempts to assign or otherwise alienate his or her rights hereunder (except as otherwise provided herein) then he or she shall forfeit all deferred compensation previously accrued hereunder, the attempted assignment or alienation shall be ineffectual, and no further rights shall accrue hereunder while the attempted assignment or alienation in effect.

(b)  If the Eligible Employee is convicted of any crime against the Employer or is found by the Committee to be guilty of an act or omission gravely injurious to the reputation or other interests of the medical profession, the Eligible Employee, Harvard Medical School or Brigham and Women's Hospital the Committee may, in its discretion, declare forfeited any deferred compensation of such Eligible Employee previously accrued hereunder.

2.05  Set-Off. Section 2.04 above, notwithstanding, the Employer shall have the right to set off its liability to an Eligible Employee hereunder against any debt or other liability of the Eligible Employee to the Employer.

## III - PAYMENT

3.01  Normal Form. The deferred compensation liability account payable to an Eligible Employee shall be charged with periodic payments beginning within the first 60 days after retirement, in such amounts and at such intervals as the Committee may direct for the purpose of reducing the balance of such account (subject to adjustments pursuant to Section 2.03 above, which shall continue) to zero within 20 years after retirement. Retirement is the termination of employment after attainment of age 66 or, if termination of employment occurs earlier, attainment of age 66.

**3.02 Alternative Forms; Early Retirement.** Alternative forms of retirement benefit (including a lump sum) and retirement before age 66 are available only on a negotiated basis.

**3.03 Death Benefit.** The death of the Eligible Employee shall not result in forfeiture. If death occurs before retirement the Eligible Employee shall be deemed to have retired on the date of death. If death occurs after retirement, any payments which have not yet been made shall be made when they would otherwise have been due. Payments after the death of an Eligible Employee shall be made to the beneficiary or beneficiaries designated and upon the conditions stated in a signed designation given by the Eligible Employee to the Plan Administrator or, if no other designation is in effect, to the Eligible Employee's widow or widower, if she or he is living at the payment date and, if not, by right of representation to the Eligible Employee's issue then living, if any, and, if none is then living, to those who would take the Eligible Employee's estate under the Massachusetts intestacy laws in effect and applied as if the Eligible Employee had died at the payment date.

## IV - MISCELLANEOUS

**4.01 Named Fiduciary; Plan Administrator.** For purposes of any applicable laws regarding pension plans, the Committee on Compensation shall be the fiduciary generally responsible for the control and management of the Plan, and the Employer's Administrator shall be the Plan Administrator.

**4.02 Claims and Review.** All inquiries and claims respecting the Plan shall be in writing directed to the Plan Administrator. In the case of a claim respecting a benefit, a written determination allowing or denying the claim shall be furnished to the claimant promptly upon receipt of the claim. A denial or partial denial of a claim shall be dated and signed by the Plan Administrator and shall clearly set forth the following information:

    (a)   the specific reason or reasons for the denial;

    (b)   specific reference to the pertinent Plan provisions on which the denial is based;

    (c)   a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

    (d)   an explanation of the review procedure set forth below.

If no written determination is furnished to the claimant within thirty (30) days after receipt of the claim, then the claim shall be deemed denied and the thirtieth (30th) day after such receipt shall be the determination date.

A claimant may obtain review of an adverse determination by filing a written notice of appeal with the Committee on Compensation within sixty (60) days after the determination date, or, if later, the receipt of a written notice denying the claim. Thereupon the Committee shall appoint one or more persons who shall conduct a full and fair review, which shall include the right:

(a)  to be represented by a spokesman;

(b)  to present a written statement of the facts and of the claimant's interpretation of any pertinent document, statute or regulation; and

(c)  to receive a prompt written decision clearly setting forth findings of fact and the specific reasons for the decision written in a manner calculated to be understood by the claimant and containing specific references to pertinent Plan provisions on which the decision is based.

A decision shall be rendered no more than sixty (60) days after the request for review, except that such period may be extended for an additional sixty (60) days if the person or persons reviewing the claim determine that special circumstances, including the advisability of a hearing, require such extension. The Committee may appoint itself, one or more of its number, or any other person or persons whether or not connected with the Employer to review a claim.

If benefits under the Plan are provided for in an insurance contract, group prepayment contract or other similar agreement and if the contract so provides, review of a claim shall be made by the insurance company or other contracting organization and the Plan Administrator shall so advise the claimant.

All applicable governmental regulation regarding claims and review shall be observed.

**4.03 Governing Law.** This document is governed by Massachusetts laws, except to the extent such laws may be preempted by any applicable Federal laws governing pension plans.

**4.04 Waivers, etc.** This Plan can be amended only by a written document adopted by the Committee on Compensation. No waiver of any breach or non-observance of any condition shall be deemed to be an amendment or consent to future breach or non-observance by any party. The Plan shall not give any Eligible Employee the right to continued employment. The Plan is in addition to and not in place of any other plan or arrangement, whether constituting part of a contract of employment or not, affecting the Eligible Employee.

## THE BRIGHAM SURGICAL GROUP FOUNDATION, INC.

### Unfunded Deferred Compensation Plan

### Designation of Beneficiary

Section 3.03 of the above-titled Plan authorizes an Eligible Employee to designate a beneficiary or beneficiaries, stating the conditions under which they will benefit, with respect to death benefits. The designation is to be in a document signed by the Eligible Employee and given to the Plan Administrator (namely, the Administrator of the Brigham Surgical Group Foundation, Inc.).

Accordingly, the undersigned Eligible Employee hereby designates* the following beneficiary or beneficiaries, upon the conditions stated:

EXECUTED at Boston, Massachusetts as a sealed instrument this           day of           , 19 .

Eligible Employee: _____

Witness: _____

\*    Eligible Employees are encouraged to seek professional advice before designating their beneficiaries.

# FACULTY RETIREMENT BENEFIT PLAN

*(an unfunded deferred compensation plan)*

*Adopted July 1, 1989*

*(Revised 10/31/92)*

## BRIGHAM SURGICAL GROUP FOUNDATION, Inc.

*110 Cypress Street*

*Brookline, MA 02146*

## Brigham Surgical Group Foundation, Inc.

## FACULTY RETIREMENT BENEFIT PLAN

1.01     **SYNOPSIS**.  This document sets forth the Brigham Surgical Group Faculty Retirement Benefit Plan (the "Plan"),  established and maintained by the Brigham Surgical Group Foundation, Inc. (the "Employer").  The primary purpose of the Plan is to  provide an opportunity to earn an incentive retirement contribution of 25% of a Participant's compensation (determined without regard to tax code limits on qualified plan contributions), offset for qualified plan and employer 403(b) contributions from any source. The Plan is also intended to provide supplementary contributions as may be required to ensure that a Participant who receives compensation from other employers will, during the first three Plan Years in which the Participant is a participant in the Employer's qualified pension plan, receive a basic retirement contribution of 12.5% of compensation from such other employers (not to exceed the maximum contribution allowed under the tax code if all of the Participant's compensation were received from the Employer). Required State and Federal taxes shall be withheld from contributions, but any Participant tax on earnings or appreciation thereon shall be deferred.  Benefits shall be paid from the general funds of the Employer.  The Plan Administrator shall interpret and implement this Plan.

2.01     **ELIGIBILITY**.  Participants hereunder shall  be limited to employees of the Employer who are members of the full-time faculty of the Harvard Medical School at the rank of Associate Professor or Professor or at the rank of Instructor or Assistant Professor who were either (1)  hired before 11/1/92 or (2)  hired after 10/31/92 and have completed three full years of employment;  provided,  that the Committee on Compensation of the Employer (the "Committee") may limit participation in order to fulfill the intent set forth in Section 5.02.

3.01     **BENEFITS**.  Subject to the practice surplus requirements of the next following sentence, the Employer shall credit to each Participant an amount equal to 25% of the Participant's compensation for the Plan Year,  reduced by the amount of any contribution for the Participant for such Plan Year to (i)  any defined contribution plan qualified under Section 401(a) of the Internal Revenue Code of 1986 as amended (the "Code"),  and (ii)  any arrangement under Section 403(b) of said Code.  All such contributions shall be made only to the extent a Participant has a practice surplus as determined under the Employer's Professional Staff Compensation Policy,  with the following exception:  in the case of a Participant who is a participant in the Employer's qualified pension plan,  the Employer shall (but only for the first three Plan Years in which the Participant is a participant in such pension plan) make contributions of 12.5% of the Participant's Compensation (not in excess of the compensation limit of Section 401(a)(17) of the Code,  which is $222,220 for the Plan Year beginning in 1991) reduced by the amount of any contribution for the Participant for such Plan Year under (i) and (ii) above,  and further provided that the sum of the contributions for such Participant for such Plan Year  under (i) and (ii) above shall not exceed the amount specified in Section 415 of the Code ($30,000 for Plan Years beginning in 1991) applied as if such contributions were made by a single employer.  For purposes of the forgoing reductions for contributions under (i) and (ii) above,  employee salary reduction contributions shall not

be counted, but employer contributions from the Employer and from other employers shall be counted. Compensation shall be such amounts, from all sources, as are counted as compensation under the Harvard System of Titles, Appointments and Compensation Arrangements as in effect from time to time.

The foregoing amounts credited may be reduced, in whole or in part, for a Participant by the Employer for such Plan Year or Plan Years as the Employer determines in light of any special research grant awards by the Employer with respect to the Participant's research; provided that no such reduction or special research grant shall in any way alter the cash compensation or Unfunded Deferred Compensation of such Participant or in any way reduce the amount of surplus flowing to the Group from the Participant's practice.

3.02    **ACCOUNTS**. The Employer shall record credits made on behalf of each Participant in a retirement benefit account as a bookkeeping entry (the "Account") for such Participant. If the Participant requests the Employer to invest in one or more securities, mutual funds, insurance policies, or such other investments as may be authorized by the Committee from time to time to hold as the source of future payment hereunder and if the Employer (which shall have no obligation to do so) complies, then the balance of the Participant's Account shall reflect the amount of any net income, loss, change in value or administrative expense attributable to the investment.

3.03    **SET-OFF**. The Employer may set-off prior to payment of benefits to a Participant hereunder any amounts due from the Participant to the Employer, including without limitation any current or prior practice deficits as determined under the Employer's Professional Staff Compensation Policy and amounts loaned to the Participant (whether or not such loan is secured by a mortgage).

3.04    **FORFEITURE**. Benefits under the Plan may be forfeited and all rights of the Participant and the Participant's beneficiaries shall become null and void, in the discretion of the Committee, if the Participant is convicted of any crime against the Employer or is found by the Committee to be guilty of any act or omission gravely injurious to the reputation or other interests of the medical profession, the Employer, Harvard Medical School or any of its affiliated teaching hospitals including the Brigham and Womens's Hospital.

3.05    **NORMAL FORM of DISTRIBUTION**. The account payable to a Participant shall be charged with periodic payments beginning within the first 120 days after retirement, in amounts and at such intervals as the Plan Administrator may direct for the purpose of reducing the balance of such account (subject to adjustments pursuant to Section 3.02 above, which shall continue) to zero within 20 years after retirement. Retirement is the termination of employment with the Employer after attainment of age 66 or, if termination of employment occurs earlier, attainment of age 66.

3.06    **ALTERNATIVE FORMS; EARLY RETIREMENT**. Alternative forms of retirement benefit (including a lump sum) and retirement before age 66 are available only at the discretion of the Employer on a negotiated basis.

3.07    **DEATH BENEFIT**. The death of a Participant shall not result in forfeiture. If

death occurs before retirement, the Participant shall be deemed to have retired on the date of death. If death occurs after retirement, any payments which have not yet been made shall be made at least as frequently as the rate of payment in effect prior to death. Payments after the death of a Participant shall be made to the beneficiary or beneficiaries designated and upon conditions stated in a signed designation given by the Participant to the Plan Administrator or, if no other designation is in effect, to the Participant's widow or widower, if living at the payment date and, if not, by right of representation to the Participant's issue then living, if any, and, if none is then living, to those who would take the Participant's estate under Massachusetts intestacy laws in effect and applied as if the Participant had died at the payment date.

4.01    **SOURCE of BENEFITS**. Benefits shall be paid from the general assets of the Employer and shall not be funded, by trust or otherwise. No Participant or beneficiary shall have a right greater than that of a general creditor of the Employer. Nothing herein shall be deemed to create a trust of any kind or to create any fiduciary relationship whatsoever.

4.02    **ALIENATION of BENEFITS**. Benefits are not subject to alienation, anticipation or assignment by a Participant or beneficiary and are not subject to be attached or reached and applied by any creditor of the Participant.

4.03    **WITHHOLDING**. The Employer shall withhold from the amount specified in Section 3.01 such amount of income, payroll and other taxes as required by law or deemed advisable by the Employer. The Employer shall withhold from payment of benefits such amount of income, payroll and other taxes as required by law or deemed advisable by the Employer. The Plan Administrator shall keep such records as necessary to establish the tax basis of benefits under the Plan.

5.01    **PLAN ADMINISTRATOR**. The Plan Administrator shall operate, interpret, and implement the Plan. The Plan Administrator shall be an individual appointed by the Committee or, if no individual is so appointed, the Committee shall be the Plan Administrator. The Plan Administrator's decisions and determinations (including determinations of the meaning and reference of terms used in this Plan) that are not arbitrary and capricious shall be conclusive upon all persons. The Plan Administrator shall be the Named Fiduciary for purposes of the Employee Retirement Income Security Act of 1974 as amended ("ERISA").

5.02    **INTENT**. This Plan is intended to be unfunded and maintained by the Employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees within the meaning of Section 201(2) of ERISA. Contributions hereunder are intended to be to Participants (and the amount of taxes attributable to contributions are intended to be withheld therefrom before crediting hereunder), but any earnings or appreciation thereon are not intended to be taxable until payment to the Participant or the Participant's beneficiary. This Plan shall be construed and interpreted in a manner consistent with the foregoing intentions.

5.03    **GOVERNING LAW**. This Plan shall be governed by the law of the Commonwealth of Massachusetts to the extent that it is not preempted by Federal law.

5.04    **EFFECTIVE DATE; PLAN YEAR**. This document is a clarification and restatement of the Plan as effective July 1, 1989. The Plan Year shall end on June 30 of each year.

5.05    **AMENDMENT or TERMINATION**. The Employer reserves the right to terminate or amend the Plan, in whole or in part, at any time, and thereby reduce or eliminate benefits for some or all Participants.

5.06    **NO CONTRACT of EMPLOYMENT**. This Plan shall not constitute an express or implied contract of employment between Employer and Participant.

6.01    **CLAIMS and REVIEW**. All inquiries and claims respecting the Plan shall be in writing and shall be directed to the Plan Administrator at such address as may be specified from time to time.

(a)    **CLAIMS**. In the case of a claim respecting a benefit under the Plan, a written determination allowing or denying the claim shall be furnished by the Plan Administrator to the claimant promptly upon receipt of the claim. A denial or partial denial of a claim shall be dated and signed by the Plan Administrator and shall clearly set forth: (1) the specific reason or reasons for the denial; (2) specific reference to pertinent Plan provisions on which the denial is based; (3) a description of any additional material or information necessary for the claimant to perfect the claim including an explanation of why such material or information is necessary; and (4) an explanation of the review procedure set for the below.

If no written determination is furnished to the claimant within thirty (30) days after receipt of claim, then the claim shall be deemed denied and the thirtieth (30th) day after such receipt shall be the determination date.

(b)    **REVIEW**. A claimant may obtain review of an adverse determination by filing a written notice of appeal with the Plan Administrator within sixty (60) days after the determination date or, if later, within sixty (60) days after the receipt of a written notice denying the claim. Thereupon the Plan Administrator shall appoint one or more persons who shall conduct a full and fair review, which shall include the right: (1) to be represented by a spokesperson; (2) to present a written statement of facts and of claimant's interpretation of any pertinent document, statute or regulation; and (3) to receive a prompt written decision clearly setting forth findings of fact and the specific reasons for the decision written in a manner calculated to be understood by the claimant and containing specific references to pertinent Plan provisions on which the decision is based. A decision shall be rendered no more than sixty (60) days after the request for review, except that such period may be extended for an additional sixty (60) days if the person or persons reviewing the claim determine that special circumstances, including the advisability of a hearing, require such extension. The Plan Administrator may appoint the Plan Administrator, or any other person or persons whether or not connected with the Employer to review a claim.

All applicable governmental regulations regarding claims and review shall be observed.

**BRIGHAM SURGICAL GROUP FOUNDATION, Inc.**

By: _____
          Dr. John A. Mannick, President