*Document Electronically Filed*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                         )
EBEN ALEXANDER, III, M.D.                )
                                         )
         Plaintiff,                      )        Case No. 04-10738 MLW
                                         )
         v.                              )
                                         )
BRIGHAM AND WOMEN'S PHYSICIANS           )
ORGANIZATION, INC., successor to         )
Brigham Surgical Group Foundation, Inc., )
BOSTON NEUROSURGICAL FOUNDATION          )
INC., BRIGHAM SURGICAL GROUP             )
FOUNDATION, INC. DEFERRED                )
COMPENSATION PLAN, BRIGHAM               )
SURGICAL GROUP FOUNDATION, INC.          )
FACULTY RETIREMENT BENEFIT               )
PLAN, COMMITTEE ON COMPENSATION          )
OF THE BRIGHAM SURGICAL GROUP            )
FOUNDATION, INC., and                    )
PETER BLACK, M.D.                        )
                                         )
         Defendants.                     )
_____ )

## DEFENDANTS' MOTION TO ADOPT
## PROPOSED FINDINGS OF FACT AND RULINGS OF LAW

Defendants Brigham and Women's Physicians Organization, Inc., et al. (collectively, "defendants") hereby move that the Court adopt defendants' Proposed Findings of Fact and Rulings of Law, filed herewith. In support of this motion, defendants state as follows:

1.    In this case, the Court must determine why the Brigham Surgical Group Foundation, Inc. ("BSG" or the "Group") created and maintained two deferred compensation plans, the Unfunded Deferred Compensation Plan ("UDC") and the Faculty Retirement Benefit Plan ("FRBP").

2.    BSG created the UDC a few years after the Group was founded. Dr. John Mannick, the former President of BSG, will testify that he decided to implement the UDC while overhauling the Group's compensation system. Specifically, Dr. Mannick sought to move BSG from a subjective compensation system which provided little incentive for productivity to an objective one, which would create appropriate incentives for physicians' clinical work, teaching and research.

3.    BSG's new compensation program encouraged clinical productivity by basing each physician's compensation on the net practice income generated by his or her practice. In other words, BSG looked at each physician as a profit center and held them accountable for revenue generation and cost management. This new compensation program was tremendously successful; the Group's productivity increased dramatically in the years following its implementation.

4.    Dr. Mannick will testify that, during this overhaul process, he and BSG instituted the UDC to retain and recruit highly productive physicians by providing them with a means to dramatically supplement their retirement funding. He will explain that the Group specifically sought a means to enable its most successful physicians (whose ability to accumulate wealth for retirement was otherwise constrained) to defer compensation for retirement savings while also aligning their financial interests with the Group's.

5.    Defendants' evidence will show that, like the UDC, the FRBP was created to provide deferred compensation to the group's most successful surgeons after the Tax Reform Act of 1986 limited the amount of money they could contributed to BSG's 403(b) plan.

6.    Defendants' evidence similarly will show that those physicians who became eligible to participate in the UDC and FRBP had, and exercised, the ability to affect the terms and administration of the Plans.   The BSG operated through a representative system.  The Board of Directors, its Executive Committee and Committee on Compensation could, and did, consider proposals from physicians concerning changes to the Plans.  For example, during the 1990s, physician proposals resulted in several changes to the Plans eligibility criteria.

7.    The parties have stipulated to the eligibility criteria to participate in the Plans, and that their application resulted in a small number of BSG employees participating in the Plans during the relevant time period:  7.1 % in 1997; 5.1 % in 1998; and 4.6 % in 1999.

8.    In short, defendants' evidence will show that the UDC and FRBP comprised *bona fide* top hat plans, which ERISA defines as a plan "which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees."  29 U.S.C. §§ 1051(2); 1081(a)(3); 1101(a)(1).

## CONCLUSION

WHEREFORE, defendants respectfully request that the Court adopt their Proposed Findings of Fact and Rulings of Law.

<div style="margin-left: 40%;">

Respectfully submitted,

BRIGHAM AND WOMEN'S PHYSICIANS ORGANIZATION, INC., BOSTON NEUROSURGICAL FOUNDATION INC., BRIGHAM SURGICAL GROUP FOUNDATION, INC. DEFERRED COMPENSATION PLAN, BRIGHAM SURGICAL GROUP FOUNDATION, INC. FACULTY RETIREMENT BENEFIT PLAN, COMMITTEE ON COMPENSATION OF THE BRIGHAM SURGICAL GROUP FOUNDATION, INC., and PETER BLACK, M.D.,

By their attorneys,


/s/ David C. Casey
David C. Casey (BBO No. 077260)
Gregory C. Keating (BBO No. 564523)
Laurie Drew Hubbard (BBO No. 651109)
LITTLER MENDELSON, PC
One International Place, Suite 2700
Boston, MA 02110
 (617) 378-6000

</div>

Dated: October 10, 2006

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of October, 2006, a true and accurate copy of the foregoing Defendants' Motion to Adopt Proposed Findings of Fact and Rulings of Law, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

<u>/s/ David C. Casey</u>

Firmwide:81564124.1 047950.1002