UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
EBEN ALEXANDER, III, M.D.           )
                                    )
         Plaintiff,                 )    Case No. 04-10738-MLW
                                    )
    v.                              )
                                    )
BRIGHAM AND WOMEN'S PHYSICIANS      )
  ORGANIZATION, INC., successor to  )
  Brigham Surgical Group Foundation, Inc., )
  BOSTON NEUROSURGICAL FOUNDATION   )
  INC., BRIGHAM SURGICAL GROUP      )
  FOUNDATION, INC. DEFERRED         )
  COMPENSATION PLAN, BRIGHAM        )
  SURGICAL GROUP FOUNDATION, INC.   )
  FACULTY RETIREMENT BENEFIT        )
  PLAN, COMMITTEE ON COMPENSATION   )
  OF THE BRIGHAM SURGICAL GROUP     )
  FOUNDATION, INC., and             )
  PETER BLACK, M.D.                 )
                                    )
         Defendants.                )
_____ )

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN
LIMINE TO EXCLUDE THE TESTIMONY OF NORMAN STEIN**

**INTRODUCTION**

Plaintiff, Dr. Eben Alexander, opposes Defendants' efforts to exclude Plaintiff's expert and urges this Court to permit Professor Norman Stein, a distinguished professor of law, to testify at trial because Professor Stein is an ERISA expert and has specialized knowledge that will assist this Court in making its factual determinations. Broadly speaking, Professor Stein will testify concerning the creation of ERISA, its substantive protections, the top hat exception and its underlying rationale, and application of those principles to the facts in this case. His testimony can lend insight into, among other things, the issues of whether Dr. Alexander had the

power to negotiate the terms of the UDC and FRBP, and why all of the BSG surgeons are participants in the UDC and FRBP for the "select group" analysis.  In addition, because this is a bench trial, there is no danger of confusing the jury if Professor Stein testifies.  Accordingly, as set forth more fully below, the Court should deny Defendants' Motion in Limine to Exclude the Testimony of Norman Stein.[1]

## ARGUMENT

### Professor Stein's Testimony Is Admissible and Will Assist the Court

Fed. R. Evid. 702 allows expert testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determined a fact in issue . . ."  Moreover, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  Fed. R. Evid. 704(a); Peckham v. Continental Casualty Ins. Co., 895 F.2d 830, 837 (1st Cir. 1990) (no error in admitting testimony of "two well-credentialed experts-attorneys versed in the nuances of insurance law-who offered opinion evidence as to proximate cause").  Admitting expert testimony is within the trial judge's discretion.  Peckham, 895 F.2d at 837 (judge has "wide discretion anent the admission and exclusion of expert testimony . . . .") (citations omitted).

Although expert testimony on purely legal questions is generally inadmissible, the First Circuit has recognized exceptions to this general rule.  Nieves-Villanueva v. Soto Rivera, 133 F.3d 92, 100 (1st Cir. 1997) ("We leave to future cases the defining of the contours of application of this rule.").  For example, the court may admit expert testimony where "it is often difficult to draw the line between what are questions of law, what are questions of fact, and what are mixed questions."  Nieves-Villanueva, 133 F.3d at 100.  Likewise, expert testimony is

---

[1] Plaintiff is willing to withdraw its motion in limine to strike defendants' proposed expert and stipulate that both experts be allowed to testify at trial, to the extent the Court is inclined to simply listen to the experts' testimony and consider the testimony if it will assist in deciding the factual issues.

admissible "in rare, highly complex and technical matters where a trial judge utilizing limited and controlled mechanisms, and as a matter of trial management, permits some testimony seemingly at variance with the general rule." Id. at 100-101.

### A. As an ERISA Expert, Professor Stein Is Qualified to Testify Concerning the Issues in this Case

Notwithstanding Defendants' contention that Professor Stein is not an expert on "top hat" plans, Professor Stein has specialized knowledge concerning ERISA which will assist the Court in its factual determinations.[2] Professor Stein is a law professor who, for over twenty years, has taught ERISA-related courses such as employee benefits, tax, labor, and business. (A copy of Professor Stein's curriculum vitae is attached hereto as Exhibit A). In addition, Professor Stein has written extensively on ERISA-related topics and testified before Congress on pension issues countless times. Professor Stein also has served as a member of several pension advisory councils. Most notably, Professor Stein served as a member of the General Accounting Office Panel of Experts on retirement security issues and was appointed in the year 2000 by Secretary of Labor Alexis Hermann to the ERISA Advisory Counsel for the Department of Labor for a three-year term. Simply put, Professor Stein's preeminent background in ERISA qualifies him to testify on the issues in this case.

### B. This Is a Rare Case Where Expert Testimony from Professor Stein Should be Permitted

As the Court is keenly aware, this is a case of first impression in this Circuit and there are only a handful of cases from other jurisdictions that have analyzed whether a particular deferred compensation plan qualifies for "top hat" status under ERISA because it "is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of

---

[2] Plaintiff seeks to exclude defendants' expert on similar grounds. Given the lack of authority on the validity of top hat plans, it is questionable whether a party could find a so-called "top hat" expert on the precise issues presented here.

management or highly compensated employees." 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). Here, Professor Stein can offer testimony concerning the creation of ERISA, its substantive protections, the top hat exception and its underlying rationale, and the reasons why, in his opinion, the UDC and FRBP do not fit within the narrow top hat exception.  (A summary of Professor Stein's proposed testimony is set forth in his Expert Report which is attached hereto as Exhibit B).  By way of example, Professor Stein would testify that:

- a necessary condition for a plan to be a "top-hat" plan is that the employees who participate in the plan have the ability to negotiate for adequate security of benefits and other protections, but neither the UDC nor the FRBP provide employees with such opportunity (Expert Report ¶ 4);

- the UDC and FRBP appear to be maintained not primarily for the purpose of providing deferred compensation, but for mediating the various compensation restrictions imposed by Harvard on the annual compensation of its professors and the fluctuating annual finances of a medical practice at the Brigham & Women's Hospital (Expert Report ¶ 6); and,

- in order to determine the number of participants in the UDC and FRBP, you must include any employee or former employee who may in the future receive benefits under a deferred compensation plan in accordance with ERISA's definition of "participant," which includes anyone who *may become eligible* to receive such benefits (Expert Report ¶ 7).

The basis for Professor Stein's testimony is his extensive experience with ERISA over the past 20 years, his review of the key documents in this case, as well as pertinent case law and other legal authorities.  Admittedly, Professor Stein's opinion may touch on the ultimate issue in the case, but that is permissible under Fed. R. Evid. 704(a) ("testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact").  Moreover, the line between what is a question of law and a question of fact in this case is difficult to draw and, therefore, the Court should permit the

testimony.  <u>Nieves-Villanueva</u>, 133 F.3d at 100.[3]  There also is no case law in the First Circuit to guide this Court in determining the factual issues (<u>i.e.</u>, whether the group covered by the plans was "select," Dr. Alexander's lack of bargaining power, and the primary purpose of the plans).  In these circumstances, the Court should permit Professor Stein to testify.

In addition, as the evidence will be presented to the Court as factfinder, there is no danger of admitting expert testimony that may confuse the jury.  <u>See</u> <u>Grand Traverse Band of Ottawa and Chippewa Indians v. United States Attorney for the Western District of Michigan</u>, 46 F. Supp.2d 689, 694 (W.D. Mich. 1999) (denying motion to strike expert affidavit which sought to offer opinion on whether plaintiff Indian tribe was a "restored tribe" within meaning of statute) *aff'd* 369 F.3d 960 (6th Cir. 2004), <u>citing</u> <u>Nieves-Villanueva</u>, 133 F.3d at 99.[4]  The <u>Grand Traverse Band</u> case is instructive on this point.  In that case, the court noted that the general rule stating that an expert is not to give testimony on purely legal questions is directed toward <u>jury trials</u>:

> More significantly, however, the rule is directed toward the admission of expert testimony directed *at a jury* on the theory that determination of the law is for the judge, and that the allowance of expert opinion on legal standards might confuse the jury…Here, in contrast, the testimony is presented to this court, which is fully aware of its obligations to determine the law and unlikely to be confused about this obligation by the opinion of an expert.

<u>Grand Traverse Band of Ottawa and Chippewa Indians</u>, 46 F. Supp.2d at 694 (emphasis in original).  Likewise, in this case, the Court should permit Professor Stein's testimony because

---

[3] As the Court is aware, the parties cross-moved for summary judgment on the key issue of whether the plans were maintained for a "select group."  The Court, however, denied the cross-summary judgment motions and scheduled the case for trial to take testimony on the disputed issues of fact concerning Dr. Alexander's bargaining power and the primary purpose of the UDC and FRBP.  The issues for trial are mixed questions of law and fact and expert testimony is permissible in such circumstances.

[4] <u>See also</u> <u>Wardell v. United States</u>, 758 F. Supp. 769, 771 n.2 (D.Me. 1991) ("The potential for admission of the evidence to cause unfair prejudice and to confuse the factfinder was much greater, under Fed. R. Civ. P. 403, than is the case here where only a bench trial is available.").  <u>Cf.</u> <u>United States v. Foley</u>, 871 F.2d 235, 240 (1st Cir. 1989) (noting that judge in bench trial would not be influenced by evidence that may be prejudicial in a jury trial).

the Court will be able to consider his testimony and "disregard the implication of any impermissible legal conclusion" to the extent any such conclusion may be construed from his testimony.

## CONCLUSION

This is a rare case in which the Court should permit Professor Stein's expert testimony given the novel issue presented, ERISA's complex statutory framework, and the paucity of case law to guide the Court. Accordingly, Plaintiff respectfully requests that the Court deny Defendants' Motion in Limine to Exclude the Testimony of Norman Stein.

> Respectfully submitted,
>
> EBEN ALEXANDER, III, M.D.
>
> By his attorneys,
>
> /s/ Colleen C. Cook
> Michael Paris (BBO #556791)
> Colleen C. Cook (BBO#636359)
> NYSTROM BECKMAN & PARIS LLP
> 10 St. James Avenue, 16th Floor
> Boston, Massachusetts  02116
> (617) 778-9100

Dated: October 10, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon David Casey, Esq., counsel for defendants, by electronic mail and First Class mail on October 10, 2006.

> /s/ Colleen C. Cook
> Colleen C. Cook

- 6 -