UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EBEN ALEXANDER, III, M.D. )<br><br>Plaintiff, )<br><br>v. )<br><br>BRIGHAM AND WOMEN'S PHYSICIANS )<br>ORGANIZATION, INC., successor to )<br>Brigham Surgical Group Foundation, Inc., )<br>BOSTON NEUROSURGICAL FOUNDATION )<br>INC., BRIGHAM SURGICAL GROUP )<br>FOUNDATION, INC. DEFERRED )<br>COMPENSATION PLAN, BRIGHAM )<br>SURGICAL GROUP FOUNDATION, INC. )<br>FACULTY RETIREMENT BENEFIT )<br>PLAN, COMMITTEE ON COMPENSATION )<br>OF THE BRIGHAM SURGICAL GROUP )<br>FOUNDATION, INC., and )<br>PETER BLACK, M.D. )<br><br>Defendants. )<br>_____ ) | Case No. 04-10738-MLW |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION IN LIMINE TO
EXCLUDE LATE PRODUCED "NEW" VERSIONS OF THE UDC AND FRBP**

Defendants have thrown this case into tumult by producing purportedly "new" versions

of the key documents at issue – the UDC and FRBP – after the entire case (and the related

administrative proceeding) was litigated based on the stipulated versions of those plans.

According to Defendants, there is no prejudice to Plaintiff for their tardy production of the "new"

versions because Plaintiff could have deposed Defendants' fact witnesses for a second time to

discover into the "new" plans. In other words, Defendants expect the Plaintiff to relitigate his

case from scratch on the eve of trial because Defendants found unsigned, unauthenticated,

electronic versions of the UDC and FRBP on a disk "by chance." (Opposition to Motion in

Limine at pp. 3,5). Contrary to Defendants' representations, admitting the "new" versions at trial would severely prejudice the Plaintiff and they should be excluded.

Indeed, this is not the first time Plaintiff has been the victim of Defendants' late productions. For example, on the day before the deposition of Defendants' key witness, Dr. John Mannick, Defendants produced approximately 1,400 pages of documents. Similarly, just a few days before the summary judgment hearing held on January 25, 2006, Defendants produced voluminous documents, which prompted the parties to file a motion to continue the summary judgment hearing in fairness to the Plaintiff. The Court denied the motion and, at the hearing, admonished Defendants for their late production:

> THE COURT: It would have been cost effective if you'd produced whatever documents you produced recently a long time ago.
>
> MR. CASEY: I mean, we were trying – you know, that's a fair – you know, my brother may try to make a lot of hay out of this –
>
> THE COURT: I mean, this is, frankly, frustrating to me. I have very limited time. If you had filed that motion [to continue the hearing] a week ago, I might have said, "Fine, take some more time. I'll do something else." My law clerk and I – you know, it's not money, we get paid the same amount, but we're working on this case. So, you know, Rule 1? <u>You know, I can sanction you for not producing the documents, for requiring me to duplicate this effort.</u> I could have denied these in November. I really stretched to see if what you jointly tried to do could work. That's it. Have a seat.

(Transcript of January 25, 2006 hearing, pp. 29-30, attached hereto as Exhibit A) (emphasis added). The Court's words at that hearing are appropriate again at this juncture: the Court should not have to duplicate its efforts to analyze the entire case through a different lens based on Defendants' untimely production of "new" UDC and FRBP plan documents.

In any event, the "new" plans shed no light on the disputed issues of fact to be tried: (i) Dr. Alexander's bargaining powers and (ii) the primary purpose of the plans. Thus, the plans are irrelevant and should be excluded on that basis as well.

**ARGUMENT**

I.    **Dr. Alexander Would Suffer Grave Prejudice
      by Admission of the "New" Plans**

      A.    **This Entire Case and the Related Administrative Proceeding Was
            Litigated Based on the Stipulated Versions of the UDC and FRBP**

      The trial of this case was scheduled for May 1, 2006, months before Defendants found

the "new" plans in July 2006.  Additionally, the depositions of all fact witnesses were completed

prior to the Defendants' production of the "new" plans.  To suggest at the end of the case that (i)

the Court should disregard the prior stipulation of the parties which identified the plans at issue,

(ii) the Court should now analyze the case using different versions of the plans, and (iii) Dr.

Alexander should have re-deposed the witnesses concerning the "new" plans is just plain

ludicrous.  The stipulated versions are the only versions that should be allowed at trial.

      In addition to serving as the basis of this litigation, the agreed upon versions of the UDC

and FRBP were identified as the relevant plans in the administrative proceeding between the

parties.  More specifically, in June 2004, Plaintiff appealed the denial of his claim for benefits

under the UDC and FRBP and specifically requested copies of the UDC and FRBP "as amended

and currently in effect and each and every amendment thereto from its adoption date through the

date of your response, together with any resolution or instrument of adoption." (See letter from

Michael Paris to Paul Calandrella dated June 3, 2004 attached hereto as Exhibit B).  *Defendants

responded by producing the same versions of the UDC and FRBP which the parties agreed upon

as the plan documents in this litigation.*  (See letter from Paul Calandrella to Michael Paris dated

August 2, 2004 ("August 2nd Letter") attached hereto as Exhibit C (with relevant exhibits only)).

More specifically, the agreed upon version of the UDC was attached as Exhibit 6 to the August

2nd Letter and the agreed upon version of the FRBP was attached as Exhibit 7 thereto.  By letter

dated October 1, 2004, moreover, Defendants agreed that the plans attached to the August 2nd

Letter would be part of the administrative record.  (See letter dated October 1, 2004 from Paul

Calandrella to Michael Paris (without exhibits) at page 1, attached hereto as Exhibit D ("We

agreed at the hearing that the record on this administrative review would include not only the

transcript of the hearing, but also all correspondence between the parties and their counsel from

April 12, 2004 to the present.").

    In short, this entire case and the related administrative proceeding would be undone if

Defendants were allowed to introduce the purported "new" versions of the plans at trial.  As

such, it would be extremely unfair to Dr. Alexander and the Court, and contrary to judicial

economy.

**B.    The Plans Are Irrelevant to the Issues for Trial**

    Defendants' contention that Plaintiff will not be prejudiced by admitting the "new" plans

ignores not only the procedural posture of this case, but also the issues to be tried.  In April 2005,

the parties stipulated to all essential facts, including the plan documents, and asked the Court to

adjudicate the case on summary judgment because both sides agreed that the question of whether

the plans were offered to a "select group" was determinative.  Nevertheless, the Court decided to

hear evidence on the disputed issues of Dr. Alexander's bargaining power and the primary

purpose of the plans.  Thereafter, the parties proceeded with limited discovery with the

understanding that the stipulated versions of the plans were the operative documents.  Even after

discovery, the facts regarding the "select group" analysis remain undisputed and there is nothing

in the "new" plans that will shed light on the two disputed issues to be tried -- bargaining power

and primary purpose.  Thus, the "new" versions are irrelevant.

**C.**     **There is No Evidence that the "New" Plans Were Ever Implemented**

The UDC provides that it may be amended "only by a written document adopted by the Committee on Compensation." (UDC § 4.04). Defendants have produced <u>no</u> evidence that the Committee on Compensation ever adopted <u>these</u> versions of the plans. In fact, Defendants have produced no evidence whatsoever – by affidavit or otherwise – that the plans were ever implemented. Further, there is no evidence that the BSG members, including Dr. Alexander, were ever provided with these versions of the plans, or even notified of them. Without proof of implementation, Defendants cannot expect the Plaintiff and the Court to accept these electronic revisions found on disk "simply by chance," as the operative documents.

**D. The Language in the "New" Plans Is Inconsistent with**
**Defendants' Meeting Minutes and Mr. Holmes' Affidavit**

In their opposition, Defendants do not deny that the language in the purportedly revised version of the UDC is inconsistent with Mr. Holmes' affidavit. Rather, Defendants attempt to explain the inconsistency by arguing that Mr. Holmes' affidavit was done "largely from memory." (Opp. at 7). Defendants utterly fail, however, to explain the indisputable fact that the "new" version of the UDC is inconsistent with the meeting minutes of the BSG's Executive Committee and Committee on Compensation.[1] Defendants have identified the meeting minutes as potential trial exhibits. Defendants cannot have it both ways: they cannot take the position that Plaintiff has had the information in the "new" plans since January 2006 in another form (<u>i.e.</u> the meetings minutes) when, in fact, the minutes differ from the "new" plans.

---

[1] As set forth in Plaintiff's motion in limine at pages 4-5, the "new" version of the UDC states in its Preamble and in Section 1.02 that, "Employees at the rank of Instructor hired after 10/31/92 shall not be Eligible Employees until the completion of three (3) full years of employment with the Employer **and promotion to the rank of Assistant Professor.**" (emphasis added). In contrast, the meeting minutes omit the "promotion to the rank of Assistant Professor" language in referring to the 1992 changes to the UDC.

**E.    Defendants Have Failed to Produce Relevant Information
Concerning Eligibility in Connection with the "New" Plans**

Despite producing a "new" version of the UDC which differs materially from the agreed upon version of the UDC concerning the definition of "Employee" (see Motion in Limine at Ex. A), Defendants failed to produce relevant information concerning the ranks of the BSG surgeons from 1997 through 1999, their dates of hire, or any statistical information from which Plaintiff -- and the Court  -- could analyze whether the plans were offered to a "select group."  Put another way, there is no way for Plaintiff to present its case completely and accurately and no way for the Court to evaluate Plaintiff's case without this information.  Accordingly, to the extent the Court does not exclude the "new" plans at trial, Defendants should be required forthwith to provide Plaintiff with, at a minimum, the ranks and dates of hire for all BSG surgeons from 1997 through 1999.  Such information fell squarely within Plaintiff's document requests to the Defendants, which were served in March 2006 – over seven months ago.[2]

## CONCLUSION

For the foregoing reasons, and the reasons in Plaintiff's Motion in Limine to Exclude Late Produced "New" Versions of the UDC and FRBP, Dr. Alexander respectfully requests that the Court exclude the purportedly "new" plans as evidence at trial.

---

[2] As an example, Plaintiff requested, "All documents concerning eligibility for the UDC and FRBP, including but not limited to any documents showing who may become eligible for the plans."

Respectfully submitted,

EBEN ALEXANDER, III, M.D.
By his attorneys,

/s/ Colleen C. Cook
Michael Paris (BBO #556791)
Colleen C. Cook (BBO#636359)
NYSTROM BECKMAN & PARIS LLP
10 St. James Avenue, 16th Floor
Boston, Massachusetts  02116
(617) 778-9100

Dated: October 17, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon David Casey, Esq., counsel for defendants, by electronic mail and First Class mail on October 17, 2006.

/s/ Colleen C. Cook
Colleen C. Cook