# Exhibit C



**BRIGHAM AND
WOMEN'S HOSPITAL**



**HARVARD
MEDICAL SCHOOL**

75 Francis Street
Boston, Massachusetts 02115
Tel: 617 732-8181, Fax: 617 734-8353

**Department of Surgery**

**BY OVERNIGHT MAIL**

August 2, 2004

Michael Paris, Esq.
Nystrom Beckman & Paris
10 St. James Avenue, 16th Floor
Boston, MA 02116

      Re:    *Eben Alexander, III, M.D.*

Dear Mr. Paris,

This letter responds to your letter dated June 3, 2003 on behalf of Dr. Eben Alexander, III. In your letter, you request an appeal of the "deemed denial" of Dr. Alexander's claim for benefits under the Brigham Surgical Group Foundation, Inc.'s Unfunded Deferred Compensation Plan ("UDC") and Faculty Benefit Retirement Plan ("FRBP") (collectively, the "Funds"). You also request copies of Fund documents and accounting information. Pursuant to your request, and Section 4.02 of the UDC and Section 6.01 of the FRBP, Michael O'Connell, Chair of the Brigham and Women's Physicians Organization Compensation Committee (successor to the Compensation Committee for the Brigham Surgical Group Foundation, Inc.) (the "Committee") and I have been appointed to review the denial of Dr. Alexander's claim for benefits under the Funds.

At the outset, I note that the information requested is largely duplicative of that already provided by the Funds to Dr. Alexander, his former counsel Paul Cirel, and his accountant. During the last two years, the Funds have provided Dr. Alexander with detailed information concerning the valid set-off of Dr. Alexander's practice deficit against his UDC and FRBP balances. Among other things, the Funds have provided the following, all of which are incorporated herein by reference:

- Joan Stoddard, General Counsel of Partners Healthcare, wrote to Mr. Cirel on July 13, 2001 and explained the methodology used to calculate Dr. Alexander's practice deficits. Ms. Stoddard invited Mr. Cirel and Dr. Alexander to meet with Mr. Holmes and her to discuss the calculation. A copy of that letter is attached hereto as Exhibit 1.

- Ms. Stoddard again wrote to Mr. Cirel on September 16, 2002, responding to various questions concerning the set-off and again inviting Mr. Cirel and Dr. Alexander to meet with Mr. Holmes and her to discuss the matter. A copy of that letter is attached hereto as Exhibit 2.

▪ On June 19, 2003, Mr. Holmes sent Mr. Cirel information which responded to additional questions about the set-off and which provided detailed accounting information. A copy of that correspondence is attached hereto as Exhibit 3.

In addition, Dr. Alexander and Mr. Cirel met with Ms. Stoddard, Mr. Holmes, and other Brigham Surgical Group representatives (collectively, "BSG") to discuss the set-off on November 11, 2002, February 27, 2003, and June 24, 2003. Neither Dr. Alexander nor Mr. Cirel challenged the information or conclusions that BSG presented during these meetings, and BSG heard nothing further from Dr. Alexander or his representatives following the most recent meeting on June 24, 2003.

Attached hereto as Exhibits 4 – 9 are the documents you have requested, with the exception of information regarding the Funds' "top hat" status, as that information has no bearing on Dr. Alexander's claim for benefits. Any other requested documents that are not included do not exist or have previously been provided.

Respectfully, your letter provides no factual basis for Dr. Alexander's claim for benefits and simply echoes general statements already asserted by Dr. Alexander and responded to by BSG. In short, based on the attached information and that previously provided, we do not believe Dr. Alexander is entitled to additional benefits under the UDC and FRBP. Section 2.05 of the UDC and Section 3.03 of the FRBP permit BSG to set-off a physician's practice deficit against his deferred compensation balances upon termination. At the time of his termination, Kenneth Holmes, the former CFO of BSG, determined that Dr. Alexander's practice deficit amounted to $441,887.16. I have reviewed the accounting of Dr. Alexander's deficit at the time of his termination, and agree with Mr. Holmes' calculation. Consequently, we believe that BSG accurately calculated the set-off and properly exercised its right to apply this amount against Dr. Alexander's UDC and FRBP balances.

Although we believe the calculation of Dr. Alexander's deficit and the set-off to be proper, we have determined that this matter warrants a hearing to better understand and resolve Dr. Alexander's claims. Pursuant to Section 4.02 of the UDC and Section 6.01 of the FRBP, we would like to have such a hearing. Greg Keating will be contacting you to schedule a mutually convenient date for a hearing, likely in early to mid September. We request that Dr. Alexander provide a written statement of facts, a detailed explanation of his claim for benefits (including specific information concerning his disagreement with any particular set-off(s)), and any other information that he believes is relevant to this matter no later than August 30, 2004. Please note that, pursuant to Section 4.02 of the UDC and Section 6.01 of the FRBP, the time period for our review has been extended by sixty days, and our final determination will be provided on or before October 1, 2004.

Sincerely,

Paul Calandrella

Enclosures

Boston:2989.1 047950.1002

# Exhibit 6

# DEFERRED COMPENSATION PLAN

*(an unfunded plan)*

# DEFERRED COMPENSATION PLAN

*(an unfunded plan)*

*Adopted June 22, 1982*

## BRIGHAM SURGICAL GROUP FOUNDATION, Inc.

*110 Cypress Street*

*Brookline, MA 02146*

June 22, 1982

# THE BRIGHAM SURGICAL GROUP FOUNDATION, INC.

## Unfunded Deferred Compensation Plan

## I - RECITALS

**1.01  Employer.** The "Employer" is the Brigham Surgical Group Foundation, Inc., a tax-exempt corporation organized under Massachusetts laws to carry out the purposes of Harvard Medical School relating to the education and training in the field of surgery of undergraduates enrolled in said school and to teach surgery to surgical residents, by conducting the Department of Surgery at the Brigham and Women's Hospital in Boston, Massachusetts.  The performance of surgery is the Employer's primary medium of instruction and the primary source of support for its educational activities.

**1.02  Employees.** The "Employees" are surgeons who are members of the full-time faculty of the Harvard Medical School and are employed by the Employer to perform and teach surgery in the clinical setting of the Brigham and Women's Hospital by collaborating with students and residents in the practice of surgery, in research, and in the development of theory.  The Employees are paid by the Employer which (with few exceptions) is their only source of earned income and which is required to observe certain limitations imposed by the Harvard Medical School on the total compensation which may be earned by members of its full-time faculty.

**1.03  Committee on Compensation.** The By-Laws of the Employer give to the Committee on Compensation exclusive authority to determine the compensation of Employees.  The Committee is controlled by outside Directors of the Employer, who represent the public interest.  The Committee was established by agreement with the Internal Revenue Service in settlement of a United States Tax Court case relating to the exempt status of the Employer.

## II - DEFERRAL OF COMPENSATION

**2.01  Amount Credited.** If the total compensation of an Employee established by the Committee exceeds the maximum permissible amount of compensation payable currently in cash or fringe benefits under the limitations imposed by Harvard Medical School, 50% of the excess (but not more than the maximum permissible amount of deferred compensation under said limitations) shall be credited by the Employer to a deferred compensation liability account payable to such Employee.  The credit shall be recorded as of the last day of the Employer's fiscal year or as of such other date or dates as the Committee may decide.

**2.02  Funding of Deferred Payments.** The right of an Employee to payment of his or her deferred compensation shall be an unsecured contractual right, even if the Employer on its own initiative or at the request of the Employee purchases insurance or makes other investments as the source of future payment hereunder, and even if the insurance or other investments are earmarked with the Employee's name; that is, the Employee shall have no security interest in or similar claim to the asset.

2

**2.03  Adjustments.**  If the Employee requests the Employer to invest in one or more securities, mutual funds or insurance policies to hold as the source of future payment hereunder, and if the Employer (which shall have no obligation to do so) complies, then the balance of the Employee's deferred compensation account shall reflect the amount of any net income, loss, change in value or administrative expense directly attributable to the investment.

**2.04  Forfeitability.**  An Employee's right to his or her deferred compensation shall be an unconditional obligation of the Employer except as follows:

(a)  If the Employee attempts to assign or otherwise alienate his or her rights hereunder (except as otherwise provided herein) then he or she shall forfeit all deferred compensation previously accrued hereunder, the attempted assignment or alienation shall be ineffectual, and no further rights shall accrue hereunder while the attempted assignment or alienation in effect.

(b)  If the Employee is convicted of any crime against the Employer or is found by the Committee to be guilty of an act or omission gravely injurious to the reputation or other interests of the medical profession, the Employee, Harvard Medical School or Brigham and Women's Hospital the Committee may, in its discretion, declare forfeited any deferred compensation of such Employee previously accrued hereunder.

**2.05  Set-Off.**  Section 2.04 above, notwithstanding, the Employer shall have the right to set off its liability to an Employee hereunder against any debt or other liability of the Employee to the Employer.

## III - PAYMENT

**3.01  Normal Form.**  The deferred compensation liability account payable to an Employee shall be charged with periodic payments beginning within the first 60 days after retirement, in such amounts and at such intervals as the Committee may direct for the purpose of reducing the balance of such account (subject to adjustments pursuant to Section 2.03 above, which shall continue) to zero within 20 years after retirement. Retirement is the termination of employment after attainment of age 66 or, if termination of employment occurs earlier, attainment of age 66.

**3.02  Alternative Forms; Early Retirement.**  Alternative forms of retirement benefit (including a lump sum) and retirement before age 66 are available only on a negotiated basis.

**3.03  Death Benefit.**  The death of the Employee shall not result in forfeiture. If death occurs before retirement the Employee shall be deemed to have retired on the date of death. If death occurs after retirement, any payments which have not yet been made shall be made when they would otherwise have been due. Payments after the death of an Employee shall be made to the beneficiary or beneficiaries designated and upon the conditions stated in a signed designation given by the Employee to the Plan Administrator or, if no other designation is in effect, to the Employee's widow or widower, if she or he is living at the payment date and, if not, by right of representation to the Employee's issue then living, if any, and, if none is then living, to those who would take the Employee's

estate under the Massachusetts intestacy laws in effect and applied as if the Employee had died at the payment date.

## IV - MISCELLANEOUS

**4.01  Named Fiduciary;  Plan Administrator.**  For purposes of any applicable laws regarding pension plans,  the Committee on Compensation shall be the fiduciary generally responsible for the control and management of the Plan,  and the Employer's Administrator shall be the Plan Administrator.

**4.02  Claims and Review.**  All inquiries and claims respecting the Plan shall be in writing directed to the Plan Administrator.  In the case of a claim respecting a benefit,  a written determination allowing or denying the claim shall be furnished to the claimant promptly upon receipt of the claim.  A denial or partial denial of a claim shall be dated and signed by the Plan Administrator and shall clearly set forth the following information:

    (a)  the specific reason or reasons for the denial;

    (b)  specific reference to the pertinent Plan provisions on which the denial is based;

    (c)  a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

    (d)  an explanation of the review procedure set forth below.

If no written determination is furnished to the claimant within thirty (30) days after receipt of the claim,  then the claim shall be deemed denied and the thirtieth (30th) day after such receipt shall be the determination date.

A claimant may obtain review of an adverse determination by filing a written notice of appeal with the Committee on Compensation within sixty (60) days after the determination date,  or,  if later,  the receipt of a written notice denying the claim.  Thereupon the Committee shall appoint one or more persons who shall conduct a full and fair review,  which shall include the right:

    (a)  to be represented by a spokesman;

    (b)  to present a written statement of the facts and of the claimant's interpretation of any pertinent document,  statute or regulation;  and

    (c)  to receive a prompt written decision clearly setting forth findings of fact and the specific reasons for the decision written in a manner calculated to be understood by the claimant and containing specific references to pertinent Plan provisions on which the decision is based.

A decision shall be rendered no more than sixty (60) days after the request for review, except that such period may be extended for an additional sixty (60) days if the person or persons reviewing the claim determine that special circumstances, including the advisability of a hearing,  require such extension.  The Committee may appoint itself,  one or more of

its number, or any other person or persons whether or not connected with the Employer to review a claim.

If benefits under the Plan are provided for in an insurance contract, group prepayment contract or other similar agreement and if the contract so provides, review of a claim shall be made by the insurance company or other contracting organization and the Plan Administrator shall so advise the claimant.

All applicable governmental regulation regarding claims and review shall be observed.

4.03  **Governing Law.**  This document is governed by Massachusetts laws, except to the extent such laws may be preempted by any applicable Federal laws governing pension plans.

4.04  **Waivers, etc.**  This Plan can be amended only by a written document adopted by the Committee on Compensation. No waiver of any breach or non-observance of any condition shall be deemed to be an amendment or consent to future breach or non-observance by any party. The Plan shall not give any Employee the right to continued employment. The Plan is in addition to and not in place of any other plan or arrangement, whether constituting part of a contract of employment or not, affecting the Employee.

# THE BRIGHAM SURGICAL GROUP FOUNDATION, INC.

### Unfunded Deferred Compensation Plan

### Designation of Beneficiary

Section 3.03 of the above-titled Plan authorizes an Employee to designate a beneficiary or beneficiaries, stating the conditions under which they will benefit, with respect to death benefits. The designation is to be in a document signed by the Employee and given to the Plan Administrator (namely, the Administrator of the Brigham Surgical Group Foundation, Inc.).

Accordingly, the undersigned Employee hereby designates* the following beneficiary or beneficiaries, upon the conditions stated:

EXECUTED at Boston, Massachusetts as a sealed instrument this                day of
                , 19  .

Employee: _____

Witness: _____

\*    Employees are encouraged to seek professional advice before designating their beneficiaries.

**Exhibit 7**

# Faculty Retirement Benefit Plan

*(an unfunded deferred compensation plan)*

Adopted July 1, 1989

(amended 7/29/91)

# FACULTY RETIREMENT BENEFIT PLAN

*(an unfunded deferred compensation plan)*

*Adopted July 1, 1989*

*(amended 7/29/91)*

## BRIGHAM SURGICAL GROUP FOUNDATION, Inc.

*110 Cypress Street*

*Brookline, MA 02146*

Brigham Surgical Group Foundation, Inc.

## FACULTY RETIREMENT BENEFIT PLAN

1.01    **SYNOPSIS**. This document sets forth the Brigham Surgical Group Faculty Retirement Benefit Plan (the "Plan"),  established and maintained by the Brigham Surgical Group Foundation, Inc. (the "Employer").   The primary purpose of the Plan is to   provide an opportunity to earn an incentive retirement contribution of 25% of a Participant's compensation (determined without regard to tax code limits on qualified plan contributions), offset for qualified plan and employer 403(b) contributions from any source. The Plan is also intended to provide supplementary contributions as may be required to ensure that a Participant who receives compensation from other employers will, during the first three Plan Years in which the Participant is a participant in the Employer's qualified pension plan,  receive a basic retirement contribution of 12.5% of compensation from such other employers (not to exceed the maximum contribution allowed under the tax code if all of the Participant's compensation were received from the Employer). Required State and Federal taxes shall be withheld from contributions, but any Participant tax on earnings or appreciation thereon shall be deferred.  Benefits shall be paid from the general funds of the Employer.  The Plan Administrator shall interpret and implement this Plan.

2.01    **ELIGIBILITY**.  Participants hereunder shall all be employees of the Employer who are members of the full-time faculty of the Harvard Medical School;  provided,  that the Committee on Compensation of the Employer (the "Committee") may limit participation in order to fulfill the intent set forth in Section 5.02.

3.01    **BENEFITS**.  Subject to the practice surplus requirements of the next following sentence, the Employer shall credit to each Participant an amount equal to 25% of the Participant's compensation for the Plan Year,  reduced by the amount of any contribution for the Participant for such Plan Year to (i) any defined contribution plan qualified under Section 401(a) of the Internal Revenue Code of 1986 as amended (the "Code"),  and (ii)  any arrangement under Section 403(b) of said Code.  All such contributions shall be made only to the extent a Participant has a practice surplus as determined under the Employer's Professional

1

Staff Compensation Policy, with the following exception: in the case of a Participant who is a participant in the Employer's qualified pension plan, the Employer shall (but only for the first three Plan Years in which the Participant is a participant in such pension plan) make contributions of 12.5% of the Participant's Compensation (not in excess of the compensation limit of Section 401(a)(17) of the Code, which is $222,220 for the Plan Year beginning in 1991) reduced by the amount of any contribution for the Participant for such Plan Year under (i) and (ii) above, and further provided that the sum of the contributions for such Participant for such Plan Year under (i) and (ii) above shall not exceed the amount specified in Section 415 of the Code ($30,000 for Plan Years beginning in 1991) applied as if such contributions were made by a single employer. For purposes of the forgoing reductions for contributions under (i) and (ii) above, employee salary reduction contributions shall not be counted, but employer contributions from the Employer and from other employers shall be counted. Compensation shall be such amounts, from all sources, as are counted as compensation under the Harvard System of Titles, Appointments and Compensation Arrangements as in effect from time to time.

3.02    **ACCOUNTS**. The Employer shall record credits made on behalf of each Participant in a retirement benefit account as a bookkeeping entry (the "Account") for such Participant. If the Participant requests the Employer to invest in one or more securities, mutual funds, insurance policies, or such other investments as may be authorized by the Committee from time to time to hold as the source of future payment hereunder and if the Employer (which shall have no obligation to do so) complies, then the balance of the Participant's Account shall reflect the amount of any net income, loss, change in value or administrative expense attributable to the investment.

3.03    **SET-OFF**. The Employer may set-off prior to payment of benefits to a Participant hereunder any amounts due from the Participant to the Employer, including without limitation any current or prior practice deficits as determined under the Employer's Professional Staff Compensation Policy and amounts loaned to the Participant (whether or not such loan is secured by a mortgage).

3.04 **FORFEITURE**.  Benefits under the Plan may be forfeited and all rights of the Participant and the Participant's beneficiaries shall become null and void,  in the discretion of the Committee,  if the Participant is convicted of any crime against the Employer or is found by the Committee to be guilty of any act or omission gravely injurious to the reputation or other interests of the medical profession,  the Employer,  Harvard Medical School or any of its affiliated teaching hospitals including the Brigham and Womens's Hospital.

3.05    **NORMAL FORM of DISTRIBUTION**.  The account payable to a Participant shall be charged with periodic payments beginning within the first 120 days after retirement,  in amounts and at such intervals as the Plan Administrator may direct for the purpose of reducing the balance of such account (subject to adjustments pursuant to Section 3.02 above,  which shall continue) to zero within 20 years after retirement.  Retirement is the termination of employment with the Employer after attainment of age 66 or,  if termination of employment occurs earlier, attainment of age 66.

3.06    **ALTERNATIVE FORMS; EARLY RETIREMENT**.  Alternative forms of retirement benefit (including a lump sum) and retirement before age 66 are available only at the discretion of the Employer on a negotiated basis.

3.07    **DEATH BENEFIT**.  The death of a Participant shall not result in forfeiture.  If death occurs before retirement,  the Participant shall be deemed to have retired on the date of death. If death occurs after retirement,  any payments which have not yet been made shall be made at least as frequently as the rate of payment in effect prior to death.  Payments after the death of a Participant shall be made to the beneficiary or beneficiaries designated and upon conditions stated in a signed designation given by the Participant to the Plan Administrator or,  if no other designation is in effect,  to the Participant's widow or widower,  if living at the payment date and,  if not,  by right of representation to the Participant's issue then living,  if any,  and,  if none is then living,  to those who would take the Participant's estate under Massachusetts intestacy laws in effect and applied as if the Participant had died at the payment date.

3

4.01    **SOURCE of BENEFITS.**  Benefits shall be paid from the general assets of the Employer and shall not be funded, by trust or otherwise.  No Participant or beneficiary shall have a right greater than that of a general creditor of the Employer.  Nothing herein shall be deemed to create a trust of any kind or to create any fiduciary relationship whatsoever.

4.02    **ALIENATION of BENEFITS.**  Benefits are not subject to alienation, anticipation or assignment by a Participant or beneficiary and are not subject to be attached or reached and applied by any creditor of the Participant.

4.03    **WITHHOLDING.**  The Employer shall withhold from the amount specified in Section 3.01 such amount of income, payroll and other taxes as required by law or deemed advisable by the Employer.  The Employer shall withhold from payment of benefits such amount of income, payroll and other taxes as required by law or deemed advisable by the Employer.  The Plan Administrator shall keep such records as necessary to establish the tax basis of benefits under the Plan.

5.01    **PLAN ADMINISTRATOR.**  The Plan Administrator shall operate, interpret, and implement the Plan.  The Plan Administrator shall be an individual appointed by the Committee or, if no individual is so appointed, the Committee shall be the Plan Administrator.  The Plan Administrator's decisions and determinations (including determinations of the meaning and reference of terms used in this Plan) that are not arbitrary and capricious shall be conclusive upon all persons.  The Plan Administrator shall be the Named Fiduciary for purposes of the Employee Retirement Income Security Act of 1974 as amended ("ERISA").

5.02    **INTENT.**  This Plan is intended to be unfunded and maintained by the Employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees within the meaning of Section 201(2) of ERISA. Contributions hereunder are intended to be to Particpants (and the amount of taxes attributable to contributions are intended to be withheld therefrom before crediting hereunder), but any earnings or appreciation thereon are not intended to be taxable until payment to the Participant

4

or the Participant's beneficiary. This Plan shall be construed and interpreted in a manner consistent with the foregoing intentions.

5.03    <u>GOVERNING LAW</u>.  This Plan shall be governed by the law of the Commonwealth of Massachusetts to the extent that it is not preempted by Federal law.

5.04    <u>EFFECTIVE DATE; PLAN YEAR</u>.  This document is a clarification and restatement of the Plan as effective July 1, 1989.  The Plan Year shall end on June 30 of each year.

5.05    <u>AMENDMENT or TERMINATION</u>.  The Employer reserves the right to terminate or amend the Plan, in whole or in part, at any time, and thereby reduce or eliminate benefits for some or all Participants.

5.06    <u>NO CONTRACT of EMPLOYMENT</u>.  This Plan shall not constitute an express or implied contract of employment between Employer and Participant.

6.01    <u>CLAIMS and REVIEW</u>.  All inquiries and claims respecting the Plan shall be in writing and shall be directed to the Plan Administrator at such address as may be specified from time to time.

(a)    <u>CLAIMS</u>.  In the case of a claim respecting a benefit under the Plan, a written determination allowing or denying the claim shall be furnished by the Plan Administrator to the claimant promptly upon receipt of the claim.  A denial or partial denial of a claim shall be dated and signed by the Plan Administrator and shall clearly set forth:  (1) the specific reason or reasons for the denial;  (2) specific reference to pertinent Plan provisions on which the denial is based;  (3) a description of any additional material or information necessary for the claimant to perfect the claim including an explanation of why such material or information is necessary; and (4) an explanation of the review procedure set for the below.

5

If no written determination is furnished to the claimant within thirty (30) days after receipt of claim, then the claim shall be deemed denied and the thirtieth (30th) day after such receipt shall be the determination date.

(b)    **REVIEW.**  A claimant may obtain review of an adverse determination by filing a written notice of appeal with the Plan Administrator within sixty (60) days after the determination date or, if later, within sixty (60) days after the receipt of a written notice denying the claim. Thereupon the Plan Administrator shall appoint one or more persons who shall conduct a full and fair review, which shall include the right: (1) to be represented by a spokesperson; (2) to present a written statement of facts and of claimant's interpretation of any pertinent document, statute or regulation; and (3) to receive a prompt written decision clearly setting forth findings of fact and the specific reasons for the decision written in a manner calculated to be understood by the claimant and containing specific references to pertinent Plan provisions on which the decision is based. A decision shall be rendered no more than sixty (60) days after the request for review, except that such period may be extended for an additional sixty (60) days if the person or persons reviewing the claim determine that special circumstances, including the advisability of a hearing, require such extension. The Plan Administrator may appoint the Plan Administrator, or any other person or persons whether or not connected with the Employer to review a claim.

All applicable governmental regulations regarding claims and review shall be observed.

**BRIGHAM SURGICAL GROUP FOUNDATION, Inc.**

By: _____
     Dr. John A. Mannick, President

6