# Exhibit 1

LEXSTAT 26 USC 501

UNITED STATES CODE SERVICE
Copyright © 2006 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

\*\*\* CURRENT THROUGH P.L. 109-305, APPROVED 10/6/2006 \*\*\*
\*\*\* WITH GAPS OF 109-295 and 109-304 \*\*\*

TITLE 26. INTERNAL REVENUE CODE
SUBTITLE A. INCOME TAXES
CHAPTER 1. NORMAL TAXES AND SURTAXES
SUBCHAPTER F. EXEMPT ORGANIZATIONS
PART I. GENERAL RULE

**Go to Code Archive Directory for this Jurisdiction**

*26 USCS § 501*

§ 501. Exemption from tax on corporations, certain trusts, etc. [Caution: See prospective amendment note below.]

(a) Exemption from taxation. An organization described in subsection (c) or (d) or section 401(a) [*26 USCS § 401(a)*] shall be exempt from taxation under this subtitle [*26 USCS §§ 1* et seq.] unless such exemption is denied under section 502 or 503 [*26 USCS § 502 or 503*].

(b) Tax on unrelated business income and certain other activities. An organization exempt from taxation under subsection (a) shall be subject to tax to the extent provided in parts II, III, and VI of this subchapter [*26 USCS §§ 507* et seq., *511* et seq., and *527*], but (notwithstanding parts II, III, and VI of this subchapter [*26 USCS §§ 507* et seq., *511* et seq., and *527*]) shall be considered an organization exempt from income taxes for the purpose of any law which refers to organizations exempt from income taxes.

(c) List of exempt organizations. The following organizations are referred to in subsection (a):
  (1) Any corporation organized under Act of Congress which is an instrumentality of the United States but only if such corporation--
    (A) is exempt from Federal income taxes--
      (i) under such Act as amended and supplemented before July 18, 1984, or
      (ii) under this title without regard to any provision of law which is not contained in this title and which is not contained in a revenue Act, or
    (B) is described in subsection (l).
  (2) Corporations organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to an organization which itself is exempt under this section. Rules similar to the rules of subparagraph (G) of paragraph (25) shall apply for purposes of this paragraph.
  (3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.
  (4) (A) Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the employees of a designated person

or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes.

(B) Subparagraph (A) shall not apply to an entity unless no part of the net earnings of such entity inures to the benefit of any private shareholder or individual.

(5) Labor, agricultural, or horticultural organizations.

(6) Business leagues, chambers of commerce, real-estate boards, boards of trade, or professional football leagues (whether or not administering a pension fund for football players), not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual.

(7) Clubs organized for pleasure, recreation, and other nonprofitable purposes, substantially all of the activities of which are for such purposes and no part of the net earnings of which inures to the benefit of any private shareholder.

(8) Fraternal beneficiary societies, orders, or associations--

(A) operating under the lodge system or for the exclusive benefit of the members of a fraternity itself operating under the lodge system, and

(B) providing for the payment of life, sick, accident, or other benefits to the members of such society, order, or association or their dependents.

(9) Voluntary employees' beneficiary associations providing for the payment of life, sick, accident, or other benefits to the members of such association or their dependents or designated beneficiaries, if no part of the net earnings of such association inures (other than through such payments) to the benefit of any private shareholder or individual.

(10) Domestic fraternal societies, orders, or associations, operating under the lodge system--

(A) the net earnings of which are devoted exclusively to religious, charitable, scientific, literary, educational, and fraternal purposes, and

(B) which do not provide for the payment of life, sick, accident, or other benefits.

(11) Teachers' retirement fund associations of a purely local character, if--

(A) no part of their net earnings inures (other than through payment of retirement benefits) to the benefit of any private shareholder or individual, and

(B) the income consists solely of amounts received from public taxation, amounts received from assessments on the teaching salaries of members, and income in respect of investments.

(12) (A) Benevolent life insurance associations of a purely local character, mutual ditch or irrigation companies, mutual or cooperative telephone companies, or like organizations; but only if 85 percent or more of the income consists of amounts collected from members for the sole purpose of meeting losses and expenses.

(B) In the case of a mutual or cooperative telephone company, subparagraph (A) shall be applied without taking into account any income received or accrued--

(i) from a nonmember telephone company for the performance of communication services which involve members of the mutual or cooperative telephone company,

(ii) from qualified pole rentals,

(iii) from the sale of display listings in a directory furnished to the members of the mutual or cooperative telephone company, or

(iv) from the prepayment of a loan under section 306A, 306B, or 311 of the Rural Electrification Act of 1936 [7 USCS § 936a, 936b, or 940a] (as in effect on January 1, 1987).

(C) In the case of a mutual or cooperative electric company, subparagraph (A) shall be applied without taking into account any income received or accrued--

(i) from qualified pole rentals, or

(ii) from any provision or sale of electric energy transmission services or ancillary services if such services are provided on a nondiscriminatory open access basis under an open access transmission tariff approved or accepted by FERC or under an independent transmission provider agreement approved or accepted by FERC (other than income received or accrued directly or indirectly from a member),

(iii) from the provision or sale of electric energy distribution services or ancillary services if such services are provided on a nondiscriminatory open access basis to distribute electric energy not owned by the mutual or electric cooperative company--

(I) to end-users who are served by distribution facilities not owned by such company or any of its members (other than income received or accrued directly or indirectly from a member), or

(II) generated by a generation facility not owned or leased by such company or any of its members and which is directly connected to distribution facilities owned by such company or any of its members (other than income received or accrued directly or indirectly from a member),

(iv) from any nuclear decommissioning transaction, or

(v) from any asset exchange or conversion transaction.

(D) For purposes of this paragraph, the term "qualified pole rental" means any rental of a pole (or other structure used to support wires) if such pole (or other structure)--

(i) is used by the telephone or electric company to support one or more wires which are used by such company in providing telephone or electric services to its members, and

(ii) is used pursuant to the rental to support one or more wires (in addition to the wires described in clause (i)) for use in connection with the transmission by wire of electricity or of telephone or other communications.

For purposes of the preceding sentence, the term "rental" includes any sale of the right to use the pole (or other structure).

(E) For purposes of subparagraph (C)(ii), the term "FERC" means the Federal Energy Regulatory Commission and references to such term shall be treated as including the Public Utility Commission of Texas with respect to any ERCOT utility (as defined in section 212(k)(2)(B) of the Federal Power Act (*16 U.S.C. 824k(k)(2)(B)*)).

(F) For purposes of subparagraph (C)(iv), the term "nuclear decommissioning transaction" means--

(i) any transfer into a trust, fund, or instrument established to pay any nuclear decommissioning costs if the transfer is in connection with the transfer of the mutual or cooperative electric company's interest in a nuclear power plant or nuclear power plant unit,

(ii) any distribution from any trust, fund, or instrument established to pay any nuclear decommissioning costs, or

(iii) any earnings from any trust, fund, or instrument established to pay any nuclear decommissioning costs.

(G) For purposes of subparagraph (C)(v), the term "asset exchange or conversion transaction" means any voluntary exchange or involuntary conversion of any property related to generating, transmitting, distributing, or selling electric energy by a mutual or cooperative electric company, the gain from which qualifies for deferred recognition under section 1031 or 1033 [*26 USCS § 1031 or 1033*], but only if the replacement property acquired by such company pursuant to such section constitutes property which is used, or to be used, for--

(i) generating, transmitting, distributing, or selling electric energy, or

(ii) producing, transmitting, distributing, or selling natural gas.

(H) (i) In the case of a mutual or cooperative electric company described in this paragraph or an organization described in section 1381(a)(2)(C) [*26 USCS § 1381(a)(2)(C)*], income received or accrued from a load loss transaction shall be treated as an amount collected from members for the sole purpose of meeting losses and expenses.

(ii) For purposes of clause (i), the term "load loss transaction" means any wholesale or retail sale of electric energy (other than to members) to the extent that the aggregate sales during the recovery period do not exceed the load loss mitigation sales limit for such period.

(iii) For purposes of clause (ii), the load loss mitigation sales limit for the recovery period is the sum of the annual load losses for each year of such period.

(iv) For purposes of clause (iii), a mutual or cooperative electric company's annual load loss for each year of the recovery period is the amount (if any) by which--

(I) the megawatt hours of electric energy sold during such year to members of such electric company are less than

(II) the megawatt hours of electric energy sold during the base year to such members.

(v) For purposes of clause (iv)(II), the term "base year" means--

(I) the calendar year preceding the start-up year, or

(II) at the election of the mutual or cooperative electric company, the second or third calendar years preceding the start-up year.

(vi) For purposes of this subparagraph, the recovery period is the 7-year period beginning with the start-up year.

(vii) For purposes of this subparagraph, the start-up year is the first year that the mutual or cooperative electric company offers nondiscriminatory open access or the calendar year which includes the date of the enactment of this subparagraph, if later, at the election of such company.

(viii) A company shall not fail to be treated as a mutual or cooperative electric company for purposes of this paragraph or as a corporation operating on a cooperative basis for purposes of section 1381(a)(2)(C) [*26 USCS § 1381(a)(2)(C)*] by reason of the treatment under clause (i).

(ix) For purposes of subparagraph (A), in the case of a mutual or cooperative electric company, income received, or accrued, indirectly from a member shall be treated as an amount collected from members for the sole purpose of meeting losses and expenses.

(13) Cemetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit; and any corporation chartered solely for the purpose of the disposal of bodies by burial or cremation which is

not permitted by its charter to engage in any business not necessarily incident to that purpose and no part of the net earnings of which inures to the benefit of any private shareholder or individual.

   (14) (A) Credit unions without capital stock organized and operated for mutual purposes and without profit.

   (B) Corporations or associations without capital stock organized before September 1, 1957, and operated for mutual purposes and without profit for the purpose of providing reserve funds for, and insurance of shares or deposits in--

     (i) domestic building and loan associations,

     (ii) cooperative banks without capital stock organized and operated for mutual purposes and without profit,

     (iii) mutual savings banks not having capital stock represented by shares, or

     (iv) mutual savings banks described in section 591(b) [26 USCS § 591(b)][.]

   (C) Corporations or associations organized before September 1, 1957, and operated for mutual purposes and without profit for the purpose of providing reserve funds for associations or banks described in clause (i), (ii), or (iii) of subparagraph (B); but only if 85 percent or more of the income is attributable to providing such reserve funds and to investments. This subparagraph shall not apply to any corporation or association entitled to exemption under subparagraph (B).

   (15) (A) Insurance companies (as defined in section 816(a) [26 USCS § 816(a)]) other than life (including interinsurers and reciprocal underwriters) if--

     (i) (I) the gross receipts for the taxable year do not exceed $ 600,000, and

       (II) more than 50 percent of such gross receipts consist of premiums, or

     (ii) in the case of a mutual insurance company--

       (I) the gross receipts of which for the taxable year do not exceed $ 150,000, and

       (II) more than 35 percent of such gross receipts consist of premiums.

Clause (ii) shall not apply to a company if any employee of the company, or a member of the employee's family (as defined in section 2032A(e)(2) [26 USCS § 2032A(e)(2)]), is an employee of another company exempt from taxation by reason of this paragraph (or would be so exempt but for this sentence).

   (B) For purposes of subparagraph (A), in determining whether any company or association is described in subparagraph (A), such company or association shall be treated as receiving during the taxable year amounts described in subparagraph (A) which are received during such year by all other companies or associations which are members of the same controlled group as the insurance company or association for which the determination is being made.

   (C) For purposes of subparagraph (B), the term "controlled group" has the meaning given such term by section 831(b)(2)(B)(ii) [26 USCS § 831(b)(2)(B)(ii)], except that in applying section 831(b)(2)(B)(ii) [26 USCS § 831(b)(2)(B)(ii)] for purposes of this subparagraph, subparagraphs (B) and (C) of section 1563(b)(2) [26 USCS § 1563(b)(2)] shall be disregarded.

   (16) Corporations organized by an association subject to part IV of this subchapter [26 USCS §§ 521 et seq.] or members thereof, for the purpose of financing the ordinary crop operations of such members or other producers, and operated in conjunction with such association. Exemption shall not be denied any such corporation because it has capital stock, if the dividend rate of such stock is fixed at not to exceed the legal rate of interest in the State of incorporation or 8 percent per annum, whichever is greater, on the value of the consideration for which the stock was issued, and if substantially all such stock (other than nonvoting preferred stock, the owners of which are not entitled or permitted to participate, directly or indirectly, in the profits of the corporation, on dissolution or otherwise, beyond the fixed dividends) is owned by such association, or members thereof; nor shall exemption be denied any such corporation because there is accumulated and maintained by it a reserve required by State law or a reasonable reserve for any necessary purpose.

   (17) (A) A trust or trusts forming part of a plan providing for the payment of supplemental unemployment compensation benefits, if--

     (i) under the plan, it is impossible, at any time prior to the satisfaction of all liabilities, with respect to employees under the plan, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, any purpose other than the providing of supplemental unemployment compensation benefits,

     (ii) such benefits are payable to employees under a classification which is set forth in the plan and which is found by the Secretary not to be discriminatory in favor of employees who are highly compensated employees (within the meaning of section 414(q) [26 USCS § 414(q)]), and

     (iii) such benefits do not discriminate in favor of employees who are highly compensated employees (within the meaning of section 414(q) [26 USCS § 414(q)]). A plan shall not be considered discriminatory within the meaning of this clause merely because the benefits received under the plan bear a uniform relationship to the total compensation, or the basic or regular rate of compensation, of the employees covered by the plan.

(B) In determining whether a plan meets the requirements of subparagraph (A), any benefits provided under any other plan shall not be taken into consideration, except that a plan shall not be considered discriminatory--

(i) merely because the benefits under the plan which are first determined in a nondiscriminatory manner within the meaning of subparagraph (A) are then reduced by any sick, accident, or unemployment compensation benefits received under State or Federal law (or reduced by a portion of such benefits if determined in a nondiscriminatory manner), or

(ii) merely because the plan provides only for employees who are not eligible to receive sick, accident, or unemployment compensation benefits under State or Federal law the same benefits (or a portion of such benefits if determined in a nondiscriminatory manner) which such employees would receive under such laws if such employees were eligible for such benefits, or

(iii) merely because the plan provides only for employees who are not eligible under another plan (which meets the requirements of subparagraph (A)) of supplemental unemployment compensation benefits provided wholly by the employer the same benefits (or a portion of such benefits if determined in a nondiscriminatory manner) which such employees would receive under such other plan if such employees were eligible under such other plan, but only if the employees eligible under both plans would make a classification which would be nondiscriminatory within the meaning of subparagraph (A).

(C) A plan shall be considered to meet the requirements of subparagraph (A) during the whole of any year of the plan if on one day in each quarter it satisfies such requirements.

(D) The term "supplemental unemployment compensation benefits" means only--

(i) benefits which are paid to an employee because of his involuntary separation from the employment of the employer (whether or not such separation is temporary) resulting directly from a reduction in force, the discontinuance of a plant or operation, or other similar conditions, and

(ii) sick and accident benefits subordinate to the benefits described in clause (i).

(E) Exemption shall not be denied under subsection (a) to any organization entitled to such exemption as an association described in paragraph (9) of this subsection merely because such organization provides for the payment of supplemental unemployment benefits (as defined in subparagraph (D)(i)).

(18) A trust or trusts created before June 25, 1959, forming part of a plan providing for the payment of benefits under a pension plan funded only by contributions of employees, if--

(A) under the plan, it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees under the plan, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, any purpose other than the providing of benefits under the plan,

(B) such benefits are payable to employees under a classification which is set forth in the plan and which is found by the Secretary not to be discriminatory in favor of employees who are highly compensated employees (within the meaning of section 414(q) [*26 USCS § 414(q)*]),

(C) such benefits do not discriminate in favor of employees who are highly compensated employees (within the meaning of section 414(q) [*26 USCS § 414(q)*]). A plan shall not be considered discriminatory within the meaning of this subparagraph merely because the benefits received under the plan bear a uniform relationship to the total compensation, or the basic or regular rate of compensation, of the employees covered by the plan, and

(D) in the case of a plan under which an employee may designate certain contributions as deductible--

(i) such contributions do not exceed the amount with respect to which a deduction is allowable under section 219(b)(3) [*26 USCS § 219(b)(3)*],

(ii) requirements similar to the requirements of section 401(k)(3)(A)(ii) [*26 USCS § 401(k)(3)(A)(ii)*] are met with respect to such elective contributions,

(iii) such contributions are treated as elective deferrals for purposes of section 402(g) [*26 USCS § 402(g)*], and

(iv) the requirements of section 401(a)(30) [*26 USCS § 401(a)(30)*] are met.

For purposes of subparagraph (D)(ii), rules similar to the rules of section 401(k)(8) [*26 USCS § 401(k)(8)*] shall apply. For purposes of section 4979 [*26 USCS § 4979*], any excess contribution under clause (ii) shall be treated as an excess contribution under a cash or deferred arrangement.

(19) A post or organization of past or present members of the Armed Forces of the United States, or an auxiliary unit or society of, or a trust or foundation for, any such post or organization--

(A) organized in the United States or any of its possessions,

(B) at least 75 percent of the members of which are past or present members of the Armed Forces of the United States and substantially all of the other members of which are individuals who are cadets or are spouses, widows,[,] widowers, ancestors, or lineal descendants of past or present members of the Armed Forces of the United States or of cadets, and

(C) no part of the net earnings of which inures to the benefit of any private shareholder or individual.

(20) an organization or trust created or organized in the United States, the exclusive function of which is to form part of a qualified group legal services plan or plans, within the meaning of section 120 [*26 USCS § 120*]. An organization or trust which receives contributions because of section 120(c)(5)(C) [*26 USCS § 120(c)(5)(C)*] shall not be prevented from qualifying as an organization described in this paragraph merely because it provides legal services or indemnification against the cost of legal services unassociated with a qualified group legal services plan.

(21) (A) A trust or trusts established in writing, created or organized in the United States, and contributed to by any person (except an insurance company) if--

(i) the purpose of such trust or trusts is exclusively--

(I) to satisfy, in whole or in part, the liability of such person for, or with respect to, claims for compensation for disability or death due to pneumoconiosis under Black Lung Acts,

(II) to pay premiums for insurance exclusively covering such liability,

(III) to pay administrative and other incidental expenses of such trust in connection with the operation of the trust and the processing of claims against such person under Black Lung Acts, and

(IV) to pay accident or health benefits for retired miners and their spouses and dependents (including administrative and other incidental expenses of such trust in connection therewith) or premiums for insurance exclusively covering such benefits; and

(ii) no part of the assets of the trust may be used for, or diverted to, any purpose other than--

(I) the purposes described in clause (i),

(II) investment (but only to the extent that the trustee determines that a portion of the assets is not currently needed for the purposes described in clause (i)) in qualified investments, or

(III) payment into the Black Lung Disability Trust Fund established under section 9501 [*26 USCS § 9501*], or into the general fund of the United States Treasury (other than in satisfaction of any tax or other civil or criminal liability of the person who established or contributed to the trust).

(B) No deduction shall be allowed under this chapter [*26 USCS §§ 1* et seq.] for any payment described in subparagraph (A)(i)(IV) from such trust.

(C) Payments described in subparagraph (A)(i)(IV) may be made from such trust during a taxable year only to the extent that the aggregate amount of such payments during such taxable year does not exceed the lesser of--

(i) the excess (if any) (as of the close of the preceding taxable year) of--

(I) the fair market value of the assets of the trust, over

(II) 110 percent of the present value of the liability described in subparagraph (A)(i)(I) of such person, or

(ii) the excess (if any) of--

(I) the sum of a similar excess determined as of the close of the last taxable year ending before the date of the enactment of this subparagraph [enacted Oct. 24, 1992] plus earnings thereon as of the close of the taxable year preceding the taxable year involved, over

(II) the aggregate payments described in subparagraph (A)(i)(IV) made from the trust during all taxable years beginning after the date of the enactment of this subparagraph [enacted Oct. 24, 1992].

The determinations under the preceding sentence shall be made by an independent actuary using actuarial methods and assumptions (not inconsistent with the regulations prescribed under section 192(c)(1)(A) [*26 USCS § 192(c)(1)(A)*]) each of which is reasonable and which are reasonable in the aggregate.

(D) For purposes of this paragraph:

(i) The term "Black Lung Acts" means part C of title IV of the Federal Mine Safety and Health Act of 1977 [*30 USCS §§ 931* et seq.], and any State law providing compensation for disability or death due to that pneumoconiosis.

(ii) The term "qualified investments" means--

(I) public debt securities of the United States,

(II) obligations of a State or local government which are not in default as to principal or interest, and

(III) time or demand deposits in a bank (as defined in section 581 [*26 USCS § 581*]) or an insured credit union (within the meaning of section 101(7) of the Federal Credit Union Act, *12 U.S.C. 1752(7)*) located in the United States.

(iii) The term "miner" has the same meaning as such term has when used in section 402(d) of the Black Lung Benefits Act (*30 U.S.C. 902(d)*).

(iv) The term "incidental expenses" includes legal, accounting, actuarial, and trustee expenses.

(22) A trust created or organized in the United States and established in writing by the plan sponsors of multiemployer plans if--

(A) the purpose of such trust is exclusively--

(i) to pay any amount described in section 4223(c) or (h) of the Employee Retirement Income Security Act of 1974 [*29 USCS § 1402(c)* or (h)], and

(ii) to pay reasonable and necessary administrative expenses in connection with the establishment and operation of the trust and the processing of claims against the trust,

(B) no part of the assets of the trust may be used for, or diverted to, any purpose other than--

(i) the purposes described in subparagraph (A), or

(ii) the investment in securities, obligations, or time or demand deposits described in clause (ii) of paragraph (21)(D),

(C) such trust meets the requirements of paragraphs (2), (3), and (4) of section 4223(b) [29 USCS § 1402(b)], 4223(h) [29 USCS § 1402(h)], or, if applicable, section 4223(c) [29 USCS § 1402(c)] of the Employee Retirement Income Security Act of 1974, and

(D) the trust instrument provides that, on dissolution of the trust, assets of the trust may not be paid other than to plans which have participated in the plan or, in the case of a trust established under section 4223(h) of such Act, to plans with respect to which employers have participated in the fund.

(23) Any association organized before 1880 more than 75 percent of the members of which are present or past members of the Armed Forces and a principal purpose of which is to provide insurance and other benefits to veterans or their dependents.

(24) A trust described in section 4049 of the Employee Retirement Income Security Act of 1974 [former 29 USCS § 1349] (as in effect on the date of the enactment of the Single-Employer Pension Plan Amendments Act of 1986 [enacted April 7, 1986]).

(25) (A) Any corporation or trust which--

(i) has no more than 35 shareholders or beneficiaries,

(ii) has only 1 class of stock or beneficial interest, and

(iii) is organized for the exclusive purposes of--

(I) acquiring real property and holding title to, and collecting income from, such property, and

(II) remitting the entire amount of income from such property (less expenses) to 1 or more organizations described in subparagraph (C) which are shareholders of such corporation or beneficiaries of such trust.

For purposes of clause (iii), the term "real property" shall not include any interest as a tenant in common (or similar interest) and shall not include any indirect interest.

(B) A corporation or trust shall be described in subparagraph (A) without regard to whether the corporation or trust is organized by 1 or more organizations described in subparagraph (C).

(C) An organization is described in this subparagraph if such organization is--

(i) a qualified pension, profit sharing, or stock bonus plan that meets the requirements of section 401(a) [26 USCS § 401(a)],

(ii) a governmental plan (within the meaning of section 414(d) [26 USCS § 414(d)]),

(iii) the United States, any State or political subdivision thereof, or any agency or instrumentality of any of the foregoing, or

(iv) any organization described in paragraph (3).

(D) A corporation or trust shall in no event be treated as described in subparagraph (A) unless such corporation or trust permits its shareholders or beneficiaries--

(i) to dismiss the corporation's or trust's investment adviser, following reasonable notice, upon a vote of the shareholders or beneficiaries holding a majority of interest in the corporation or trust, and

(ii) to terminate their interest in the corporation or trust by either, or both, of the following alternatives, as determined by the corporation or trust:

(I) by selling or exchanging their stock in the corporation or interest in the trust (subject to any Federal or State securities law) to any organization described in subparagraph (C) so long as the sale or exchange does not increase the number of shareholders or beneficiaries in such corporation or trust above 35, or

(II) by having their stock or interest redeemed by the corporation or trust after the shareholder or beneficiary has provided 90 days notice to such corporation or trust.

(E) (i) For purposes of this title--

(I) a corporation which is a qualified subsidiary shall not be treated as a separate corporation, and

(II) all assets, liabilities, and items of income, deduction, and credit of a qualified subsidiary shall be treated as assets, liabilities, and such items (as the case may be) of the corporation or trust described in subparagraph (A).

(ii) For purposes of this subparagraph, the term "qualified subsidiary" means any corporation if, at all times during the period such corporation was in existence, 100 percent of the stock of such corporation is held by the corporation or trust described in subparagraph (A).

(iii) For purposes of this subtitle [26 USCS §§ 1 et seq.], if any corporation which was a qualified subsidiary ceases to meet the requirements of clause (ii), such corporation shall be treated as a new corporation acquiring all of its assets (and assuming all of its liabilities) immediately before such cessation from the corporation or trust described in subparagraph (A) in exchange for its stock.

(F) For purposes of subparagraph (A), the term "real property" includes any personal property which is leased under, or in connection with, a lease of real property, but only if the rent attributable to such personal property (determined under the rules of section 856(d)(1) [26 USCS § 856(d)(1)]) for the taxable year does not exceed 15 percent of the total rent for the taxable year attributable to both the real and personal property leased under, or in connection with, such lease.

(G) (i) An organization shall not be treated as failing to be described in this paragraph merely by reason of the receipt of any otherwise disqualifying income which is incidentally derived from the holding of real property.

(ii) Clause (i) shall not apply if the amount of gross income described in such clause exceeds 10 percent of the organization's gross income for the taxable year unless the organization establishes to the satisfaction of the Secretary that the receipt of gross income described in clause (i) in excess of such limitation was inadvertent and reasonable steps are being taken to correct the circumstances giving rise to such income.

(26) Any membership organization if--

(A) such organization is established by a State exclusively to provide coverage for medical care (as defined in section 213(d) [26 USCS § 213(d)]) on a not-for-profit basis to individuals described in subparagraph (B) through--

(i) insurance issued by the organization, or

(ii) a health maintenance organization under an arrangement with the organization,

(B) the only individuals receiving such coverage through the organization are individuals--

(i) who are residents of such State, and

(ii) who, by reason of the existence or history of a medical condition--

(I) are unable to acquire medical care coverage for such condition through insurance or from a health maintenance organization, or

(II) are able to acquire such coverage only at a rate which is substantially in excess of the rate for such coverage through the membership organization,

(C) the composition of the membership in such organization is specified by such State, and

(D) no part of the net earnings of the organization inures to the benefit of any private shareholder or individual.

A spouse and any qualifying child (as defined in section 24(c) [26 USCS § 24(c)]) of an individual described in subparagraph (B) (without regard to this sentence) shall be treated as described in subparagraph (B).

(27) (A) Any membership organization if--

(i) such organization is established before June 1, 1996, by a State exclusively to reimburse its members for losses arising under workmen's compensation acts,

(ii) such State requires that the membership of such organization consist of--

(I) all persons who issue insurance covering workmen's compensation losses in such State, and

(II) all persons and governmental entities who self-insure against such losses, and

(iii) such organization operates as a non-profit organization by--

(I) returning surplus income to its members or workmen's compensation policyholders on a periodic basis, and

(II) reducing initial premiums in anticipation of investment income.

(B) Any organization (including a mutual insurance company) if--

(i) such organization is created by State law and is organized and operated under State law exclusively to--

(I) provide workmen's compensation insurance which is required by State law or with respect to which State law provides significant disincentives if such insurance is not purchased by an employer, and

(II) provide related coverage which is incidental to workmen's compensation insurance,

(ii) such organization must provide workmen's compensation insurance to any employer in the State (for employees in the State or temporarily assigned out-of-State) which seeks such insurance and meets other reasonable requirements relating thereto,

(iii) (I) the State makes a financial commitment with respect to such organization either by extending the full faith and credit of the State to the initial debt of such organization or by providing the initial operating capital of such organization, and (II) in the case of periods after the date of enactment of this subparagraph [enacted Aug. 5, 1997], the assets of such organization revert to the State upon dissolution or State law does not permit the dissolution of such organization, and

(iv) the majority of the board of directors or oversight body of such organization are appointed by the chief executive officer or other executive branch official of the State, by the State legislature, or by both.

(28) The National Railroad Retirement Investment Trust established under section 15(j) of the Railroad Retirement Act of 1974 [*45 USCS § 231n(j)*].

(d) Religious and apostolic organizations. The following organizations are referred to in subsection (a): Religious or apostolic associations or corporations, if such associations or corporations have a common treasury or community treasury, even if such associations or corporations engage in business for the common benefit of the members, but only if the members thereof include (at the time of filing their returns) in their gross income their entire pro rata shares, whether distributed or not, of the taxable income of the association or corporation for such year. Any amount so included in the gross income of a member shall be treated as a dividend received.

(e) Cooperative hospital service organizations. For purposes of this title, an organization shall be treated as an organization organized and operated exclusively for charitable purposes, if--
  (1) such organization is organized and operated solely--
    (A) to perform, on a centralized basis, one or more of the following services which, if performed on its own behalf by a hospital which is an organization described in subsection (c)(3) and exempt from taxation under subsection (a), would constitute activities in exercising or performing the purpose or function constituting the basis for its exemption: data processing, purchasing (including the purchasing of insurance on a group basis), warehousing, billing and collection (including the purchase of patron accounts receivable on a recourse basis), food, clinical, industrial engineering, laboratory, printing, communications, record center, and personnel (including selection, testing, training, and education of personnel) services; and
    (B) to perform such services solely for two or more hospitals each of which is--
      (i) an organization described in subsection (c)(3) which is exempt from taxation under subsection (a),
      (ii) a constituent part of an organization described in subsection (c)(3) which is exempt from taxation under subsection (a) and which, if organized and operated as a separate entity, would constitute an organization described in subsection (c)(3), or
      (iii) owned and operated by the United States, a State, the District of Columbia, or a possession of the United States, or a political subdivision or an agency or instrumentality of any of the foregoing;
  (2) such organization is organized and operated on a cooperative basis and allocates or pays, within 8 1/2 months after the close of its taxable year, all net earnings to patrons on the basis of services performed for them; and
  (3) if such organization has capital stock, all of such stock outstanding is owned by its patrons.

For purposes of this title, any organization which, by reason of the preceding sentence, is an organization described in subsection (c)(3) and exempt from taxation under subsection (a), shall be treated as a hospital and as an organization referred to in section 170(b)(1)(A)(iii) [*26 USCS § 170(b)(1)(A)(iii)*].

(f) Cooperative service organizations of operating educational organizations. For purposes of this title, if an organization is--
  (1) organized and operated solely to hold, commingle, and collectively invest and reinvest (including arranging for and supervising the performance by independent contractors of investment services related thereto) in stocks and securities, the moneys contributed thereto by each of the members of such organization, and to collect income therefrom and turn over the entire amount thereof, less expenses, to such members,
  (2) organized and controlled by one or more such members, and
  (3) comprised solely of members that are organizations described in clause (ii) or (iv) of section 170(b)(1)(A) [*26 USCS § 170(b)(1)(A)*]--
    (A) which are exempt from taxation under subsection (a), or
    (B) the income of which is excluded from taxation under section 115(a) [*26 USCS § 115(a)*],
then such organization shall be treated as an organization organized and operated exclusively for charitable purposes.

(g) Definition of agricultural. For purposes of subsection (c)(5), the term "agricultural" includes the art or science of cultivating land, harvesting crops or aquatic resources, or raising livestock.

(h) Expenditures by public charities to influence legislation.
  (1) General rule. In the case of an organization to which this subsection applies, exemption from taxation under subsection (a) shall be denied because a substantial part of the activities of such organization consists of carrying on propaganda, or otherwise attempting, to influence legislation, but only if such organization normally--

(A) makes lobbying expenditures in excess of the lobbying ceiling amount for such organization for each taxable year, or

(B) makes grass roots expenditures in excess of the grass roots ceiling amount for such organization for each taxable year.

(2) Definitions. For purposes of this subsection--

(A) Lobbying expenditures. The term "lobbying expenditures" means expenditures for the purpose of influencing legislation (as defined in section 4911(d) [26 USCS § 4911(d)]).

(B) Lobbying ceiling amount. The lobbying ceiling amount for any organization for any taxable year is 150 percent of the lobbying nontaxable amount for such organization for such taxable year, determined under section 4911 [26 USCS § 4911].

(C) Grass roots expenditures. The term "grass roots expenditures" means expenditures for the purpose of influencing legislation (as defined in section 4911(d) [26 USCS § 4911(d)] without regard to paragraph (1)(B) thereof).

(D) Grass roots ceiling amount. The grass roots ceiling amount for any organization for any taxable year is 150 percent of the grass roots nontaxable amount for such organization for such taxable year, determined under section 4911 [26 USCS § 4911].

(3) Organizations to which this subsection applies. This subsection shall apply to any organization which has elected (in such manner and at such time as the Secretary may prescribe) to have the provisions of this subsection apply to such organization and which, for the taxable year which includes the date the election is made, is described in subsection (c)(3) and--

(A) is described in paragraph (4), and

(B) is not a disqualified organization under paragraph (5).

(4) Organizations permitted to elect to have this subsection apply. An organization is described in this paragraph if it is described in--

(A) section 170(b)(1)(A)(ii) [26 USCS § 170(b)(1)(A)(ii)] (relating to educational institutions),

(B) section 170(b)(1)(A)(iii) [26 USCS § 170(b)(1)(A)(iii)] (relating to hospitals and medical research organizations),

(C) section 170(b)(1)(A)(iv) [26 USCS § 170(b)(1)(A)(iv)] (relating to organizations supporting government schools),

(D) section 170(b)(1)(A)(vi) [26 USCS § 170(b)(1)(A)(vi)] (relating to organizations publicly supported by charitable contributions),

(E) section 509(a)(2) [26 USCS § 509(a)(2)] (relating to organizations publicly supported by admissions, sales, etc.), or

(F) section 509(a)(3) [26 USCS § 509(a)(3)] (relating to organizations supporting certain types of public charities) except that for purposes of this subparagraph, section 509(a)(3) [26 USCS § 509(a)(3)] shall be applied without regard to the last sentence of section 509(a) [26 USCS § 509(a)].

(5) Disqualified organizations. For purposes of paragraph (3) an organization is a disqualified organization if it is--

(A) described in section 170(b)(1)(A)(i) [26 USCS § 170(b)(1)(A)(i)] (relating to churches),

(B) an integrated auxiliary of a church or of a convention or association of churches, or

(C) a member of an affiliated group of organizations (within the meaning of section 4911(f)(2) [26 USCS § 4911(f)(2)]) if one or more members of such group is described in subparagraph (A) or (B).

(6) Years for which election is effective. An election by an organization under this subsection shall be effective for all taxable years of such organization which--

(A) end after the date the election is made, and

(B) begin before the date the election is revoked by such organization (under regulations prescribed by the Secretary).

(7) No effect on certain organizations. With respect to any organization for a taxable year for which--

(A) such organization is a disqualified organization (within the meaning of paragraph (5)), or

(B) an election under this subsection is not in effect for such organization,

nothing in this subsection or in section 4911 [26 USCS § 4911] shall be construed to affect the interpretation of the phrase, "no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation," under subsection (c)(3).

(8) Affiliated organizations. For rules regarding affiliated organizations, see section 4911(f) [26 USCS § 4911(f)].

(i) Prohibition of discrimination by certain social clubs. Notwithstanding subsection (a), an organization which is described in subsection (c)(7) shall not be exempt from taxation under subsection (a) for any taxable year if, at any time

during such taxable year, the charter, bylaws, or other governing instrument, of such organization or any written policy statement of such organization contains a provision which provides for discrimination against any person on the basis of race, color, or religion. The preceding sentence to the extent it relates to discrimination on the basis of religion shall not apply to--
   (1) an auxiliary of a fraternal beneficiary society if such society--
      (A) is described in subsection (c)(8) and exempt from tax under subsection (a), and
      (B) limits its membership to the members of a particular religion, or
   (2) a club which in good faith limits its membership to the members of a particular religion in order to further the teachings or principles of that religion, and not to exclude individuals of a particular race or color.

(j) Special rules for certain amateur sports organizations.
   (1) In general. In the case of a qualified amateur sports organization--
      (A) the requirement of subsection (c)(3) that no part of its activities involve the provision of athletic facilities or equipment shall not apply, and
      (B) such organization shall not fail to meet the requirements of subsection (c)(3) merely because its membership is local or regional in nature.
   (2) Qualified amateur sports organization defined. For purposes of this subsection, the term "qualified amateur sports organization" means any organization organized and operated exclusively to foster national or international amateur sports competition if such organization is also organized and operated primarily to conduct national or international competition in sports or to support and develop amateur athletes for national or international competition in sports.

(k) Treatment of certain organizations providing child care. For purposes of subsection (c)(3) of this section and sections 170(c)(2), 2055(a)(2), and 2522(a)(2) [26 USCS §§ 170(c)(2), 2055(a)(2), and 2522(a)(2)], the term "educational purposes" includes the providing of care of children away from their homes if--
   (1) substantially all of the care provided by the organization is for purposes of enabling individuals to be gainfully employed, and
   (2) the services provided by the organization are available to the general public.

(l) Government corporations exempt under subsection (c)(1). For purposes of subsection (c)(1), the following organizations are described in this subsection:
   (1) The Central Liquidity Facility established under title III of the Federal Credit Union Act (12 U.S.C. 1795 et seq. ).
   (2) The Resolution Trust Corporation established under section 21A of the Federal Home Loan Bank Act [12 USCS § 1441a].
   (3) The Resolution Funding Corporation established under section 21B of the Federal Home Loan Bank Act [12 USCS § 1441b].

(m) Certain organizations providing commercial-type insurance not exempt from tax.
   (1) Denial of tax exemption where providing commercial-type insurance is substantial part of activities. An organization described in paragraph (3) or (4) of subsection (c) shall be exempt from tax under subsection (a) only if no substantial part of its activities consists of providing commercial-type insurance.
   (2) Other organizations taxed as insurance companies on insurance business. In the case of an organization described in paragraph (3) or (4) of subsection (c) which is exempt from tax under subsection (a) after the application of paragraph (1) of this subsection--
      (A) the activity of providing commercial-type insurance shall be treated as an unrelated trade or business (as defined in section 513 [26 USCS § 513]), and
      (B) in lieu of the tax imposed by section 511 [26 USCS § 511] with respect to such activity, such organization shall be treated as an insurance company for purposes of applying subchapter L [26 USCS §§ 801 et seq.] with respect to such activity.
   (3) Commercial-type insurance. For purposes of this subsection, the term "commercial-type insurance" shall not include--
      (A) insurance provided at substantially below cost to a class of charitable recipients,
      (B) incidental health insurance provided by a health maintenance organization of a kind customarily provided by such organizations,

(C) property or casualty insurance provided (directly or through an organization described in section 414(e)(3)(B)(ii) [*26 USCS § 414(e)(3)(B)(ii)*]) by a church or convention or association of churches for such church or convention or association of churches,

(D) providing retirement or welfare benefits (or both) by a church or a convention or association of churches (directly or through an organization described in section 414(e)(3)(A) or 414(e)(3)(B)(ii) [*26 USCS § 441(e)(3)(A) or 414(e)(3)(B)(ii)*]) for the employees (including employees described in section 414(e)(3)(B) [*26 USCS § 414(e)(3)(B)*]) of such church or convention or association of churches or the beneficiaries of such employees, and

(E) charitable gift annuities.

(4) Insurance includes annuities. For purposes of this subsection, the issuance of annuity contracts shall be treated as providing insurance.

(5) Charitable gift annuity. For purposes of paragraph (3)(E), the term "charitable gift annuity" means an annuity if--

(A) a portion of the amount paid in connection with the issuance of the annuity is allowable as a deduction under section 170 or 2055 [*26 USCS § 170 or 2055*], and

(B) the annuity is described in section 514(c)(5) [*26 USCS § 514 (c)(5)*] (determined as if any amount paid in cash in connection with such issuance were property).

(n) Charitable risk pools.

(1) In general. For purposes of this title--

(A) a qualified charitable risk pool shall be treated as an organization organized and operated exclusively for charitable purposes, and

(B) subsection (m) shall not apply to a qualified charitable risk pool.

(2) Qualified charitable risk pool. For purposes of this subsection, the term "qualified charitable risk pool" means any organization--

(A) which is organized and operated solely to pool insurable risks of its members (other than risks related to medical malpractice) and to provide information to its members with respect to loss control and risk management,

(B) which is comprised solely of members that are organizations described in subsection (c)(3) and exempt from tax under subsection (a), and

(C) which meets the organizational requirements of paragraph (3).

(3) Organizational requirements. An organization (hereinafter in this subsection referred to as the "risk pool") meets the organizational requirements of this paragraph if--

(A) such risk pool is organized as a nonprofit organization under State law provisions authorizing risk pooling arrangements for charitable organizations,

(B) such risk pool is exempt from any income tax imposed by the State (or will be so exempt after such pool qualifies as an organization exempt from tax under this title),

(C) such risk pool has obtained at least $ 1,000,000 in startup capital from nonmember charitable organizations,

(D) such risk pool is controlled by a board of directors elected by its members, and

(E) the organizational documents of such risk pool require that--

(i) each member of such pool shall at all times be an organization described in subsection (c)(3) and exempt from tax under subsection (a),

(ii) any member which receives a final determination that it no longer qualifies as an organization described in subsection (c)(3) shall immediately notify the pool of such determination and the effective date of such determination, and

(iii) each policy of insurance issued by the risk pool shall provide that such policy will not cover the insured with respect to events occurring after the date such final determination was issued to the insured.

An organization shall not cease to qualify as a qualified charitable risk pool solely by reason of the failure of any of its members to continue to be an organization described in subsection (c)(3) if, within a reasonable period of time after such pool is notified as required under subparagraph (E)(ii), such pool takes such action as may be reasonably necessary to remove such member from such pool.

(4) Other definitions. For purposes of this subsection--

(A) Startup capital. The term "startup capital" means any capital contributed to, and any program-related investments (within the meaning of section 4944(c) [*26 USCS § 4944(c)*]) made in, the risk pool before such pool commences operations.

(B) Nonmember charitable organization. The term "nonmember charitable organization" means any organization which is described in subsection (c)(3) and exempt from tax under subsection (a) and which is not a member of the risk pool and does not benefit (directly or indirectly) from the insurance coverage provided by the pool to its members.

(o) Treatment of hospitals participating in provider-sponsored organizations. An organization shall not fail to be treated as organized and operated exclusively for a charitable purpose for purposes of subsection (c)(3) solely because a hospital which is owned and operated by such organization participates in a provider-sponsored organization (as defined in section 1855(d) of the Social Security Act [42 USCS § 1395w-25(d)]), whether or not the provider-sponsored organization is exempt from tax. For purposes of subsection (c)(3), any person with a material financial interest in such a provider-sponsored organization shall be treated as a private shareholder or individual with respect to the hospital.

(p) Suspension of tax-exempt status of terrorist organizations.
  (1) In general. The exemption from tax under subsection (a) with respect to any organization described in paragraph (2), and the eligibility of any organization described in paragraph (2) to apply for recognition of exemption under subsection (a), shall be suspended during the period described in paragraph (3).
  (2) Terrorist organizations. An organization is described in this paragraph if such organization is designated or otherwise individually identified--
    (A) under section 212(a)(3)(B)(vi)(II) or 219 of the Immigration and Nationality Act [8 USCS § 1182(a)(3)(B)(vi)(II) or 1189] as a terrorist organization or foreign terrorist organization,
    (B) in or pursuant to an Executive order which is related to terrorism and issued under the authority of the International Emergency Economic Powers Act [50 USCS § § 1701 et seq.] or section 5 of the United Nations Participation Act of 1945 [22 USCS § 287c] for the purpose of imposing on such organization an economic or other sanction, or
    (C) in or pursuant to an Executive order issued under the authority of any Federal law if--
      (i) the organization is designated or otherwise individually identified in or pursuant to such Executive order as supporting or engaging in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act [8 USCS § 1182(a)(3)(B)]) or supporting terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989 [22 USCS § 2656f(d)(2)]); and
      (ii) such Executive order refers to this subsection.
  (3) Period of suspension. With respect to any organization described in paragraph (2), the period of suspension--
    (A) begins on the later of--
      (i) the date of the first publication of a designation or identification described in paragraph (2) with respect to such organization, or
      (ii) the date of the enactment of this subsection [enacted Nov. 11, 2003], and
    (B) ends on the first date that all designations and identifications described in paragraph (2) with respect to such organization are rescinded pursuant to the law or Executive order under which such designation or identification was made.
  (4) Denial of deduction. No deduction shall be allowed under any provision of this title, including sections 170, 545(b)(2), 556(b)(2), 642(c), 2055, 2106(a)(2), and 2522 [26 USCS § § 170, 545(b)(2), 556(b)(2), 642(c), 2055, 2106(a)(2), and 2522], with respect to any contribution to an organization described in paragraph (2) during the period described in paragraph (3).
  (5) Denial of administrative or judicial challenge of suspension or denial of deduction. Notwithstanding section 7428 [26 USCS § 7428] or any other provision of law, no organization or other person may challenge a suspension under paragraph (1), a designation or identification described in paragraph (2), the period of suspension described in paragraph (3), or a denial of a deduction under paragraph (4) in any administrative or judicial proceeding relating to the Federal tax liability of such organization or other person.
  (6) Erroneous designation.
    (A) In general. If--
      (i) the tax exemption of any organization described in paragraph (2) is suspended under paragraph (1),
      (ii) each designation and identification described in paragraph (2) which has been made with respect to such organization is determined to be erroneous pursuant to the law or Executive order under which such designation or identification was made, and
      (iii) the erroneous designations and identifications result in an overpayment of income tax for any taxable year by such organization,
    credit or refund (with interest) with respect to such overpayment shall be made.
    (B) Waiver of limitations. If the credit or refund of any overpayment of tax described in subparagraph (A)(iii) is prevented at any time by the operation of any law or rule of law (including res judicata), such credit or refund may nevertheless be allowed or made if the claim therefor is filed before the close of the 1-year period beginning on the date of the last determination described in subparagraph (A)(ii).

(7) Notice of suspensions. If the tax exemption of any organization is suspended under this subsection, the Internal Revenue Service shall update the listings of tax-exempt organizations and shall publish appropriate notice to taxpayers of such suspension and of the fact that contributions to such organization are not deductible during the period of such suspension.

(q) Special rules for credit counseling organizations.
 (1) In general. An organization with respect to which the provision of credit counseling services is a substantial purpose shall not be exempt from tax under subsection (a) unless such organization is described in paragraph (3) or (4) of subsection (c) and such organization is organized and operated in accordance with the following requirements:
  (A) The organization--
   (i) provides credit counseling services tailored to the specific needs and circumstances of consumers,
   (ii) makes no loans to debtors (other than loans with no fees or interest) and does not negotiate the making of loans on behalf of debtors,
   (iii) provides services for the purpose of improving a consumer's credit record, credit history, or credit rating only to the extent that such services are incidental to providing credit counseling services, and
   (iv) does not charge any separately stated fee for services for the purpose of improving any consumer's credit record, credit history, or credit rating.
  (B) The organization does not refuse to provide credit counseling services to a consumer due to the inability of the consumer to pay, the ineligibility of the consumer for debt management plan enrollment, or the unwillingness of the consumer to enroll in a debt management plan.
  (C) The organization establishes and implements a fee policy which--
   (i) requires that any fees charged to a consumer for services are reasonable,
   (ii) allows for the waiver of fees if the consumer is unable to pay, and
   (iii) except to the extent allowed by State law, prohibits charging any fee based in whole or in part on a percentage of the consumer's debt, the consumer's payments to be made pursuant to a debt management plan, or the projected or actual savings to the consumer resulting from enrolling in a debt management plan.
  (D) At all times the organization has a board of directors or other governing body--
   (i) which is controlled by persons who represent the broad interests of the public, such as public officials acting in their capacities as such, persons having special knowledge or expertise in credit or financial education, and community leaders,
   (ii) not more than 20 percent of the voting power of which is vested in persons who are employed by the organization or who will benefit financially, directly or indirectly, from the organization's activities (other than through the receipt of reasonable directors' fees or the repayment of consumer debt to creditors other than the credit counseling organization or its affiliates), and
   (iii) not more than 49 percent of the voting power of which is vested in persons who are employed by the organization or who will benefit financially, directly or indirectly, from the organization's activities (other than through the receipt of reasonable directors' fees).
  (E) The organization does not own more than 35 percent of--
   (i) the total combined voting power of any corporation (other than a corporation which is an organization described in subsection (c)(3) and exempt from tax under subsection (a)) which is in the trade or business of lending money, repairing credit, or providing debt management plan services, payment processing, or similar services,
   (ii) the profits interest of any partnership (other than a partnership which is an organization described in subsection (c)(3) and exempt from tax under subsection (a)) which is in the trade or business of lending money, repairing credit, or providing debt management plan services, payment processing, or similar services, and
   (iii) the beneficial interest of any trust or estate (other than a trust which is an organization described in subsection (c)(3) and exempt from tax under subsection (a)) which is in the trade or business of lending money, repairing credit, or providing debt management plan services, payment processing, or similar services.
  (F) The organization receives no amount for providing referrals to others for debt management plan services, and pays no amount to others for obtaining referrals of consumers.
 (2) Additional requirements for organizations described in subsection (c)(3).
  (A) In general. In addition to the requirements under paragraph (1), an organization with respect to which the provision of credit counseling services is a substantial purpose and which is described in paragraph (3) of subsection (c) shall not be exempt from tax under subsection (a) unless such organization is organized and operated in accordance with the following requirements:

(i) The organization does not solicit contributions from consumers during the initial counseling process or while the consumer is receiving services from the organization.

(ii) The aggregate revenues of the organization which are from payments of creditors of consumers of the organization and which are attributable to debt management plan services do not exceed the applicable percentage of the total revenues of the organization.

(B) Applicable percentage.

(i) In general. For purposes of subparagraph (A)(ii), the applicable percentage is 50 percent.

(ii) Transition rule. Notwithstanding clause (i), in the case of an organization with respect to which the provision of credit counseling services is a substantial purpose and which is described in paragraph (3) of subsection (c) and exempt from tax under subsection (a) on the date of the enactment of this subsection, the applicable percentage is--

(I) 80 percent for the first taxable year of such organization beginning after the date which is 1 year after the date of the enactment of this subsection, and

(II) 70 percent for the second such taxable year beginning after such date, and

(III) 60 percent for the third such taxable year beginning after such date.

(3) Additional requirement for organizations described in subsection (c)(4). In addition to the requirements under paragraph (1), an organization with respect to which the provision of credit counseling services is a substantial purpose and which is described in paragraph (4) of subsection (c) shall not be exempt from tax under subsection (a) unless such organization notifies the Secretary, in such manner as the Secretary may by regulations prescribe, that it is applying for recognition as a credit counseling organization.

(4) Credit counseling services; debt management plan services. For purposes of this subsection--

(A) Credit counseling services. The term "credit counseling services" means--

(i) the providing of educational information to the general public on budgeting, personal finance, financial literacy, saving and spending practices, and the sound use of consumer credit,

(ii) the assisting of individuals and families with financial problems by providing them with counseling, or

(iii) a combination of the activities described in clauses (i) and (ii).

(B) Debt management plan services. The term "debt management plan services" means services related to the repayment, consolidation, or restructuring of a consumer's debt, and includes the negotiation with creditors of lower interest rates, the waiver or reduction of fees, and the marketing and processing of debt management plans.

(r) Cross reference. For nonexemption of Communist-controlled organizations, see section 11(b) of the Internal Security Act of 1950 (64 Stat 997; *50 U.S.C. 790(b)*).

**HISTORY:**
(Aug. 16, 1954, ch 736, 68A Stat. 163; March 13, 1956, ch 83, § 5(2), 70 Stat. 49; April 22, 1960, P.L. 86-428, § 1, 74 Stat. 54; July 14, 1960, P.L. 86-667, § 1, 74 Stat. 534; Oct. 16, 1962, P.L. 87-834, § 8(d), 76 Stat. 997; Feb. 2, 1966, P.L. 89-352, § 1, 80 Stat. 4; Nov. 8, 1966, P.L. 89-800, § 6(a), 80 Stat. 1515; June 28, 1968, P.L. 90-364, Title I, § 109(a), 82 Stat. 269; Dec. 30, 1969, P.L. 91-172, Title I, § § 101(j)(3)-(6), 121(b)(5)(A), (6)(A), 83 Stat. 526, 527, 541; Dec. 31, 1970, P.L. 91-618, § 1, 84 Stat. 1855; Aug. 29, 1972, P.L. 92-418, § 1(a), 86 Stat. 656; June 8, 1974, P.L. 93-310, § 3(a), 88 Stat. 235; Jan. 3, 1975, P.L. 93-625, § 10(c), 88 Stat. 2119; Oct. 4, 1976, P.L. 94-455, Title XIII, § § 1307(a)(1), (d)(1)(A), 1312(a), 1313(a), Title XIX, § 1906(b)(13)(A), Title XXI, § § 2113(a), 2134(b), 90 Stat. 1720, 1727, 1730, 1834, 1907, 1927; Oct. 20, 1976, P.L. 94-568, § 1(a), 2(a), 90 Stat. 2697; Feb. 10, 1978, P.L. 95-227, § 4(a), 92 Stat. 15; Aug. 15, 1978, P.L. 95-345, § 1(a), 92 Stat. 481; Nov. 6, 1978, P.L. 95-600, Title VII, § 703(b)(2), (g)(2)(A), (B), 92 Stat. 2939, 2940; April 1, 1980, P.L. 96-222, Title I, § 108(b)(2)(B), 94 Stat. 226; Sept. 26, 1980, P.L. 96-364, Title II, § 209(a), 94 Stat. 1290; Dec. 24, 1980, P.L. 96-601, § 3(a), 94 Stat. 3496; Dec. 28, 1980, P.L. 96-605, Title I, § 106(a), 94 Stat. 3523; Dec. 29, 1981, P.L. 97-119, Title I, § 103(c)(1), 95 Stat. 1638; Sept. 3, 1982, P.L. 97-248, Title II, § 286(a), Title III, § 354(a), (b), 96 Stat. 569, 640, 641; Jan. 12, 1983, P.L. 97-448, Title III, § 306(b)(5), 96 Stat. 2406; July 18, 1984, P.L. 98-369, Div A, Title X, § § 1032(a), 1079, Div B, Title VIII, § 2813(b), 98 Stat. 1033, 1056, 1206; April 7, 1986, P.L. 99-272, Title XI, § 11012(b), 100 Stat. 260; Oct. 22, 1986, P.L. 99-514, Title X, § § 1012(a), 1024(b), Title XI, § § 1109(a), 1114(b)(14), Title XVI, § 1603(a), Title XVIII, § § 1879(k)(1), 1899A(15), 100 Stat. 2390, 2406, 2435, 2451, 2768, 2909, 2959; Dec. 22, 1987, P.L. 100-203, Title X, § 10711(a)(2), 101 Stat. 1330-464; Nov. 10, 1988, P.L. 100-647, Title I, § § 1010(b)(4), 1011(c)(7)(D), 1016(a)(1)(A), (2)-(4), 1018(u)(14), (15), (34), Title II, § 2003(a)(1), (2), Title VI, § 6202(a), 102 Stat. 3451, 3458, 3573, 3574, 3590, 3592, 3597, 3598, 3730; Aug. 9, 1989, P.L. 101-73, Title XIV, § 1402(a), 103 Stat. 550; Oct. 24, 1992, P.L. 102-486, Title XIX, § 1940(a), 106 Stat. 3034; Aug. 10, 1993, P.L. 103-66, Title XIII, § 13146(a), (b), 107 Stat. 443; July 30, 1996, P.L. 104-168, Title XIII, § 1311(b)(1), 110 Stat. 1477; Aug. 20, 1996, P.L. 104-188, Title I, § § 1114(a),