# Exhibit 2

26 CFR 1.501(c)(3)-1

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2006, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

\*\*\* THIS SECTION IS CURRENT THROUGH THE OCTOBER 12, 2006 ISSUE OF \*\*\*
\*\*\* THE FEDERAL REGISTER \*\*\*

TITLE 26 -- INTERNAL REVENUE
CHAPTER I -- INTERNAL REVENUE SERVICE, DEPARTMENT OF THE TREASURY
SUBCHAPTER A -- INCOME TAX
PART 1 -- INCOME TAXES
NORMAL TAXES AND SURTAXES
EXEMPT ORGANIZATIONS
GENERAL RULE

26 CFR 1.501(c)(3)-1

§ 1.501(c)(3)-1 Organizations organized and operated for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals.

(a) Organizational and operational tests. (1) In order to be exempt as an organization described in section 501(c)(3), an organization must be both organized and operated exclusively for one or more of the purposes specified in such section. If an organization fails to meet either the organizational test or the operational test, it is not exempt.

(2) The term exempt purpose or purposes, as used in this section, means any purpose or purposes specified in section 501(c)(3), as defined and elaborated in paragraph (d) of this section.

(b) Organizational test--(1) In general. (i) An organization is organized exclusively for one or more exempt purposes only if its articles of organization (referred to in this section as its articles) as defined in subparagraph (2) of this paragraph:

(a) Limit the purposes of such organization to one or more exempt purposes; and

(b) Do not expressly empower the organization to engage, otherwise than as an insubstantial part of its activities, in activities which in themselves are not in furtherance of one or more exempt purposes.

(ii) In meeting the organizational test, the organization's purposes, as stated in its articles, may be as broad as, or more specific than, the purposes stated in section 501(c)(3). Therefore, an organization which, by the terms of its articles, is formed for literary and scientific purposes within the meaning of section 501(c)(3) of the Code shall, if it otherwise meets the requirements in this paragraph, be considered to have met the organizational test. Similarly, articles stating that the organization is created solely to receive contributions and pay them over to organizations which are described in section 501(c)(3) and exempt from taxation under section 501(a) are sufficient for purposes of the organizational test. Moreover, it is sufficient if the articles set for the purpose of the organization to be the operation of a school for adult education and describe in detail the manner of the operation of such school. In addition, if the articles state that the organization is formed for charitable purposes, such articles ordinarily shall be sufficient for purposes of the organizational test (see subparagraph (5) of this paragraph for rules relating to construction of terms).

(iii) An organization is not organized exclusively for one or more exempt purposes if its articles expressly empower it to carry on, otherwise than as an insubstantial part of its activities, activities which are not in furtherance of one or more exempt purposes, even though such organization is, by the terms of such articles, created for a purpose that is no broader than the purposes specified in section 501(c)(3). Thus, an organization that is empowered by its articles to engage in a manufacturing business, or to engage in the operation of a social club does not meet the organizational test regardless of the fact that its articles may state that such organization is created for charitable purposes within the meaning of section 501(c)(3) of the Code.

(iv) In no case shall an organization be considered to be organized exclusively for one or more exempt purposes, if, by the terms of its articles, the purposes for which such organization is created are broader than the purposes specified in section 501(c)(3). The fact that the actual operations of such an organization have been exclusively in furtherance of one or more exempt purposes shall not be sufficient to permit the organization to meet the organizational test. Similarly, such an organization will not meet the organizational test as a result of statements or other evidence that the members thereof intend to operate only in furtherance of one or more exempt purposes.

(v) An organization must, in order to establish its exemption, submit a detailed statement of its proposed activities with and as a part of its application for exemption (see paragraph (b) of § 1.501(a)-1).

(2) Articles of organization. For purposes of this section, the term articles of organization or articles includes the trust instrument, the corporate charter, the articles of association, or any other written instrument by which an organization is created.

(3) Authorization of legislative or political activities. An organization is not organized exclusively for one or more exempt purposes if its articles expressly empower it:

(i) To devote more than an insubstantial part of its activities to attempting to influence legislation by propaganda or otherwise; or

(ii) Directly or indirectly to participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of or in opposition to any candidate for public office; or

(iii) To have objectives and to engage in activities which characterize it as an action organization as defined in paragraph (c)(3) of this section.

The terms used in subdivisions (i), (ii), and (iii) of this subparagraph shall have the meanings provided in paragraph (c)(3) of this section. An organization's articles will not violate the provisions of paragraph (b)(3)(i) of this section even though the organization's articles expressly empower it to make the election provided for in section 501(h) with respect to influencing legislation and, only if it so elects, to make lobbying or grass roots expenditures that do not normally exceed the ceiling amounts prescribed by section 501(h)(2) (B) and (D).

(4) Distribution of assets on dissolution. An organization is not organized exclusively for one or more exempt purposes unless its assets are dedicated to an exempt purpose. An organization's assets will be considered dedicated to an exempt purpose, for example, if, upon dissolution, such assets would, by reason of a provision in the organization's articles or by operation of law, be distributed for one or more exempt purposes, or to the Federal Government, or to a State or local government, for a public purpose, or would be distributed by a court to another organization to be used in such manner as in the judgment of the court will best accomplish the general purposes for which the dissolved organization was organized. However, an organization does not meet the organizational test if its articles or the law of the State in which it was created provide that its assets would, upon dissolution, be distributed to its members or shareholders.

(5) Construction of terms. The law of the State in which an organization is created shall be controlling in construing the terms of its articles. However, any organization which contends that such terms have under State law a different meaning from their generally accepted meaning must establish such special meaning by clear and convincing reference to relevant court decisions, opinions of the State attorney-general, or other evidence of applicable State law.

(6) Applicability of the organizational test. A determination by the Commissioner or a district director that an organization is described in section 501(c)(3) and exempt under section 501(a) will not be granted after July 26, 1959 (regardless of when the application is filed), unless such organization meets the organizational test prescribed by this paragraph. If, before July 27, 1959, an organization has been determined by the Commissioner or district director to be exempt as an organization described in section 501(c)(3) or in a corresponding provision of prior law and such determination has not been revoked before such date, the fact that such organization does not meet the organizational test prescribed by this paragraph shall not be a basis for revoking such

determination. Accordingly, an organization which has been determined to be exempt before July 27, 1959, and which does not seek a new determination of exemption is not required to amend its articles of organization to conform to the rules of this paragraph, but any organization which seeks a determination of exemption after July 26, 1959, must have articles of organization which meet the rules of this paragraph. For the rules relating to whether an organization determined to be exempt before July 27, 1959, is organized exclusively for one or more exempt purposes, see 26 CFR (1939) 39.101(6)-1 (Regulations 118) as made applicable to the Code by Treasury Decision 6091, approved August 16, 1954 (19 FR 5167; C.B. 1954-2, 47).

(c) Operational test--(1) Primary activities. An organization will be regarded as operated exclusively for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose.

(2) Distribution of earnings. An organization is not operated exclusively for one or more exempt purposes if its net earnings inure in whole or in part to the benefit of private shareholders or individuals. For the definition of the words private shareholder or individual, see paragraph (c) of § 1.501(a)-1.

(3) Action organizations. (i) An organization is not operated exclusively for one or more exempt purposes if it is an action organization as defined in subdivisions (ii), (iii), or (iv) of this subparagraph.

(ii) An organization is an action organization if a substantial part of its activities is attempting to influence legislation by propaganda or otherwise. For this purpose, an organization will be regarded as attempting to influence legislation if the organization:

(a) Contacts, or urges the public to contact, members of a legislative body for the purpose of proposing, supporting, or opposing legislation; or

(b) Advocates the adoption or rejection of legislation.

The term legislation, as used in this subdivision, includes action by the Congress, by any State legislature, by any local council or similar governing body, or by the public in a referendum, initiative, constitutional amendment, or similar procedure. An organization will not fail to meet the operational test merely because it advocates, as an insubstantial part of its activities, the adoption or rejection of legislation. An organization for which the expenditure test election of section 501(h) is in effect for a taxable year will not be considered an action organization by reason of this paragraph (c)(3)(ii) for that year if it is not denied exemption from taxation under section 501(a) by reason of section 501(h).

(iii) An organization is an action organization if it participates or intervenes, directly or indirectly, in any political campaign on behalf of or in opposition to any candidate for public office.

The term candidate for public office means an individual who offers himself, or is proposed by others, as a contestant for an elective public office, whether such office be national, State, or local. Activities which constitute participation or intervention in a political campaign on behalf of or in opposition to a candidate include, but are not limited to, the publication or distribution of written or printed statements or the making of oral statements on behalf of or in opposition to such a candidate.

(iv) An organization is an action organization if it has the following two characteristics: (a) Its main or primary objective or objectives (as distinguished from its incidental or secondary objectives) may be attained only by legislation or a defeat of proposed legislation; and (b) it advocates, or campaigns for, the attainment of such main or primary objective or objectives as distinguished from engaging in nonpartisan analysis, study, or research and making the results thereof available to the public. In determining whether an organization has such characteristics, all the surrounding facts and circumstances, including the articles and all activities of the organization, are to be considered.

(v) An action organization, described in subdivisions (ii) or (iv) of this subparagraph, though it cannot qualify under section 501(c)(3), may nevertheless qualify as a social welfare organization under section 501(c)(4) if it meets the requirements set out in paragraph (a) of § 1.501(c)(4)-1.

(d) Exempt purposes--(1) In general. (i) An organization may be exempt as an organization described in section 501(c)(3) if it is organized and operated exclusively for one or more of the following purposes:

(a) Religious,

(b) Charitable,

(c) Scientific,

(d) Testing for public safety,

(e) Literary,

(f) Educational, or

(g) Prevention of cruelty to children or animals.

(ii) An organization is not organized or operated exclusively for one or more of the purposes specified in subdivision (i) of this subparagraph unless it serves a public rather than a private interest. Thus, to meet the requirement of this subdivision, it is necessary for an organization to establish that it is not organized or operated for the benefit of private interests such as designated individuals, the creator or his family, shareholders of the organization, or persons controlled, directly or indirectly, by such private interests.

(iii) Since each of the purposes specified in subdivision (i) of this subparagraph is an exempt purpose in itself, an organization may be exempt if it is organized and operated exclusively for any one or more of such purposes. If, in fact, an organization is organized and operated exclusively for an exempt purpose or purposes, exemption will be granted to such an organization regardless of the purpose or purposes specified in its application for exemption. For example, if an organization claims exemption on the ground that it is educational, exemption will not be denied if, in fact, it is charitable.

(2) Charitable defined. The term charitable is used in section 501(c)(3) in its generally accepted legal sense and is, therefore, not to be construed as limited by the separate enumeration in section 501(c)(3) of other tax-exempt purposes which may fall within the broad outlines of charity as developed by judicial decisions. Such term includes: Relief of the poor and distressed or of the underprivileged; advancement of religion; advancement of education or science; erection or maintenance of public buildings, monuments, or works; lessening of the burdens of Government; and promotion of social welfare by organizations designed to accomplish any of the above purposes, or (i) to lessen neighborhood tensions; (ii) to eliminate prejudice and discrimination; (iii) to defend human and civil rights secured by law; or (iv) to combat community deterioration and juvenile delinquency. The fact that an organization which is organized and operated for the relief of indigent persons may receive voluntary contributions from the persons intended to be relieved will not necessarily prevent such organization from being exempt as an organization organized and operated exclusively for charitable purposes. The fact that an organization, in carrying out its primary purpose, advocates social or civic changes or presents opinion on controversial issues with the intention of molding public opinion or creating public sentiment to an acceptance of its views does not preclude such organization from qualifying under section 501(c)(3) so long as it is not an action organization of any one of the types described in paragraph (c)(3) of this section.

(3) Educational defined--(i) In general. The term educational, as used in section 501(c)(3), relates to:

(a) The instruction or training of the individual for the purpose of improving or developing his capabilities; or

(b) The instruction of the public on subjects useful to the individual and beneficial to the community.

An organization may be educational even though it advocates a particular position or viewpoint so long as it presents a sufficiently full and fair exposition of the pertinent facts as to permit an individual or the public to form an independent opinion or conclusion. On the other hand, an organization is not educational if its principal function is the mere presentation of unsupported opinion.

(ii) Examples of educational organizations. The following are examples of organizations which, if they otherwise meet the requirements of this section, are educational:

Example 1. An organization, such as a primary or secondary school, a college, or a professional or trade school, which has a regularly scheduled curriculum, a regular faculty, and a regularly enrolled body of students in attendance at a place where the educational activities are regularly carried on.

Example 2. An organization whose activities consist of presenting public discussion groups, forums, panels, lectures, or other similar programs. Such programs may be on radio or television.

Example 3. An organization which presents a course of instruction by means of correspondence or through the utilization of television or radio.

Example 4. Museums, zoos, planetariums, symphony orchestras, and other similar organizations.

(4) Testing for public safety defined. The term testing for public safety, as used in section 501(c)(3), includes the testing of consumer products, such as electrical products, to determine whether they are safe for use by the general public.

(5) Scientific defined. (i) Since an organization may meet the requirements of section 501(c)(3) only if it serves a public rather than a private interest, a scientific organization must be organized and operated in the public interest (see subparagraph (1)(ii) of this paragraph). Therefore, the term scientific, as used in section 501(c)(3), includes the carrying on of scientific research in the public interest. Research when taken alone is a word with various meanings; it is not synonymous with scientific; and the nature of particular research depends upon the purpose which it serves. For research to be scientific, within the meaning of section 501(c)(3), it must be carried on in furtherance of a scientific purpose. The determination as to whether research is scientific does not depend on whether such research is classified as fundamental or basic as contrasted with applied or practical. On the other hand, for purposes of the exclusion from unrelated business taxable income provided by section 512(b)(9), it is necessary to determine whether the organization is operated primarily for purposes of carrying on fundamental, as contrasted with applied, research.

(ii) Scientific research does not include activities of a type ordinarily carried on as an incident to commercial or industrial operations, as, for example, the ordinary testing or inspection of materials or products or the designing or construction of equipment, buildings, etc.

(iii) Scientific research will be regarded as carried on in the public interest:

(a) If the results of such research (including any patents, copyrights, processes, or formulae resulting from such research) are made available to the public on a nondiscriminatory basis;

(b) If such research is performed for the United States, or any of its agencies or instrumentalities, or for a State or political subdivision thereof; or

(c) If such research is directed toward benefiting the public. The following are examples of scientific research which will be considered as directed toward benefiting the public, and, therefore, which will be regarded as carried on in the public interest: (1) Scientific research carried on for the purpose of aiding in the scientific education of college or university students; (2) scientific research carried on for the purpose of obtaining scientific information, which is published in a treatise, thesis, trade publication, or in any other form that is available to the interested public; (3) scientific research carried on for the purpose of discovering a cure for a disease; or (4) scientific research carried on for the purpose of aiding a community or geographical area by attracting new industry to the community or area or by encouraging the development of, or retention of, an industry in the community or area. Scientific research described in this subdivision will be regarded as carried on in the public interest even though such research is performed pursuant to a contract or agreement under which the sponsor or sponsors of the research have the right to obtain ownership or control of any patents, copyrights, processes, or formulae resulting from such research.

(iv) An organization will not be regarded as organized and operated for the purpose of carrying on scientific research in the public interest and, consequently, will not qualify under section 501(c)(3) as a scientific organization, if:

(a) Such organization will perform research only for persons which are (directly or indirectly) its creators and which are not described in section 501(c)(3), or

(b) Such organization retains (directly or indirectly) the ownership or control of more than an insubstantial portion of the patents, copyrights, processes, or formulae resulting from its research and does not make such patents, copyrights, processes, or formulae available to the public. For purposes of this subdivision, a patent, copyright, process, or formula shall be considered as made available to the public if such patent, copyright, process, or formula is made available to the public on a nondiscriminatory basis. In addition, although one person is granted the exclusive right to the use of a patent, copyright, process, or formula, such patent, copyright, process, or formula shall be considered as made available to the public if the granting of such exclusive right is the only practicable manner in which the patent, copyright, process, or formula can be utilized to benefit the public. In such a case, however, the research from which the patent, copyright, process, or formula resulted will be regarded as carried on in the public interest (within the meaning of subdivision (iii) of this subparagraph) only if it is carried on for a person described in subdivision (iii)(b) of this subparagraph or if it is scientific research described in subdivision (iii)(c) of this subparagraph.

(v) The fact that any organization (including a college, university, or hospital) carries on research which is not in furtherance of an exempt purpose described in section 501(c)(3) will not preclude such organization from meeting the requirements of section 501(c)(3) so long as the organization meets the organizational test and is not operated for the

primary purpose of carrying on such research (see paragraph (e) of this section, relating to organizations carrying on a trade or business). See paragraph (a)(5) of § 1.513-2, with respect to research which constitutes an unrelated trade or business, and section 512(b)(7), (8), and (9), with respect to income derived from research which is excludable from the tax on unrelated business income.

(vi) The regulations in this subparagraph are applicable with respect to taxable years beginning after December 31, 1960.

(e) Organizations carrying on trade or business--(1) In general. An organization may meet the requirements of section 501(c)(3) although it operates a trade or business as a substantial part of its activities, if the operation of such trade or business is in furtherance of the organization's exempt purpose or purposes and if the organization is not organized or operated for the primary purpose of carrying on an unrelated trade or business, as defined in section 513. In determining the existence or nonexistence of such primary purpose, all the circumstances must be considered, including the size and extent of the trade or business and the size and extent of the activities which are in furtherance of one or more exempt purposes. An organization which is organized and operated for the primary purpose of carrying on an unrelated trade or business is not exempt under section 501(c)(3) even though it has certain religious purposes, its property is held in common, and its profits do not inure to the benefit of individual members of the organization. See, however, section 501(d) and § 1.501(d)-1, relating to religious and apostolic organizations.

(2) Taxation of unrelated business income. For provisions relating to the taxation of unrelated business income of certain organizations described in section 501(c)(3), see sections 511 to 515, inclusive, and the regulations thereunder.

(f) Applicability of regulations in this section. The regulations in this section are, except as otherwise expressly provided, applicable with respect to taxable years beginning after July 26, 1959. For the rules applicable with respect to taxable years beginning before July 27, 1959, see 26 CFR (1939) 39.101(6)-1 (Regulations 118) as made applicable to the Code by Treasury Decision 6091, approved August 16, 1954 (19 FR 5167; C.B. 1954-2, 47).

HISTORY:
[T.D. 6500, 25 FR 11737, Nov. 26, 1960, as amended by T.D. 6525, 26 FR 189, Jan. 11, 1961; T.D. 6939, 32 FR 17661, Dec. 12, 1967; T.D. 7428, 41 FR 34620, Aug. 16, 1976; T.D. 8308, 55 FR 35587, Aug. 31, 1990]

AUTHORITY:
AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
26 U.S.C. 7805.

NOTES:
NOTES APPLICABLE TO ENTIRE CHAPTER:

EDITORIAL NOTE: IRS published a document at 45 FR 6088, Jan. 25, 1980, deleting statutory sections from their regulations. In Chapter I, cross references to the deleted material have been changed to the corresponding sections of the IRS Code of 1954 or to the appropriate regulations sections. When either such change produced a redundancy, the cross reference has been deleted. For further explanation, see 45 FR 20795, March 31, 1980.
[The OMB control numbers for title 26 appear in §§ 601.9000 and 602.101 of this chapter.]


NOTES APPLICABLE TO ENTIRE SUBCHAPTER:
Supplementary Publications: Internal Revenue Service Looseleaf Regulations System, Alcohol and Tobacco Tax Regulations, and Regulations Under Tax Conventions.
EDITORIAL NOTE: Treasury Decision 6091, 19 FR 5167, Aug. 17, 1954, provides in part as follows:
PARAGRAPH 1. All regulations (including all Treasury decisions) prescribed by, or under authority duly delegated by, the Secretary of the Treasury, or jointly by the Secretary and the Commissioner of Internal Revenue, or by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury, or jointly by the Commissioner of Internal Revenue and the Commissioner of Customs or the Commissioner of Narcotics with the approval of the Secretary of the Treasury, applicable under any provision of law in effect on the date of enactment of the Code, to the extent such provision of law is repealed by the Code, are hereby prescribed under and made applicable to the provisions of the Code corresponding to the provision of law so repealed insofar as any such regulation is not inconsistent with the Code. Such regulations shall become effective as regulations under the various provisions of the Code as of the dates the corresponding provisions of law are repealed by the Code, until superseded by regulations issued under the Code.
PAR. 2. With respect to any provision of the Code which depends for its application upon the promulgation of regulations or which is to be applied in such manner as may be prescribed by regulations, all instructions or rules in effect immediately prior to the enactment of the Code, to the extent such instructions or rules could be prescribed as regulations under authority of such provision of the Code, shall be applied as regulations under such provision insofar as such instructions or rules are not inconsistent with the Code. Such instructions or rules shall be applied as regulations under the applicable provision of the Code as of the date such provision takes effect.
PAR. 3. If any election made or other act done pursuant to any provision of the Internal Revenue Code of 1939 or prior internal revenue laws would (except for the enactment of the Code ) be effective for any period subsequent to such enactment, and if corresponding provisions are contained in the Code, such election or other act shall be given the same effect under the corresponding provisions of the Code to the extent not inconsistent therewith. The term "act" includes, but is not limited to, an allocation, identification, declaration, agreemtent, option, waiver, relinquishment, or renunciation.
PAR. 4. The limits of the various internal revenue districts have not been changed by the enactment of the Code. Furthermore, delegations of authority made pursuant to the provisions of Reorganization Plan No. 26 of 1950 and Reorganization Plan No. 1 of 1952

(as well as redelegation thereunder), including those governing the authority of the Commissioner of Internal Revenue, the Regional Commissioners of Internal Revenue, or the District Directors of Internal Revenue, are applicable to the provisions of the Code to the extent consistent therewith.