# Exhibit 4

7 of 11 DOCUMENTS

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2006, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

\*\*\* THIS SECTION IS CURRENT THROUGH THE OCTOBER 12, 2006 ISSUE OF \*\*\*
\*\*\* THE FEDERAL REGISTER \*\*\*

TITLE 26 -- INTERNAL REVENUE
CHAPTER I -- INTERNAL REVENUE SERVICE, DEPARTMENT OF THE TREASURY
SUBCHAPTER D -- MISCELLANEOUS EXCISE TAXES
PART 53 -- FOUNDATION AND SIMILAR EXCISE TAXES
SUBPART J -- BLACK LUNG BENEFIT TRUST EXCISE TAXES

Go to the CFR Archive Directory

26 CFR 53.4958-6

§ 53.4958-6 Rebuttable presumption that a transaction is not an excess benefit transaction.

(a) In general. Payments under a compensation arrangement are presumed to be reasonable, and a transfer of property, or the right to use property, is presumed to be at fair market value, if the following conditions are satisfied --

(1) The compensation arrangement or the terms of the property transfer are approved in advance by an authorized body of the applicable tax-exempt organization (or an entity controlled by the organization within the meaning of § 53.4958-4(a)(2)(ii)(B)) composed entirely of individuals who do not have a conflict of interest (within the meaning of paragraph (c)(1)(iii) of this section) with respect to the compensation arrangement or property transfer, as described in paragraph (c)(1) of this section;

(2) The authorized body obtained and relied upon appropriate data as to comparability prior to making its determination, as described in paragraph (c)(2) of this section; and

(3) The authorized body adequately documented the basis for its determination concurrently with making that determination, as described in paragraph (c)(3) of this section.

(b) Rebutting the presumption. If the three requirements of paragraph (a) of this section are satisfied, then the Internal Revenue Service may rebut the presumption that arises under paragraph (a) of this section only if it develops sufficient contrary evidence to rebut the probative value of the comparability data relied upon by the authorized body. With respect to any fixed payment (within the meaning of § 53.4958-4(a)(3)(ii)), rebuttal evidence is limited to evidence relating to facts and circumstances existing on the date the parties enter into the contract pursuant to which the payment is made (except in the event of substantial nonperformance). With respect to all other payments (including non-fixed payments subject to a cap, as described in paragraph (d)(2) of this section), rebuttal evidence may include facts and circumstances up to and including the date of payment. See § 53.4958-4(b)(2)(i).

(c) Requirements for invoking rebuttable presumption -- (1) Approval by an authorized body -- (i) In general. An authorized body means --

(A) The governing body (i.e., the board of directors, board of trustees, or equivalent controlling body) of the organization;

(B) A committee of the governing body, which may be composed of any individuals permitted under State law to serve on such a committee, to the extent that the committee is permitted by State law to act on behalf of the governing body; or

(C) To the extent permitted under State law, other parties authorized by the governing body of the organization to act on its behalf by following procedures specified by the governing body in approving compensation arrangements or property transfers.

(ii) Individuals not included on authorized body. For purposes of determining whether the requirements of paragraph (a) of this section have been met with respect to a specific compensation arrangement or property transfer, an individual is not included on the authorized body when it is reviewing a transaction if that individual meets with other members only to answer questions, and otherwise recuses himself or herself from the meeting and is not present during debate and voting on the compensation arrangement or property transfer.

(iii) Absence of conflict of interest. A member of the authorized body does not have a conflict of interest with respect to a compensation arrangement or property transfer only if the member --

(A) Is not a disqualified person participating in or economically benefitting from the compensation arrangement or property transfer, and is not a member of the family of any such disqualified person, as described in section 4958(f)(4) or § 53.4958-3(b)(1);

(B) Is not in an employment relationship subject to the direction or control of any disqualified person participating in or economically benefitting from the compensation arrangement or property transfer;

(C) Does not receive compensation or other payments subject to approval by any disqualified person participating in or economically benefitting from the compensation arrangement or property transfer;

(D) Has no material financial interest affected by the compensation arrangement or property transfer; and

(E) Does not approve a transaction providing economic benefits to any disqualified person participating in the compensation arrangement or property transfer, who in turn has approved or will approve a transaction providing economic benefits to the member.

(2) Appropriate data as to comparability -- (i) In general. An authorized body has appropriate data as to comparability if, given the knowledge and expertise of its members, it has information sufficient to determine whether, under the standards set forth in § 53.4958-4(b), the compensation arrangement in its entirety is reasonable or the property transfer is at fair market value. In the case of compensation, relevant information includes, but is not limited to, compensation levels paid by similarly situated organizations, both taxable and tax-exempt, for functionally comparable positions; the availability of similar services in the geographic area of the applicable tax-exempt organization; current compensation surveys compiled by independent firms; and actual written offers from similar institutions competing for the services of the disqualified person. In the case of property, relevant information includes, but is not limited to, current independent appraisals of the value of all property to be transferred; and offers received as part of an open and competitive bidding process.

(ii) Special rule for compensation paid by small organizations. For organizations with annual gross receipts (including contributions) of less than $ 1 million reviewing compensation arrangements, the authorized body will be considered to have appropriate data as to comparability if it has data on compensation paid by three comparable organizations in the same or similar communities for similar services. No inference is intended with respect to whether circumstances falling outside this safe harbor will meet the requirement with respect to the collection of appropriate data.

(iii) Application of special rule for small organizations. For purposes of determining whether the special rule for small organizations described in paragraph (c)(2)(ii) of this section applies, an organization may calculate its annual gross receipts based on an average of its gross receipts during the three prior taxable years. If any applicable tax-exempt organization is controlled by or controls another entity (as defined in § 53.4958-4(a)(2)(ii)(B)), the annual gross receipts of such organizations must be aggregated to determine applicability of the special rule stated in paragraph (c)(2)(ii) of this section.

(iv) Examples. The following examples illustrate the rules for appropriate data as to comparability for purposes of invoking the rebuttable presumption of reasonableness described in this section. In all examples, compensation refers to the aggregate value of all benefits provided in exchange for services. The examples are as follows:

Example 1. Z is a university that is an applicable tax-exempt organization for purposes of section 4958. Z is negotiating a new contract with Q, its president, because the old contract will expire at the end of the year. In setting Q's compensation for its president at $ 600x per annum, the executive committee of the Board of Trustees relies solely on a national survey of compensation for university presidents that indicates university presidents receive annual compensa-

tion in the range of $ 100x to $ 700x; this survey does not divide its data by any criteria, such as the number of students served by the institution, annual revenues, academic ranking, or geographic location. Although many members of the executive committee have significant business experience, none of the members has any particular expertise in higher education compensation matters. Given the failure of the survey to provide information specific to universities comparable to Z, and because no other information was presented, the executive committee's decision with respect to Q's compensation was not based upon appropriate data as to comparability.

Example 2. The facts are the same as Example 1, except that the national compensation survey divides the data regarding compensation for university presidents into categories based on various university-specific factors, including the size of the institution (in terms of the number of students it serves and the amount of its revenues) and geographic area. The survey data shows that university presidents at institutions comparable to and in the same geographic area as Z receive annual compensation in the range of $ 200x to $ 300x. The executive committee of the Board of Trustees of Z relies on the survey data and its evaluation of Q's many years of service as a tenured professor and high-ranking university official at Z in setting Q's compensation at $ 275x annually. The data relied upon by the executive committee constitutes appropriate data as to comparability.

Example 3. X is a tax-exempt hospital that is an applicable tax-exempt organization for purposes of section 4958. Before renewing the contracts of X's chief executive officer and chief financial officer, X's governing board commissioned a customized compensation survey from an independent firm that specializes in consulting on issues related to executive placement and compensation. The survey covered executives with comparable responsibilities at a significant number of taxable and tax-exempt hospitals. The survey data are sorted by a number of different variables, including the size of the hospitals and the nature of the services they provide, the level of experience and specific responsibilities of the executives, and the composition of the annual compensation packages. The board members were provided with the survey results, a detailed written analysis comparing the hospital's executives to those covered by the survey, and an opportunity to ask questions of a member of the firm that prepared the survey. The survey, as prepared and presented to X's board, constitutes appropriate data as to comparability.

Example 4. The facts are the same as Example 3, except that one year later, X is negotiating a new contract with its chief executive officer. The governing board of X obtains information indicating that the relevant market conditions have not changed materially, and possesses no other information indicating that the results of the prior year's survey are no longer valid. Therefore, X may continue to rely on the independent compensation survey prepared for the prior year in setting annual compensation under the new contract.

Example 5. W is a local repertory theater and an applicable tax-exempt organization for purposes of section 4958. W has had annual gross receipts ranging from $ 400,000 to $ 800,000 over its past three taxable years. In determining the next year's compensation for W's artistic director, the board of directors of W relies on data compiled from a telephone survey of three other unrelated performing arts organizations of similar size in similar communities. A member of the board drafts a brief written summary of the annual compensation information obtained from this informal survey. The annual compensation information obtained in the telephone survey is appropriate data as to comparability.

(3) Documentation -- (i) For a decision to be documented adequately, the written or electronic records of the authorized body must note --

(A) The terms of the transaction that was approved and the date it was approved;

(B) The members of the authorized body who were present during debate on the transaction that was approved and those who voted on it;

(C) The comparability data obtained and relied upon by the authorized body and how the data was obtained; and

(D) Any actions taken with respect to consideration of the transaction by anyone who is otherwise a member of the authorized body but who had a conflict of interest with respect to the transaction.

(ii) If the authorized body determines that reasonable compensation for a specific arrangement or fair market value in a specific property transfer is higher or lower than the range of comparability data obtained, the authorized body must record the basis for its determination. For a decision to be documented concurrently, records must be prepared before the later of the next meeting of the authorized body or 60 days after the final action or actions of the authorized body are taken. Records must be reviewed and approved by the authorized body as reasonable, accurate and complete within a reasonable time period thereafter.

(d) No presumption with respect to non-fixed payments until amounts are determined -- (1) In general. Except as provided in paragraph (d)(2) of this section, in the case of a payment that is not a fixed payment (within the meaning of § 53.4958-4(a)(3)(ii)), the rebuttable presumption of this section arises only after the exact amount of the payment is determined, or a fixed formula for calculating the payment is specified, and the three requirements for the presumption under paragraph (a) of this section subsequently are satisfied. See § 53.4958-4(b)(2)(i).

(2) Special rule for certain non-fixed payments subject to a cap. If the authorized body approves an employment contract with a disqualified person that includes a non-fixed payment (such as a discretionary bonus) subject to a specified cap, the authorized body may establish a rebuttable presumption with respect to the non-fixed payment at the time the employment contract is entered into if --

(i) Prior to approving the contract, the authorized body obtains appropriate comparability data indicating that a fixed payment of up to a certain amount to the particular disqualified person would represent reasonable compensation;

(ii) The maximum amount payable under the contract (taking into account both fixed and non-fixed payments) does not exceed the amount referred to in paragraph (d)(2)(i) of this section; and

(iii) The other requirements for the rebuttable presumption of reasonableness under paragraph (a) of this section are satisfied.

(e) No inference from absence of presumption. The fact that a transaction between an applicable tax-exempt organization and a disqualified person is not subject to the presumption described in this section neither creates any inference that the transaction is an excess benefit transaction, nor exempts or relieves any person from compliance with any Federal or state law imposing any obligation, duty, responsibility, or other standard of conduct with respect to the operation or administration of any applicable tax-exempt organization.

(f) Period of reliance on rebuttable presumption. Except as provided in paragraph (d) of this section with respect to non-fixed payments, the rebuttable presumption applies to all payments made or transactions completed in accordance with a contract, provided that the provisions of paragraph (a) of this section were met at the time the parties entered into the contract.

**HISTORY:** [T.D. 8978, *67 FR 3076, 3095,* Jan. 23, 2002]

**AUTHORITY:** AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
*26 U.S.C. 7805.*

**NOTES:** [EFFECTIVE DATE NOTE: *67 FR 3076, 3095,* Jan. 23, 2002, added this section, effective Jan. 23, 2002.]


NOTES APPLICABLE TO ENTIRE CHAPTER:
EDITORIAL NOTE: IRS published a document at *45 FR 6088,* Jan. 25, 1980, deleting statutory sections from their regulations. In Chapter I, cross references to the deleted material have been changed to the corresponding sections of the IRS Code of 1954 or to the appropriate regulations sections. When either such change produced a redundancy, the cross reference has been deleted. For further explanation, see *45 FR 20795,* March 31, 1980.
[The OMB control numbers for title 26 appear in § § 601.9000 and 602.101 of this chapter.]

2558 words